UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

RAJAT SHARMA, Individually and on Behalf of All Others Similarly Situated,

                Plaintiff,

vs.

RENT THE RUNWAY, INC., JENNIFER Y. HYMAN, SCARLETT O'SULLIVAN, TIM BIXBY, JENNIFER FLEISS, SCOTT FRIEND, MELANIE HARRIS, BETH KAPLAN, DAN NOVA, GWYNETH PALTROW, CARLEY RONEY, DAN ROSENSWEIG, MIKE ROTH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., and TELSEY ADVISORY GROUP LLC,

                Defendants.

Civil Action No. 1:22-cv-6935

CLASS ACTION

COMPLAINT FOR VIOLATIONS OF THE SECURITIES ACT OF 1933

DEMAND FOR JURY TRIAL

Plaintiff Rajat Sharma ("plaintiff"), individually and on behalf of all others similarly situated, by plaintiff's undersigned attorneys, for plaintiff's complaint against defendants, alleges the following based upon personal knowledge as to plaintiff and plaintiff's own acts and upon information and belief as to all other matters based on the investigation conducted by and through plaintiff's attorneys, which included, among other things, a review of U.S. Securities and Exchange Commission ("SEC") filings by Rent the Runway, Inc. ("RTR" or the "Company"), the Company's press releases, and analyst reports, media reports, and other publicly disclosed reports and information about the Company. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a securities class action on behalf of all persons or entities who purchased RTR Class A common stock in or traceable to the Company's October 2021 initial public offering (the "IPO") seeking to pursue remedies under the Securities Act of 1933 (the "1933 Act").

## JURISDICTION AND VENUE

2. The claims alleged herein arise under §§11 and 15 of the 1933 Act, 15 U.S.C. §§77k and 77o. This Court has jurisdiction over the subject matter of this action pursuant to §22 of the 1933 Act, 15 U.S.C. §77v.

3. This Court has personal jurisdiction over each of the defendants and venue is proper in this District. Defendants conducted the IPO in this District, drafted the Registration Statement (defined below) in substantial part in this District, disseminated the statements alleged to be false and misleading herein into this District, and solicited purchasers of RTR shares in this District.

## PARTIES

4. Plaintiff Rajat Sharma purchased RTR Class A common stock, as stated in the attached Certification attached hereto and incorporated herein by reference, in or traceable to the IPO and has been damaged thereby.

5. Defendant RTR is an e-commerce platform that allows users to rent, subscribe, or buy designer apparel and accessories. The Company is incorporated in Delaware with headquarters in Brooklyn, New York. The Company maintains a dual-class share structure designed to concentrate control over the Company in the hands of insiders out of proportion with their economic stake. Class A and Class B shares are identical, except that Class A shares entitle the holders to one vote per share, while Class B shares entitle the holders to 20 votes per share. Defendants Jennifer Hyman and Scarlett O'Sullivan, and their affiliates, held all of the outstanding Class B shares of RTR, giving them majority voting control over the Company at the time of the IPO. RTR Class A common stock trades on the NASDAQ under ticker symbol "RENT."

6. Defendant Jennifer Y. Hyman ("Hyman") co-founded RTR and served as RTR's Chief Executive Officer ("CEO") and Chairman of the RTR Board of Directors at the time of the IPO. Leading up to the IPO, defendant Hyman, together with defendant Scarlett O'Sullivan, were controlling shareholders of the Company through their control of RTR Class B shares.

7. Defendant Scarlett O'Sullivan ("O'Sullivan") served as RTR's Chief Financial Officer ("CFO") at the time of the IPO. Leading up to the IPO, defendant O'Sullivan, together with defendant Hyman, were controlling shareholders of the Company through their control of RTR Class B shares.

8. Defendant Tim Bixby served as a RTR director at the time of the IPO.

9. Defendant Jennifer Fleiss was co-founder of RTR and served as a director at the time of the IPO.

10. Defendant Scott Friend served as a RTR director at the time of the IPO.

11. Defendant Melanie Harris served as a RTR director at the time of the IPO.

12. Defendant Beth Kaplan served as a RTR director at the time of the IPO.

13. Defendant Dan Nova served as a RTR director at the time of the IPO.

14. Defendant Gwyneth Paltrow served as a RTR director at the time of the IPO.

15. Defendant Carley Roney served as a RTR director at the time of the IPO.

16. Defendant Dan Rosensweig served as a RTR director at the time of the IPO.

17. Defendant Mike Roth served as a RTR director at the time of the IPO.

18. The defendants identified in ¶¶6-17 are referred to herein as the "Individual Defendants." Each of the Individual Defendants signed the Registration Statement. In addition, the Individual Defendants participated in the solicitation and sale of RTR Class A common stock to investors in the IPO for their own benefit and the benefit of RTR as directors, executive officers, and/or major shareholders of the Company.

19. Defendants Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Piper Sandler & Co., Wells Fargo Securities, LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., and Telsey Advisory Group LLC are referred to herein as the "Underwriter Defendants." Pursuant to the 1933 Act, the Underwriter Defendants are liable for the materially false and misleading statements in the Registration Statement as follows:

(a) The Underwriter Defendants are investment banking houses that specialize in, *inter alia*, underwriting public offerings of securities. They served as the underwriters of the IPO and shared approximately $24 million in fees collectively for their services. The Underwriter Defendants determined that in return for their share of the IPO proceeds, they were willing to

solicit purchases of RTR Class A common stock in the IPO. Each of the Underwriter Defendants designated personnel to the IPO working group, including investment bankers, analysts, associates, and counsel, to market RTR Class A common stock, and those personnel worked on and approved the content of RTR's Registration Statement and other offering materials.

(b) The Underwriter Defendants demanded and obtained an agreement from RTR that RTR would indemnify and hold the Underwriter Defendants harmless from any liability under the federal securities laws. They also made certain that RTR had purchased millions of dollars in directors' and officers' liability insurance.

(c) Representatives of the Underwriter Defendants also assisted RTR and the Individual Defendants in planning the IPO and purportedly conducted an adequate and reasonable investigation into the business and operations of RTR, an undertaking known as a "due diligence" investigation. The due diligence investigation was required of the Underwriter Defendants in order to engage in the IPO. During the course of their "due diligence," the Underwriter Defendants had continual access to confidential corporate information concerning RTR's operations and financial prospects.

(d) In addition to availing themselves of virtually unbridled access to internal corporate documents, agents of the Underwriter Defendants met with RTR's management, top executives, and outside counsel and engaged in "drafting sessions" in advance of the IPO. During these sessions, understandings were reached as to: (i) the strategy to best accomplish the IPO; (ii) the terms of the IPO, including the price range at which RTR Class A common stock would be sold; (iii) the language to be used in the Registration Statement; and (iv) what disclosures about RTR would be made in the Registration Statement. As a result of those constant contacts and communications between the Underwriter Defendants' representatives and RTR's management

and top executives, such as the Individual Defendants, the Underwriter Defendants knew, or should have known, of RTR's existing problems as detailed herein.

(e) The Underwriter Defendants solicited and sold in the IPO RTR Class A common stock to plaintiff and other members of the Class (defined herein). The Underwriter Defendants' failure to conduct an adequate due diligence investigation was a substantial factor leading to the harm complained of herein.

## SUBSTANTIVE ALLEGATIONS

20. RTR is an e-commerce platform that allows users to rent, subscribe, or buy designer apparel and accessories. RTR offers high-end apparel such as evening wear and accessories, as well as more causal and mixed-use items such as ready-to-wear, workwear, denim, maternity, outerwear, blouses, knitwear, loungewear, jewelry, handbags, activewear, ski wear, home goods, and kidswear. RTR sources its products from over 750 luxury brand partners.

21. Customers can access RTR's designer inventory in several ways. RTR gives customers ongoing access to its "unlimited closet" through its subscription offerings or the ability to rent a-la-carte through its "reserve offerings." Subscribers and customers also have the ability to buy RTR products through its "resale offering." In the first six months of 2021, subscription revenue represented 83% of RTR's total revenue, reserve rental revenue represented 7.6% of RTR's total revenue, and resale revenue represented 9.4% of RTR's total revenue.

22. RTR's business was severely impacted by the COVID-19 pandemic, which began in March 2020. As a luxury clothing provider, RTR's sales and services suffered from stay-at-home orders and the decline in opportunities for social gatherings among its customer base.

Between its fiscal 2019 and 2020, RTR's revenues declined nearly 40% to $157.5 million and its total active subscribers declined nearly 60% to 54,797 active subscribers.[1]

23. In the months leading up to the IPO, RTR claimed that it was experiencing a business resurgence as concerns about the COVID-19 pandemic lessened, lockdown orders ceased, and its customers engaged in more social outings. For example, the Company stated that it had grown to 111,732 active subscribers as of September 30, 2021, representing 104% growth since the beginning of fiscal year 2021. Similarly, the Registration Statement stated that during RTR's second quarter of 2021 (the quarter immediately prior to the IPO) quarterly revenues had grown to $46.7 million, representing 62% growth year-over-year.

24. On October 4, 2021, the Company filed with the SEC a registration statement on Form S-1 for the IPO, which, after several amendments, was declared effective on October 26, 2021 (the "Registration Statement"). On October 27, 2021, the Company filed with the SEC a prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement (the "Prospectus"). The Registration Statement and Prospectus were used to sell to the investing public 17 million shares of RTR Class A common stock at $21 per share for $357 million in gross offering proceeds, which was used in substantial part to pay back debt from certain of the Company's private equity backers.

### MATERIALLY FALSE AND MISLEADING STATEMENTS AND OMISSIONS IN THE REGISTRATION STATEMENT

25. The Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements

---

[1] RTR fiscal year ends on January 31 of the following calendar year.

contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents.

26. Specifically, the Registration Statement claimed that RTR was experiencing rapid growth at the time of the IPO. For example, the Registration Statement stated that RTR's revenue had increased to $80.2 million for the first six months of its fiscal 2021, compared to $69 million during the last six months of its fiscal 2020. The Registration Statement also claimed that the "COVID-19 pandemic has accelerated our consumer tailwinds" as "consumer values have shifted the landscape towards the Closet in the Cloud and access over ownership." The Registration Statement further stated that RTR "continue[d] to experience strong momentum in the third quarter of fiscal year 2021," continuing in pertinent part as follows:

> ***The spread of the COVID-19 Delta variant and the trend of continued work from home has had minimal impact on our business or financial performance as of the date of this prospectus***, but we continue to monitor the situation. ***We grew to 111,732 active subscribers as of September 30, 2021, representing 104% growth since the beginning of fiscal year 2021. Active subscribers also grew 14% from the end of our second fiscal quarter on July 31, 2021 to September 30, 2021***. Our total subscribers as of September 30, 2021 grew to 143,464 subscribers including paused and active subscribers representing 97% of the total subscribers at the end of fiscal year 2019.

27. Further, the Registration Statement highlighted the Company's purported low marketing cost, stating that since RTR's inception, "organic growth, or word-of-mouth marketing, has been a key advantage for RTR," which has allowed the Company to spend "less than 10% of total revenue on marketing." Although the Registration Statement stated that RTR "plan[ned] to significantly increase spending and run marketing campaigns to acquire additional subscribers and customers," this was stated in the context of reversing RTR's decision to have "previously paused paid marketing during portions of the pandemic as a result of COVID-19" rather than increasing marketing spend substantially above pre-pandemic historical trends. In addition, the Registration Statement cited RTR's "continued focus on marketing efficiency" to grow its subscriber base. The

Registration Statement further stated that RTR "acquire[s] subscribers efficiently," asserting that "88% of [its] lifetime customers hav[e] joined organically." The Registration Statement described RTR's purportedly lowered marketing costs leading up to the IPO in pertinent part as follows:

> ***Marketing. Marketing expenses were $8.1 million for fiscal year 2020, a decrease of $14.8 million, or 64.6%, compared to $22.9 million in fiscal year 2019***. This decrease was primarily driven by the decision to reduce paid and brand marketing spend during the COVID-19 pandemic in addition to marketing personnel cost reductions. Marketing expenses unrelated to personnel costs were $4.2 million in fiscal year 2020 and $18.1 million in fiscal year 2019, representing 2.7% and 7.0% of total revenue, respectively.

28. The Registration Statement also highlighted RTR's purported operating efficiencies. The Registration Statement stated that RTR designed and patented its technology "to support the processes in our fulfillment centers and ensure that we can process orders efficiently and extend the useful life of our products." The Registration Statement represented that RTR has "automated various parts of the fulfillment process including picking, order consolidation and packing" in order to drive "improvement in fulfillment costs" and that RTR expects further "fulfillment and operational efficiency gains." The Registration Statement further asserted that RTR's product acquisition methods were effective at lowering costs and increasing profits, stating in pertinent part as follows:

> ***Our product acquisition methods, Wholesale, Share by RTR and Exclusive Designs, are strategic levers to manage our capital efficiency, profitability and product risk. Our Exclusive Designs channel uses data insights to acquire items at a lower cost, which are designed to generate higher profitability over time***. Share by RTR meaningfully reduces our upfront spend and de-risks our investment since we pay brands primarily based on item performance.

29. In addition, the Registration Statement stated that RTR was experiencing lower fulfillment costs as a percentage of revenue leading up to the IPO "as a result of efficiencies in transportation rates and fulfillment labor." The Registration Statement represented that RTR's "[f]ulfillment expenses were $53.0 million for fiscal year 2020, a decrease of $65.1 million, or

- 8 -

55.1%, compared to $118.1 million in fiscal year 2019." The Registration Statement also stated that RTR's "transportation management system allows us to rate shop across these providers and opt into the best shipping method based upon cost and capacity." The Registration Statement similarly stated that the Company's "processes result in labor and other cost savings, while increasing our total shipment capacity and increasing the total lifetime of products, our biggest asset."

30. The statements in ¶¶26-29, above, were materially false and misleading when made because they failed to disclose the following adverse facts that existed at the time of the IPO:

(a) that RTR was continuing to face extraordinary business headwinds, such as transportation headwinds and labor wage rate increases, from the COVID-19 pandemic;

(b) that RTR's active subscriber enrollments had sharply decelerated from the growth trajectory represented in the Registration Statement and, as a result, the Company was several months away from approaching its pre-pandemic levels of active subscriptions;

(c) that RTR needed to substantially increase marketing and advertising costs from historical figures in order to attempt to grow its active subscriber network;

(d) that RTR was suffering from ballooning fulfillment and transportation costs; and

(e) that, as a result of (a)-(d) above, RTR was suffering accelerating operational losses at the time of the IPO and was far less likely to achieve profitability in the near term, if ever, than represented.

31. Furthermore, Item 303 of SEC Regulation S-K, 17 C.F.R. §229.303(b)(2)(ii) ("Item 303") required defendants to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues

or income from continuing operations." Similarly, Item 105 of SEC Regulation S-K, 17 C.F.R. §229.105 ("Item 105"), required, in the "Risk Factors" section of registration statements and prospectuses, "a discussion of the material factors that make an investment in the registrant or offering speculative or risky" and required each risk factor to "adequately describe[] the risk."

32. The failure of the Registration Statement to disclose that RTR was suffering from decelerating growth and ballooning costs at the time of the IPO violated Item 303, because these undisclosed facts were known to defendants and would (and did) have an unfavorable impact on the Company's sales, revenues, and income from continuing operations. This failure also violated Item 105, because these adverse facts created significant risks that were not disclosed even though they were some of the most significant factors that made an investment in RTR stock speculative or risky.

33. Indeed, the risk factors that were provided in the Registration Statement were themselves materially misleading because they provided generic statements of potential or contingent risk, yet failed to disclose that the potential future adverse impacts described therein were already occurring. For example, the Registration Statement stated that "[o]ur continued growth depends on our ability to attract new, and retain existing, customers, which *may* require significant investment in paid marketing channels." Similarly, the Registration Statement stated that RTR's "continued growth has in the past, and *could in the future*, strain our existing resources." Yet, the Registration Statement failed to disclose that RTR was *already* facing heightened fulfillment and marketing costs and slowing growth. The Registration Statement's omission of adverse facts regarding RTR's increasing costs and slowing active customer growth rendered the discussion of possible future contingent risks contained therein themselves materially false and misleading.

## EVENTS FOLLOWING THE IPO

34. On December 8, 2021, RTR issued a press release announcing the Company's financial results for its third fiscal quarter ended October 31, 2021 – *i.e.*, the quarter ***during which*** the IPO was conducted. The release stated that RTR had suffered a quarterly net loss of $87.8 million, nearly double its loss of $44.3 million the prior year quarter. The release also stated that RTR's fulfillment expenses rose significantly to $19.2 million from $11 million the prior year quarter, a 75% increase, and that its marketing expenses increased ***more than tenfold*** from $1.4 million in the prior year quarter to $10.8 million. Additionally, the Company reported only 116,833 active subscribers at quarter's end and that it expected just 121,000 to 122,000 active subscribers for the following quarter, representing a sharp deceleration in active subscriber growth and indicating that the Company was several months away from achieving pre-pandemic active subscribers.

35. Also on December 8, 2021, RTR hosted an earnings call with analysts and investors to discuss the results. During the call, defendant O'Sullivan acknowledged that the Company was suffering "transportation headwinds" and "labor wage rate increases" during the quarter. Although the Registration Statement failed to disclose these headwinds, defendant O'Sullivan stated not only that they predated the IPO but also that they were "anticipated." Defendant O'Sullivan further stated that substantially increased marketing spend was part of RTR's "plan" and that the Company would "keep marketing spend at approximately 10% of revenue annually."

36. On April 13, 2022, RTR issued a press release for its fourth fiscal quarter and year ended January 31, 2022. The release stated that the Company's active subscribers had actually ***declined*** sequentially during the quarter to just 115,240 active subscribers at quarter's end. The release also stated that the Company's fulfillment and marketing expenses remained elevated compared to historical trends at 32% and 13% of quarterly revenue, respectively.

37. On June 9, 2022, RTR issued a press release for its fiscal quarter ended April 30, 2022. The release again stated that the Company's fulfillment and marketing expenses remained elevated compared to historical trends at 34% and 13% of quarterly revenue, respectively.

38. On September 12, 2022, RTR issued a press release for its fiscal quarter ended July 31, 2022. The release stated that the Company had achieved only 124,131 active subscribers at quarter end. The release further stated that the Company had launched a restructuring plan to reduce costs that included a 24% workforce reduction – a remarkable development coming less than one year after the Company had raised $357 million from investors in the IPO.

39. By October 2022, the price of RTR Class A common stock had fallen below $2 per share, **90% below** the price at which RTR common stock had been sold to the investing public less than one year prior. At the time of the filing of this complaint, the price of RTR Class A common stock has remained significantly below the IPO price.

## CLASS ACTION ALLEGATIONS

40. Plaintiff brings this action as a class action on behalf of all persons or entities who purchased RTR Class A common stock in or traceable the IPO (the "Class"). Excluded from the Class are defendants and their families, the officers, directors, and affiliates of defendants, at all relevant times, and members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which defendants have or had a controlling interest.

41. The members of the Class are so numerous that joinder of all members is impracticable. RTR Class A common stock is actively traded on the NASDAQ and millions of shares were sold in the IPO. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are hundreds of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by RTR or its transfer agent and may be notified of the

pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions, including being given an opportunity to exclude themselves from the Class.

42. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law as complained of herein.

43. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether defendants violated the 1933 Act;

(b) whether statements made by defendants to the investing public in the Registration Statement misrepresented material facts about the business, operations. and risks of investing in RTR; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

45. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### For Violation of §11 of the 1933 Act
### Against All Defendants

46. Plaintiff repeats and realleges ¶¶1-45 by reference.

47. This Count is brought pursuant to §11 of the 1933 Act, 15 U.S.C. §77k, on behalf of the Class, against all defendants.

48. This Count does not sound in fraud. Plaintiff does not allege that any of the defendants had scienter or fraudulent intent, which are not elements of a §11 claim.

49. The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material fact, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

50. The defendants named herein were responsible for the contents and dissemination of the Registration Statement as signatories and/or directors of the Company or as the underwriters of the IPO.

51. RTR is the registrant for the IPO. As the issuer of the shares, RTR is strictly liable to plaintiff and the Class for the misstatements and omissions.

52. None of the defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

53. By reason of the conduct alleged herein, each defendant violated, and/or controlled a person who violated, §11 of the 1933 Act.

54. Plaintiff purchased RTR Class A common stock registered pursuant to the Registration Statement and traceable to the IPO.

55. Plaintiff and the Class have sustained damages. The value of RTR Class A common stock has declined substantially subsequent to and due to defendants' violations.

56. At the time of their purchases of RTR Class A common stock, plaintiff and other members of the Class were without knowledge of the facts concerning the wrongful conduct alleged herein. Less than one year has elapsed from the time that plaintiff discovered or reasonably could have discovered the facts upon which this complaint is based to the time that plaintiff filed this complaint. Less than three years have elapsed between the time that the securities upon which this Count is brought were offered to the public and the time plaintiff filed this complaint.

## COUNT II

### For Violation of §15 of the 1933 Act
### Against RTR and the Individual Defendants

57. Plaintiff repeats and realleges ¶¶1-56 by reference.

58. This Count is brought pursuant to §15 of the 1933 Act. 15 U.S.C. §77o, against RTR and the Individual Defendants.

59. The Individual Defendants controlled RTR at the time of the IPO by virtue of their dominant voting power and status as the Company's controlling shareholders, directors, and/or senior officers. The Individual Defendants each had a series of direct and/or indirect business and/or personal relationships with other directors and/or officers and/or major shareholders of RTR.

60. Defendant RTR controlled the Individual Defendants and all of its employees.

61. The defendants named herein each were culpable participants in the violations of §11 of the 1933 Act alleged in the Counts above, based on their participation in the Company's reporting on financial and operational results to investors, having signed or authorized the signing

of the Registration Statement, selling RTR Class A common stock in the IPO, and/or having otherwise participated in the process that allowed the IPO to be successfully completed.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for relief and judgment as follows:

A. Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B. Awarding compensatory damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

D. Awarding such equitable/injunctive or other relief as the Court may deem just and proper, including permitting any putative Class members to exclude themselves by requesting exclusion through noticed procedures.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

DATED: November 14, 2022    ROBBINS GELLER RUDMAN
    & DOWD LLP
SAMUEL H. RUDMAN
VICKI MULTER DIAMOND


*s/ Samuel H. Rudman*
SAMUEL H. RUDMAN

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)
srudman@rgrdlaw.com
vdiamond@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
BRIAN E. COCHRAN
655 West Broadway, Suite 1900
San Diego, A 92101
Telephone: 619/231-1058
619/231-7423 (fax)
bcochran@rgrdlaw.com

JOHNSON FISTEL, LLP
RALPH M. STONE
1700 Broadway, 41st Floor
New York, NY 10019
Telephone: 212/292-5690
212/292-5680 (fax)
ralphs@johnsonfistel.com

Attorneys for Plaintiff

- 17 -

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

Rajat Sharma ("Plaintiff") declares:

1. Plaintiff has reviewed a complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff has made the following transaction(s) during the Class Period in the securities that are the subject of this action: *See* attached Schedule A.

5. Plaintiff has not sought to serve or served as a representative party in a class action that was filed under the federal securities laws within the three-year period prior to the date of this Certification except as detailed below: None.

6. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 10 day of November, 2022.

DocuSigned by:
*RAJAT SHARMA*
—52397DE827174E8...
Rajat Sharma

RENT THE RUNWAY

# SCHEDULE A

## SECURITIES TRANSACTIONS

**Stock**

| Date Acquired | Amount of Shares Acquired | Price |
|---|---|---|
| 10/27/2021 | 100 | $21.00 |
| 11/03/2021 | 100 | $15.80 |
| 11/29/2021 | 50 | $14.45 |
| 11/30/2021 | 50 | $13.40 |
| 12/17/2021 | 19 | $8.29 |
| 02/02/2022 | 100 | $5.02 |

Prices listed are rounded up to two decimal places.