**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movant and Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| RAJAT SHARMA, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> RENT THE RUNWAY, INC., JENNIFER Y. HYMAN, SCARLETT O'SULLIVAN, TIM BIXBY, JENNIFER FLEISS, SCOTT FRIEND, MELANIE HARRIS, BETH KAPLAN, DAN NOVA, GWYNETH PALTROW, CARLEY RONEY, DAN ROSENSWEIG, MIKE ROTH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., AND TELSEY ADVISORY GROUP LLC, <br><br> Defendants. | **CASE No.: 1:22-cv-06935-MKB-VMS** <br><br> **MEMORANDUM OF LAW IN SUPPORT OF MOTION OF SANU BABU TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL** <br><br> <u>**CLASS ACTION**</u> |

Plaintiff Sanu Babu ("Movant") respectfully submits this memorandum of law in support of its motion for an Order, pursuant to Section 27 of the Securities Act of 1933 ("Securities Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of Rent the Runway ("RTR" or the "Company") securities pursuant and/or traceable to the Company's October 27, 2021 initial public offering (the "IPO"); and

(b) approving Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

This action was commenced on November 14, 2022 against the Company, Jennifer Y. Hyman, Scarlett O'Sullivan, Tim Bixby, Jennifer Fleiss, Scott Friend, Melanie Harris, Beth Kaplan, Dan Nova, Gwyneth Paltrow, Carley Roney, Dan Rosensweig, Mike Roth, Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Piper Sandler & Co., Wells Fargo Securities, LLC, JMP Securities LLC, Keybanc Capital Markets Inc., and Telsey Advisory Group LLC for violations under the Securities Act. That same day, an early notice pursuant to the PSLRA advising class members of, *inter alia*, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff was issued. *See* Ex. 1 hereto.

Defendant Rent the Runway is an e-commerce platform that allows users to rent, subscribe, or buy designer apparel and accessories. The Company is incorporated in Delaware with headquarters in Brooklyn, New York. The Company maintains a dual-class share structure designed to concentrate control over the Company in the hands of insiders out of proportion with their economic stake. Class A and Class B shares are identical, except that Class A shares entitle the holders to one vote per share, while Class B shares entitle the holders to 20 votes per share.

1

The complaint alleges that the Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and failed to make adequate disclosures required under the rules and regulations governing the preparation of such documents. Specifically, the Registration Statement made false and/or misleading statements and/or failed to disclose that: (1) the Company was continuing to face extraordinary business headwinds, such as transportation headwinds and labor wage rate increases, from the COVID-19 pandemic; (2) the Company's active subscriber enrollments had sharply decelerated from the growth trajectory represented in the Registration Statement and, as a result, the Company was several months away from approaching its pre-pandemic levels of active subscriptions; (3) the Company needed to substantially increase marketing and advertising costs from historical figures in order to attempt to grow its active subscriber network; (4) the Company was suffering from ballooning fulfillment and transportation costs; (5) the Company was suffering accelerating operational losses at the time of the IPO and was far less likely to achieve profitability in the near term, if ever, than represented; and (6) as a result, the Registration Statement was materially false and/or misleading and failed to state information required to be stated therein.

On October 4, 2021, the Company filed with the SEC a registration statement on Form S-1 for the IPO, which, after several amendments, was declared effective on October 26, 2021 (the "Registration Statement"). On October 27, 2021, the Company filed with the SEC a prospectus for the IPO on Form 424B4, which incorporated and formed part of the Registration Statement (the "Prospectus"). The Registration Statement and Prospectus were used to sell to the investing public 17 million shares of RTR Class A common stock at $21 per share for $357 million in gross offering proceeds, which was used in substantial part to pay back debt from certain of the Company's private equity backers.

2

The Registration Statement claimed that RTR was experiencing rapid growth at the time of the IPO. For example, the Registration Statement stated that RTR's revenue had increased to $80.2 million for the first six months of its fiscal 2021, compared to $69 million during the last six months of its fiscal 2020. The Registration Statement also claimed that the "COVID-19 pandemic has accelerated our consumer tailwinds" as "consumer values have shifted the landscape towards the Closet in the Cloud and access over ownership." The Registration Statement further stated that RTR "continue[d] to experience strong momentum in the third quarter of fiscal year 2021."

Further, the Registration Statement highlighted the Company's purported low marketing cost, stating that since RTR's inception, "organic growth, or word-of-mouth marketing, has been a key advantage for RTR," which has allowed the Company to spend "less than 10% of total revenue on marketing." Although the Registration Statement stated that RTR "plan[ned] to significantly increase spending and run marketing campaigns to acquire additional subscribers and customers," this was stated in the context of reversing RTR's decision to have "previously paused paid marketing during portions of the pandemic as a result of COVID-19" rather than increasing marketing spend substantially above pre-pandemic historical trends. In addition, the Registration Statement cited RTR's "continued focus on marketing efficiency" to grow its subscriber base. The Registration Statement further stated that RTR "acquire[s] subscribers efficiently," asserting that "88% of [its] lifetime customers hav[e] joined organically."

The Registration Statement also highlighted RTR's purported operating efficiencies. The Registration Statement stated that RTR designed and patented its technology "to support the processes in our fulfillment centers and ensure that we can process orders efficiently and extend the useful life of our products." The Registration Statement represented that RTR has "automated various parts of the fulfillment process including picking, order consolidation and packing" in

order to drive "improvement in fulfillment costs" and that RTR expects further "fulfillment and operational efficiency gains."

In addition, the Registration Statement stated that RTR was experiencing lower fulfillment costs as a percentage of revenue leading up to the IPO "as a result of efficiencies in transportation rates and fulfillment labor." The Registration Statement represented that RTR's "[f]ulfillment expenses were $53.0 million for fiscal year 2020, a decrease of $65.1 million, or 55.1%, compared to $118.1 million in fiscal year 2019." The Registration Statement also stated that RTR's "transportation management system allows us to rate shop across these providers and opt into the best shipping method based upon cost and capacity." The Registration Statement similarly stated that the Company's "processes result in labor and other cost savings, while increasing our total shipment capacity and increasing the total lifetime of products, our biggest asset."

On December 8, 2021, RTR issued a press release announcing the Company's financial results for its third fiscal quarter ended October 31, 2021 – *i.e.*, the quarter ***during which*** the IPO was conducted. The release stated that RTR had suffered a quarterly net loss of $87.8 million, nearly double its loss of $44.3 million the prior year quarter. The release also stated that RTR's fulfillment expenses rose significantly to $19.2 million from $11 million the prior year quarter, a 75% increase, and that its marketing expenses increased ***more than tenfold*** from $1.4 million in the prior year quarter to $10.8 million. Additionally, the Company reported only 116,833 active subscribers at quarter's end and that it expected just 121,000 to 122,000 active subscribers for the following quarter, representing a sharp deceleration in active subscriber growth and indicating that the Company was several months away from achieving pre-pandemic active subscribers.

Also on December 8, 2021, RTR hosted an earnings call with analysts and investors to discuss the results. During the call, defendant O'Sullivan acknowledged that the Company was suffering "transportation headwinds" and "labor wage rate increases" during the quarter. Although the Registration Statement failed to disclose these headwinds, defendant O'Sullivan stated not only that they predated the IPO but also that they were "anticipated." Defendant O'Sullivan further stated that substantially increased marketing spend was part of RTR's "plan" and that the Company would "keep marketing spend at approximately 10% of revenue annually."

On April 13, 2022, RTR issued a press release for its fourth fiscal quarter and year ended January 31, 2022. The release stated that the Company's active subscribers had actually ***declined*** sequentially during the quarter to just 115,240 active subscribers at quarter's end. The release also stated that the Company's fulfillment and marketing expenses remained elevated compared to historical trends at 32% and 13% of quarterly revenue, respectively.

On June 9, 2022, RTR issued a press release for its fiscal quarter ended April 30, 2022. The release again stated that the Company's fulfillment and marketing expenses remained elevated compared to historical trends at 34% and 13% of quarterly revenue, respectively.

On September 12, 2022, RTR issued a press release for its fiscal quarter ended July 31, 2022. The release stated that the Company had achieved only 124,131 active subscribers at quarter end. The release further stated that the Company had launched a restructuring plan to reduce costs that included a 24% workforce reduction – a remarkable development coming less than one year after the Company had raised $357 million from investors in the IPO.

By October 2022, the price of RTR Class A common stock had fallen below $2 per share, ***90% below*** the price at which RTR common stock had been sold to the investing public less than one year prior.

As a result of Defendants' wrongful acts and omissions, and the decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

Since the IPO, and as a result of the disclosure of material adverse facts omitted from Rent the Runway's Registration Statement, the price of RTR Class A common stock has fallen significantly below the IPO price, damaging Plaintiff and Class members.

## ARGUMENT

### I.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 77z-1(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A.  Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that it is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that …has the largest financial interest in the relief sought by the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax/Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness, Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005). To calculate financial loss, the last-in-first-out ("LIFO") methodology is the preferred method. *Bo Young Cha v. Kinross Gold Corp.*, No. 12 CIV. 1203 PAE, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses."); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) ("courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff.").

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

Movant lost $52,985.43 in connection with his purchases of Rent the Runway securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Rent the Runway securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

**C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure**

The PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

**1. Movant's Claims are Typical**

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec.*

*Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about Rent the Runway's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2. Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between its claims and those asserted on behalf of the Class. Movant also sustained financial losses from investments in Rent the Runway securities and is therefore, extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

9

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(II).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff. The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against it that would render Movant inadequate to represent the Class.

Further, Sanu Babu is a sophisticated institutional investor. Movant resides in Virginia and has been investing in the stock market for six years. Movant earned a Bachelor's Degree in Computer Science and works as a Software Engineer.

## II. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 77z-1(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movant's and Class Plaintiffs' claims, as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Ex. 4 hereto. The firm has prosecuted numerous securities

10

fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving the Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: January 13, 2023                    Respectfully submitted,

                                           **THE ROSEN LAW FIRM, P.A.**

                                           /s/ Phillip Kim
                                           Phillip Kim, Esq. (PK 9384)
                                           Laurence M. Rosen, Esq. (LR 5733)
                                           275 Madison Avenue, 40th Floor
                                           New York, New York 10016
                                           Telephone: (212) 686-1060
                                           Fax: (212) 202-3827
                                           Email: pkim@rosenlegal.com
                                           Email: lrosen@rosenlegal.com

                                           *[Proposed] Lead Counsel for Movant and Class*

11

**CERTIFICATE OF SERVICE**

I hereby certify that on January 13, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Phillip Kim

12