**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJAT SHARMA, Individually and on Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>-v.-<br><br>RENT THE RUNWAY, INC., JENNIFER Y. HYMAN, SCARLETT O'SULLIVAN, TIM BIXBY, JENNIFER FLEISS, SCOTT FRIEND, MELANIE HARRIS, BETH KAPLAN, DAN NOVA, GWYNETH PALTROW, CARLEY RONEY, DAN ROSENSWEIG, MIKE ROTH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., and TELSEY ADVISORY GROUP LLC,<br><br>                  Defendants. | Case No. 1:22-cv-6935-OEM-VMS |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, CERTIFICATION UNDER 28 U.S.C. § 1292(B)**

WILLKIE FARR & GALLAGHER LLP
Todd G. Cosenza
Charles D. Cording
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000

*Counsel for Defendants Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Piper Sandler & Co., Wells Fargo Securities, LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., and Telsey Advisory Group LLC*

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Mary Eaton
Meredith Kotler
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
Telephone: (212) 277-4000

*Counsel for Defendants Rent the Runway, Inc., Jennifer Y. Hyman, Scarlett O'Sullivan, Tim Bixby, Jennifer Fleiss, Scott Friend, Melanie Harris, Beth Kaplan, Dan Nova, Gwyneth Paltrow, Carley Roney, Dan Rosensweig, and Mike Roth*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................................II

PRELIMINARY STATEMENT .............................................................................................1

ARGUMENT ...........................................................................................................................3

I.     THE COURT SHOULD GRANT RECONSIDERATION AND DISMISS THE REMAINING CLAIMS..................................................................................................3

A.    THE ORDER OVERLOOKS FACTS AND CONTROLLING PRECEDENT REQUIRING DISMISSAL OF THE SHIPPING COSTS STATEMENTS ......................4

B.    THE ORDER OVERLOOKS FACTS AND CONTROLLING PRECEDENT REQUIRING DISMISSAL OF THE CUSTOMER THEFT STATEMENTS ...................8

C.    THE ORDER OVERLOOKS FACTS AND CONTROLLING PRECEDENT REQUIRING DISMISSAL OF THE INSURANCE COVERAGE STATEMENT .........14

D.    THE ORDER OVERLOOKS THE DISPOSITIVE ISSUE OF NEGATIVE CAUSATION .................................................................................................................16

II.    ALTERNATIVELY, THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL UNDER SECTION 1292(B)...........................................18

A.    LIABILITY FOR SHIPPING COST RISK DISCLOSURES...........................................19

B.    QUALITATIVE MATERIALITY OF ALLEGED REVENUE LOSS FROM THEFT...20

C.    PROPRIETY OF PLEADING STAGE DISMISSAL FOR NEGATIVE CAUSATION.21

CONCLUSION........................................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*,
28 F.4th 343 (2d Cir. 2022) ...............................................................................................5

*Asay v. Pinduoduo Inc.*,
2020 WL 1530745 (S.D.N.Y. Mar. 30, 2020) .................................................................5, 15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)..................................................................................................18

*In re BHP Billiton Ltd. Sec. Litig.*,
276 F. Supp. 3d 65 (S.D.N.Y. 2017).....................................................................................13

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) .........................................................................18

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
665 F. Supp. 2d 404 (S.D.N.Y. 2009)..............................................................................17, 18

*Brown v. Ambow Educ. Holding Ltd.*,
2014 WL 523166 (C.D. Cal. Feb. 6, 2014)...........................................................................17

*Buhrke Fam. Revocable Tr. v. U.S. Bancorp*,
2024 WL 1330047 (S.D.N.Y. Mar. 28, 2024) ...................................................................6, 19

*City of Dearborn Heights Act 345 Police & Fire R v. Axonyx, Inc.*,
374 F. App'x 83 (2d Cir. 2010) .............................................................................................6

*In re Coty Inc. Sec. Litig.*,
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ........................................................................14

*Dalberth v. Xerox Corp.*,
766 F.3d 172 (2d Cir. 2014)................................................................................................15

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)......................................................................................9, 10, 11

*In re FBR Inc. Sec. Litig.*,
544 F. Supp. 2d 346 (S.D.N.Y. 2008)...............................................................................6, 19

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012).................................................................................19

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
574 F.3d 29 (2d Cir. 2009)..................................................................................................17

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000)................................................................................................11

*Garnett v. RLX Tech. Inc.*,
632 F. Supp. 3d 574 (S.D.N.Y. 2022)................................................................................16

*Gastelu v. Breslin*,
2005 WL 2271933 (E.D.N.Y. Sept. 12, 2005) ..................................................................14

*In re Gentiva Sec. Litig.*,
971 F. Supp. 2d 305 (E.D.N.Y. 2013) ..............................................................................4, 9

*Gutman v. Lizhi Inc.*,
633 F. Supp. 3d 681 (E.D.N.Y. 2022) ...........................................................................13, 14

*Holbrook v. Trivago N.V.*,
2019 WL 948809 (S.D.N.Y. Feb. 26, 2019)......................................................................13

*Hubiack v. Li-Cycle Holdings Corp.*,
2024 WL 2943959 (S.D.N.Y. June 10, 2024) ...................................................................16

*Hutchison v. Deutsche Bank Sec. Inc.*,
647 F. 3d 479 (2d Cir. 2011)..........................................................................................10, 11

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp.*,
783 F.3d 383 (2d Cir. 2015)....................................................................................10, 11, 21

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011)...........................................................................10, 11, 13, 21

*McMahan & Co. v. Wherehouse Ent., Inc.*,
65 F.3d 1044 (2d Cir. 1995).......................................................................................17, 18, 22

*Medina v. Tremor Video, Inc.*,
640 F. App'x 45 (2d Cir. 2016) .....................................................................................12, 13

*Morangelli v. Chemed Corp.*,
275 F.R.D. 99 (E.D.N.Y. 2011) ....................................................................................16, 18

*In re MSC Indus. Direct Co.*,
283 F. Supp. 2d 838 (E.D.N.Y. 2003) ...........................................................................6, 12

*Naughright v. Weiss*,
2012 WL 2402153 (S.D.N.Y. June 26, 2012) ...................................................................16

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir.2000) ...............................................................6

*United States ex rel. Quartararo v. Cath. Health Sys. of Long Island Inc.*,
    521 F. Supp. 3d 265 (E.D.N.Y. 2021) ....................................................19, 20, 21, 22

*Ramos* v. *Telgian Corp.*,
    2016 WL 1959746 (E.D.N.Y. May 3, 2016) ........................................................20

*Republic of Colombia v. Diageo N. Am. Inc.*,
    619 F. Supp. 2d 7 (E.D.N.Y. 2007) ...........................................................3, 19, 22

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)........................................................................7

*Saunders v. NYC Dep't of Educ.*,
    2010 WL 2985031 (E.D.N.Y. July 20, 2010)......................................................4

*Sedona Corp. v. Ladenburg Thalmann & Co.*,
    2006 WL 2034663 (S.D.N.Y. July 19, 2006) ...............................................4, 16, 18

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995).....................................................................3, 9

*Tantaros v. Fox News Network, LLC.*,
    465 F. Supp. 3d 385 (S.D.N.Y. 2020).....................................................19, 21

*In re Time Warner Inc. Sec. Litig.*,
    9 F.3d 259 (2d Cir. 1993)........................................................................15

*Wandel v. Gao*,
    590 F. Supp. 3d 630 (S.D.N.Y. 2022)......................................................6, 19

*Wilson v. Merrill Lynch & Co.*,
    671 F.3d 120 (2d Cir. 2011)......................................................................7

*In re XP Inc. Sec. Litig.*,
    524 F. Supp. 3d 23 (E.D.N.Y. 2021) ..........................................................14

**Statutes**

15 U.S.C. § 77k...............................................................................1, 16, 18, 22

15 U.S.C. § 77i......................................................................................1, 16, 18

15 U.S.C. § 77o...........................................................................................16

28 U.S.C. § 1292(b) ............................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 59 ...........................................................................................................1, 3

FedEx, "Determining the Cost of Declared Value," https://www.fedex.com/en-
    us/shipping/declared-value.html#:~:text=The%20first%20$100%20of%
    20value,amount%20that%20exceeds%20that%20$100 (Oct. 6, 2024) ..................................15

L. Civ. R. 6.3...................................................................................................................1, 3

SEC.Gov, Rent the Runway Prospectus on Form 424(b)(4), filed with the SEC on
    Oct. 27, 2021, https://www.sec.gov/Archives/edgar/data/1468327/0001193
    12521308630/d194411d424b4.htm(Oct. 9, 2024)...................................................................7

SEC's Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150-01 (Aug. 19, 1999)............9, 10, 22

## PRELIMINARY STATEMENT

Defendants respectfully request that the Court reconsider, in part, its September 25, 2024 Memorandum & Order, ECF 77 (the "Order") pursuant to Fed. R. Civ. P. 59(e) and L. Civ. R. 6.3 or, alternatively, certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).[1] Reconsideration or certification for interlocutory appeal is warranted here because the Order is contrary to decisions of the Second Circuit and other district courts in this Circuit addressing the circumstances under which risk factor statements are actionable, when the statements of unnamed former employees may be credited, when a presumptively immaterial fact may nonetheless be material, and when dismissal on the pleadings is appropriate based on negative causation. Reconsideration is also warranted because the Court overlooks multiple facts in the record bearing on all those determinations.

In its Order, the Court held, in relevant part, that Plaintiffs adequately alleged that Defendants made materially false or misleading statements in certain of RTR's Form S-1 risk factor disclosures for the purposes of pleading a claim under Sections 11 and 12(a)(2) of the Securities Act. Order at 14-15, 20-21. The Court should grant partial reconsideration of its Order with respect to the sufficiency of Plaintiffs' allegations as to these statements for at least four reasons.

*Disclosures About Shipping Costs*: The Court's holding that Plaintiffs adequately alleged that the Company's risk factor disclosures regarding rising shipping costs were false because RTR did not disclose that FedEx allegedly doubled its rates due to RTR's "reduction in shipping," Order at 33-35, overlooks multiple record facts compelling a different result, including that the Company

---

[1] Capitalized terms used but not defined herein shall have same meaning as in the Memorandum of Law in support of Defendants' Motion to Dismiss, ECF 70 ("MTD Br.") and Reply Memorandum, ECF 73 ("Reply").

undisputedly disclosed that shipping costs were on the rise and that FE-4 was not in a position to know the facts they allegedly relayed to Plaintiffs' private investigators. Regardless, under the law of this Circuit, the supposed *reasons* for the disclosed cost increases were not required to be separately disclosed.

*Disclosures About Theft*: The Court ruled inconsistently with well-settled Second Circuit law in holding that RTR should have disclosed that it allegedly suffered $6 million in lost revenues as a result of inventory theft. Contrary to the Second Circuit's directive, the Court credited the alleged statements of FE-2, a customer relations Training Specialist, who was in no position to "estimate" such revenue losses, a complex assessment that the Company did not perform. The Court also erred in holding that an alleged revenue loss of $6 million annually was "material" because, despite being quantitatively immaterial, "loss of clothing … through theft or fraud" was a "significant aspect" of RTR's business. By that logic, however, any loss of inventory would be required to be specifically disclosed, no matter how small. None of the Second Circuit cases cited in the Order supports that reasoning. For the same reasons and more, the Company's disclosures on this point did not violate Item 303.

*Disclosures About Insurance*: The Court erred in holding that the Company had to disclose that it carried insufficient insurance to cover losses from inventory theft. Such self-flagellation is not required under the law of this Circuit. Regardless, the Court erroneously conflated standard-issue shipping carrier insurance on lost packages with the property insurance RTR maintained with its carriers.

*Negative Causation*: The Order did not address Defendants' arguments on negative causation, which is dispositive here. Indeed, Plaintiffs had no real argument regarding negative causation except to say it had been raised prematurely and, supposedly, relied on materials outside

-2-

the Complaint. Those arguments are meritless under the law of this Circuit. As such, the motion should have been granted on this ground because none of the "corrective" disclosures cited in the CAC concerned the alleged misstatements.

Alternatively, Defendants request that the Court certify the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) with respect to the issues addressed herein. Courts in this Circuit do not hesitate to grant leave to seek immediate appellate review where, as here, the decision at issue conflicts with rulings other courts in this Circuit or has broad-ranging implications for other litigants. Because the issues for which Defendants seek certification present a direct conflict between the Court's Order and the case law in the Second Circuit on questions that are dispositive of Plaintiffs' claims, and interlocutory appeal could substantially narrow the issues or even terminate this action, there is good cause for the Court to grant this relief. *See, e.g., Republic of Colombia v. Diageo N. Am. Inc.*, 619 F. Supp. 2d 7, 11 (E.D.N.Y. 2007) (interlocutory review appropriate because "[i]f Defendants were to prevail on even one of these defenses, the action would be dismissed in whole or in part, thus eliminating or significantly reducing the costs of discovery").

## ARGUMENT

I.     **THE COURT SHOULD GRANT RECONSIDERATION AND DISMISS THE REMAINING CLAIMS**

Pursuant to Fed. R. Civ. P. 59(e) and L. Civ. R. 6.3, reconsideration is warranted based on "controlling decisions or data that the court overlooked … that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (affirming reconsideration grant based on overlooked Circuit precedent). Applying this test, courts within the Second Circuit grant reconsideration in the motion to dismiss context where the court overlooked facts in the record or precedent pointing to a different result. *In re Gentiva*

*Sec. Litig.*, 971 F. Supp. 2d 305, 336-37 (E.D.N.Y. 2013), on reconsideration in part (Dec. 10, 2013) (granting dismissal on reconsideration where court overlooked record facts); *Saunders v. NYC Dep't of Educ.*, 2010 WL 2985031, at *2-3 (E.D.N.Y. July 20, 2010) (same where claim was precluded as a matter of law by court's prior findings); *Sedona Corp. v. Ladenburg Thalmann & Co.*, 2006 WL 2034663, at *5-7 (S.D.N.Y. July 19, 2006) (same where court overlooked argument in briefing and that complaint conceded facts barring claims as a matter of law).

### A.       The Order Overlooks Facts and Controlling Precedent Requiring Dismissal of the Shipping Costs Statements

The Court held that RTR's risk disclosures about "shipping costs" ¶¶ 128, 130, are actionable because RTR failed "to disclose the doubling in FedEx's shipping prices."  Order at 32. That omission, per the Order, rendered the Company's risk factor warnings about rising shipping costs misleading because, given the Company's disclosures that shipping costs were one of the "primary costs" associated with "fulfillment expenses" and that the "substantial majority" of RTR's "inbound shipments" were "returned through a single vendor," the alleged doubling of rates for that single vendor would have been "plausibly material" to investors.  *Id.* at 34-35.

In reaching that conclusion, however, the Court overlooked the facts of record regarding the rising shipping rates.  News of the uptick in shipping prices prior to the IPO was broadly reported by the media.  Exs. 5, 6, 14; *see* MTD Br. at 5 & n.2.  Indeed, before the IPO, the *Wall Street Journal* reported that "both FedEx and UPS approached several large shippers with new contracts that imposed double-digit cost increases through a combination of higher rates and fewer discounts."  Ex. 14.  The Court also overlooked that RTR disclosed the fact that shipping rates were increasing in an August 20, 2021 presentation provided to analysts. Ex. 20 at 98.  There can be no serious question, therefore, that investors were well aware that the Company was facing pricing pressure from its shippers at the time of the IPO, just like every other e-commerce business.

-4-

Instead, the Order focuses on the Company's disclosure in its October 4, 2021 S-1 and two amendments to the same, which informed investors of rising shipping costs because of "macro global transportation network inefficiencies." Order at 35; Ex. 15 at 86; Ex. 16 at 92; Ex. 19 at 93. The Court reasoned this was insufficient because, per FE-4, the reason FedEx had raised its rates was supposedly because of RTR's own "*known* reduction in shipping items with FedEx." Order at 35. In so holding, the Court failed to address the fact that the *reasons* for the shipping costs increase were immaterial. *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*, 28 F.4th 343, 354–55 (2d Cir. 2022) (where the risk that a clinical trial "may fail" was fully disclosed, there was no "obligation to disclose *why* the trial might fail"); *accord Asay v. Pinduoduo Inc.*, 2020 WL 1530745, at *10 (S.D.N.Y. Mar. 30, 2020), *aff'd*, 2021 WL 3871269 (2d Cir. Aug. 31, 2021). Moreover, the Court incorrectly inferred that FedEx increased rates due to RTR's "reduction in shipping." Order at 35. The CAC nowhere alleges that. *See* ¶ 93 (FE-4 allegation that RTR was not "shipping enough"). Nor could the CAC so allege since RTR's shipping volume had *increased* as demand improved in 2021, as the record shows. *See* Order at 5. In any event, FE-4's allegation that FedEx increased rates in 2021 because RTR was not "shipping enough" makes no sense. It would be logical to infer that FedEx would raise rates at the time RTR's shipments were declining in 2020, not when they were recovering in 2021.

What is more, the Order overlooks the CAC's silence on how FE-4 supposedly came to learn of this information. The CAC does not describe FE-4's job duties, relay conversations they had with others at RTR about shipping, describe any documents they may have seen (including the FedEx notice, the FedEx contract, or the UPS contract), claim that FE-4 communicated directly with FedEx or UPS, negotiated the terms of their agreements with the Company, or was familiar with the rate structure provided. The CAC alleges only FE-4's title — "Senior Operations

Manager, in Outbound and Inventory Control and Quality Assurance (ICQA)" prior to August 2021 and "Senior Manager, Operations Integration and ICQA" beginning in August 2021. ¶ 84. The CAC gives no indication that FE-4 was in a position to know the information the CAC attributes to them, as required. MTD Br. at 18 n. 33; *See In re MSC Indus. Direct Co.*, 283 F. Supp. 2d 838, 847 (E.D.N.Y. 2003) (FE allegations insufficient without description of "work responsibilities [that] would provide them a basis for knowing" facts alleged) (citing *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir.2000)); *see also City of Dearborn Heights Act 345 Police & Fire R v. Axonyx, Inc.*, 374 F. App'x 83, 85 (2d Cir. 2010) (plaintiffs could not rely on confidential witness allegations without supplying their "factual underpinnings"). Indeed, the CAC also does not explain how FE-4 had visibility into FedEx's alleged motives. Given these deficiencies, it was an error to credit FE-4's assertions.

All of that aside, the Order applied the wrong legal standard in assessing whether the shipping costs omissions were actionable. It is well-settled that where risk factor disclosures are challenged, plaintiff must adequately plead that the warned-of risk had already "transpired—or become a near certainty" and was already "materially affecting [the] business" before the IPO. *Wandel v. Gao*, 590 F. Supp. 3d 630, 643 (S.D.N.Y. 2022) (no liability where plaintiffs failed to allege that Covid-19 materially affecting the company's operations in advance of its IPO). *See also In re FBR Inc. Sec. Litig.*, 544 F. Supp. 2d 346, 362 (S.D.N.Y. 2008) (no liability for omitting that warned-of regulatory non-compliance had already occurred unless risk that the non-compliance "would actually cause a loss" had "transpired" or "become a near certainty") (citing *Rombach v. Chang*, 355 F.3d 164, 173 (2d Cir. 2004)); *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 2024 WL 1330047, at *17 (S.D.N.Y. Mar. 28, 2024) (statements not misleading where "the specific risk that [the Company] warned against—the financial loss resulting from a failure

to safeguard personal information—had not materialized at" the time the statement was made); *Rombach*, 355 F.3d at 173 (risk disclosures not ineffective on the basis that the risks had already materialized because "handful" of adverse events cited by plaintiffs did not indicate that "the company was in trouble"); *Wilson v. Merrill Lynch & Co.*, 671 F.3d 120, 139 (2d Cir. 2011) (finding risk disclosures were not actionable where complaint failed to show that defendants disclosed only "potential risks" when the "true risk [was] 'much greater and/or is a known certainty'").

Significantly, Plaintiffs never alleged how the FedEx rate hike impacted RTR's operating results, let alone that it had already had a "material impact" or was "near[ly] certain" to do so. *See* ¶¶ 128, 130. Instead, the Order appears to assume that operating results were materially impacted by the increase because the dollar amount for "fulfillment expenses" increased to $19.2 million in 3Q21. Order at 34 (citing ¶ 140). But an increase in absolute dollars for fulfillment costs is insufficient to plead this critical element. *First*, those dollar increases make perfect sense given that RTR was experiencing increased demand, as the Court recognized, Order at 5, since all fulfillment costs would tend to rise in tandem with greater volumes, Prospectus at 98.[2] *Second*, the assumption that most of those fulfillment costs must have come from increased shipping rates imposed by vendors is not supported by the record. Fulfillment costs included "all variable costs to receive, process and fulfill customer orders," and along with shipping costs, "personnel" costs was also a "primar[y]" component. Prospectus at 98. As the Company explained, it expected the fulfillment expenses to rise in "absolute dollars" both due to competitive labor market leading to "higher wage rates" and higher "costs to ship and process … as order volume increases." *Id.*

---

[2] The Prospectus is incorporated into and/or integral to the CAC, and publicly available. Rent the Runway, Inc. Prospectus on Form 424(b)(4), SEC EDGAR (Oct. 26, 2021), https://www.sec.gov/Archives/edgar/data/1468327/000119312521308630/d194411d424b4.htm.

-7-

*Third*, a more reliable indicator is fulfillment costs as a percentage of revenue, since that shows whether the Company was managing costs effectively. *Id.* (noting RTR expected fulfillment costs to increase in absolute dollars but hoped to "offset increasing shipping costs, wage rates and cleaning/packing supply price increases," such that fulfillment costs would decrease as a percentage of revenue). RTR's public disclosures, which the Order overlooked, show that fulfillment costs as a percentage of revenue actually *declined* from 3Q19 (52% vs. 33%) and was essentially flat compared to 3Q20 (31% vs. 33%). MTD Br. at 9. Further, fulfillment costs as a percentage of revenue for the nine months ended October 31, 2021 (29.8%) were much lower than an equivalent period in 2020 (35.3%) and 2019 (46.6%), Prospectus at 105, and whatever increase occurred in 3Q21 began to reverse itself by 4Q21, MTD Br. at 11. A number of factors beyond the alleged FedEx rate increase played into this, including the Company's implementation of "several strategies" to mitigate rising shipping costs, Ex. 25 at 7-8, as lauded by analysts, *see, e.g.*, Ex. 27 at 2 (analyst coverage remarking that RTR was "proactively investing in automation and diversifying transportation"); *see also* MTD Br. at 10 n.9.

Accordingly, the Court should reconsider and dismiss the shipping costs statements in view of the above overlooked record facts and precedent. *Shrader*, 70 F.3d at 257; *Gentiva*, 971 F. Supp. 2d at 336-37.

### B. The Order Overlooks Facts and Controlling Precedent Requiring Dismissal of the Customer Theft Statements

The challenged statements regarding customer theft at ¶¶ 132, 134, 135 are alleged to be misleading for failure to disclose that "customer thefts were materially increasing at the time of the IPO, leading to at least a loss of $6 million in revenue annually." Order at 37. As a threshold issue, the Company has not and does not concede that Plaintiffs' estimated lost revenue from theft is accurate. In any event, the Court credited the CAC's allegation that customer theft caused $6

million in lost revenue annually, *id.* at 38, holding that that "level of theft" was material under a qualitative analysis and should have been disclosed, *id.* at 39-40, and that the alleged increase in theft as a result of the Company's use of drop boxes was a material trend that should have been disclosed as well, *id.* at 40-42. But these findings overlook several contrary facts and controlling precedent, and should be reconsidered.

*First,* the Court's qualitative analysis of materiality, Order at 39-40, is contrary to precedent. While the Second Circuit requires that "both quantitative and qualitative factors [] be considered in determining materiality," *ECA, Loc. 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009), the Court's analysis diverges from the Second Circuit's holdings on how those factors should be applied.

Here, the alleged amount of revenue loss, $6 million, is "presumptively immaterial" because it represents "less than 3%" of RTR's annual revenue. Order at 39.[3] The SEC's Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150, 45151 (Aug. 19, 1999) ("SAB 99") provides a "rule of thumb," adopted by the Second Circuit, that misstatements relating "to less than 5% of a financial statement carries the preliminary assumption of immateriality." *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp.*, 783 F.3d 383, 390 (2d Cir. 2015) ("*RBS*"); *ECA*, 553 F. 3d at 204 ("preliminary assumption" that below 5% loss "is unlikely to be material."). The Court did not apply this presumption. *See* Order at 39-40.

Nor do the qualitative factors tip the scales. Plaintiffs did not argue that any of the enumerated qualitative factors listed in SAB 99 had any relevance here, including whether the misstatement "masks a change in earnings", "hides a failure to meet analysts' consensus",

---

[3] Assuming FE-2 meant to refer to costs (as opposed to lost revenues), a loss of $6 million per year reflects an immaterial fraction of the Company's rental inventory before depreciation, totaling 3.3% for the year ended January 31, 2021 and 1.78% for the six months ended July 31, 2021. Prospectus at F-20.

"changes a loss into income or vice versa", "affects the registrant's compliance with regulatory requirements," "loan covenants," or "other contractual commitments", "has the effect of increasing management's compensation," or "involves a concealment of an unlawful transaction." 64 Fed. Reg. at 45151. Nevertheless, the Order held the alleged revenue losses from theft were material because "loss of clothing through …theft or fraud" was a "significant aspect of RTR's operations." Order at 40. That was error.

The relevant assessment is whether the misstatement "concerns *a segment or other portion* of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability." 64 Fed. Reg. at 45151 (emphasis added). This factor concerns significant "component[s]" of a registrant's business that may be "of distinct interest to investors." *Hutchison v. Deutsche Bank Sec. Inc.*, 647 F. 3d 479, 488 (2d Cir. 2011). This factor was meant to capture circumstances where the impact of some development was qualitatively immaterial on a company-wide basis but much more pronounced on some important segment or division. *See Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 720 (2d Cir. 2011) ("[W]here a misstatement or omission may be quantitatively small compared to a registrant's firm-wide financial results, its significance to a particularly important segment of a registrant's business tends to show its materiality."); *Hutchison*, 647 F.3d at 488 ("[M]atter material to less than all of the company's business" may be material if it pertains to "particular product or productline [sic], or division or segment"). Contrary to the Order's analysis, this factor was not meant to apply where, as here, the alleged omission relates to the company's operations as a whole or to a company with only one operating and reportable segment to its business, Prospectus at F-8. *Hutchison*, 647 F.3d at 488 ("[F]or a company that makes real estate loans," one type of loan could not be isolated as a "notional division or segment," and misstatement should be analyzed against entire "book of

-10-

business"); *see also ECA,* 553 F.3d at 204 (that the misstatement pertained to a "key client" did not constitute a "significant aspect" where revenues from transactions involving that client constituted less than .1% of total revenues).  By that logic, any loss of inventory would be required to be specifically disclosed, no matter how small.[4]

*Second*, the Order overlooks that FE-2, the sole source for the alleged loss of $6 million in revenues annually, Order at 37, could not possibly have "estimate[d]" the *revenue* impact of lost items, as Plaintiffs claim.  For one thing, the Company records losses on "unreturned" items, along with "lost" or "damaged" items as "rental product depreciation and revenue share," a specific line item on its financial statements.  Prospectus at F-10.  It did not (nor was it required to) calculate the *revenue* impact of each item of lost or stolen inventory.  That would involve a difficult and complex analysis, requiring an item-by-item assessment of each garment's acquisition cost, age, usage, expected life, popularity, and historical revenue generation, among other factors.  FE-2, a customer experience Training Specialist, ¶ 80, was in no position to undertake such a complex assessment that the Company did not perform as a matter of course, nor is FE-2 alleged to have done so or to have learned of the lost revenue estimate from anyone who ran that analysis or knew about it.  FE-2's testimony should not have been credited.  *See MSC*, 283 F. Supp. 2d at 847 (FE allegations regarding misstated reserves not sufficiently particular where no allegation that FEs "had any connection with [the] accounting department or that their work responsibilities would provide them a basis for knowing the details of the accounting").

---

[4] Defendants are not aware of any case where either the Second Circuit or any court in this District has found that this *sole* factor is sufficient to plead materiality.  To the contrary, in *RBS*, the Second Circuit held that, while a quantitatively immaterial misstatement related to a segment that was a driver of profitability, "*this factor alone [did] not tip the scales* in favor of finding the misstatements material."  783 F.3d at 391 (emphasis added); *see also Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 163-64 (2d Cir. 2000) (finding materiality where two qualitative factors were met); *ECA*, 553 F.3d at 204-205 (2d Cir. 2009) (finding immateriality based on three qualitative factors); *Hutchison*, 647 F.3d at 488-90 (finding immateriality based on two qualitative factors); *Blackstone*, 634 F.3d at 714 (reversing dismissal because, *inter alia*, district court incorrectly concluded that only one qualitative factor was present).

*Third*, the Court held that Plaintiffs adequately pled an Item 303 violation on the basis that an "upward trend of thefts" due to use of drop boxes had plausibly "already materialized by the time of the IPO." Order at 41. However, the Court overlooked the fact that the costs associated with rental product depreciation had *decreased* by $15.4 million for the six months ended July 31, 2021 from $47 million for the same period in 2020. Prospectus at 100. It also overlooked the fact that these costs fell steadily each quarter from $19.9 million in 4Q20 to $16.6 million in 1Q21 to $15 million in 2Q21. Prospectus at 105. Likewise, rental product depreciation totaled $51.5 million for the nine months ended October 31, 2021, down from $69.1 million for the same period in 2020, a difference of $17.6 million. Ex. 25 at 38. If there were any trend, therefore, it was downward, not upward.

Nor did the Court assess whether Plaintiffs had adequately alleged that the trend was "presently known to management" and "reasonably likely to have *material* effects on the registrant's financial condition or results of operations" as of the time of the IPO, as required by Item 303. Order at 40-41; *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 49 (2d Cir. 2016) (no Item 303 violation where plaintiffs failed to plead defendants were aware of "existence or impact" of alleged trend). While the Court held that Plaintiffs "plausibly allege[] an upward trend of thefts due to RTR's choice to expand clothing returns by adding more drop boxes," Order at 41, more was required.

First, there is no allegation demonstrating management's actual knowledge that drop boxes facilitated an "upward trend" in theft. The Order (i) cites disclosures in the Prospectus, but they merely note the increased use of the drop boxes, Prospectus at 95, 141; (ii) refers to FE-5's allegations regarding a *2019* meeting with management regarding "these thefts," which was well before the IPO, ¶ 101; and (iii) refers to FE-1's allegation that management was "aware of the theft

issue" but those allegations do not mention the use of drop boxes at all, ¶ 97. None of that is sufficient to demonstrate management's "actual knowledge" of the alleged trend, as required. *Medina*, 640 F. App'x at 48.

Second, the Order concludes that the alleged "pervasiveness of theft" "was plausibly already affecting RTR's revenue and operations," but makes no finding that management "had actual knowledge" at the time of the IPO that the alleged trend "would have a material impact on [RTR's] operations or revenue." *Gutman v. Lizhi Inc.*, 633 F. Supp. 3d 681, 689 (E.D.N.Y. 2022); *see also Blackstone*, 634 F.3d at 719 ("The relevant question under Item 303 is whether [defendant] reasonably expects the impact to be material."); *accord In re BHP Billiton Ltd. Sec. Litig.*, 276 F. Supp. 3d 65, 88 (S.D.N.Y. 2017) (plaintiffs "must plausibly allege a risk 'known' to [management] that was both 'likely to come to fruition' and 'reasonably likely' to have 'a material effect on' the business"); *Holbrook v. Trivago N.V.*, 2019 WL 948809, at *12 (S.D.N.Y. Feb. 26, 2019), *aff'd sub nom. Shetty v. Trivago N.V.*, 796 F.App'x 31 (2d Cir. 2019) ("[T]here must a fairly substantial probability that the known risk at issue will materialize and have a material impact."). Here, the CAC is silent on the amount or materiality of lost revenue due to the alleged upward trend of theft from expanded use of drop boxes, let alone any allegations that management "had actual knowledge" that such increase in theft would have a "material impact" on RTR's operating results. *Gutman*, 633 F. Supp. 3d at 690 (no Item 303 violation where "specific allegations concerning the material impact on [company's] revenue and operations" were "conspicuously absent"); *In re XP Inc. Sec. Litig.*, 524 F. Supp. 3d 23, 40 (E.D.N.Y. 2021) (no Item 303 violation where plaintiffs failed to allege that issuer "'reasonably expect[ed]' the known trends or uncertainties to have a material impact."); *accord In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *10 (S.D.N.Y. Mar. 29, 2016) (no Item 303 violation absent allegation that the adverse trend

-13-

"materially affected [] financial condition" prior to effective date of registration statement).

Accordingly, the Order's holding that Plaintiffs adequately stated a claim based on the customer theft statements is contrary to controlling precedent. Reconsideration should be granted and the customer theft statements should be dismissed. *Gastelu v. Breslin*, 2005 WL 2271933, at *4 (E.D.N.Y. Sept. 12, 2005) (granting reconsideration to revise court's application of precedent).

**C.  The Order Overlooks Facts and Controlling Precedent Requiring Dismissal of the Insurance Coverage Statement**

The Order finds that RTR's risk disclosure regarding the sufficiency of its "insurance coverage," ¶ 136 is actionable because it omitted that "RTR's chosen insurers 'capped' claims on property 'at $100 per shipment' and that "when RTR did file claims for lost items it was only successful 35 percent of the time." Order at 43. This finding overlooks multiple contrary undisputed facts and controlling precedent, and should be reconsidered as well.

As the Order acknowledges, the relevant risk disclosure concerns RTR's "insurance coverage" for "various operations-related risks, including employment practices liability, workers' compensation, property and business interruptions, cybersecurity and data security incidents, crime, directors' and officers' liability, and general business liabilities." ¶ 136.

But it found that disclosure to be insufficient because RTR failed to disclose that its level of insurance coverage on "lost or stolen" clothing items "would likely make such losses a subsequent net loss for RTR's bottom line." Order at 43-44. But the CAC nowhere alleges that insurance losses would result in a "net loss" for RTR. *See generally* CAC. Moreover, since the alleged $6 million revenue loss from such stolen items is not itself material, *supra* § I.B, insurance losses for such items could not have been material either. Nor was RTR under a duty to "pejorative[ly]" characterize its insurance coverage merely because it chose to speak about that coverage. *See Dalberth v. Xerox Corp.,* 766 F.3d 172, 186-87 (2d Cir. 2014); *see also* MTD Br.

-14-

at 26.  Plaintiffs' theory also ignores that FedEx publicly announces its standard insurance liability limit of $100 per shipment,[5] so that information was already known.  *Asay*, 2020 WL 1530745, at *10.

In any event, FE-6 is simply mistaken.  FE-6's claims pertain to *one* of the insured items described in the risk disclosure, "property," and to one type of risk, "lost packages."  ¶¶ 104 ("RTR was only able to obtain successful insurance claims on approximately 35 percent of *those* [lost] *packages*); 105 ("insurance claims were capped at $100 per *shipment*") (emphases added). The CAC makes no claim that insurance for such "lost packages" was the only insurance available for RTR's property, nor could it.  The CAC nowhere pleads, as required, why these alleged omissions of "additional" facts about *one* source of available insurance (*i.e.*, insurance coverage via shipping carriers) as to *one* method by which property may be damaged (*i.e.*, lost packages) rendered RTR's broad disclosure regarding its insurance coverage as a whole misleading, let alone in a material way.  *See* Order at 19; *see also In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir. 1993) (no duty "to disclose a fact merely because a reasonable investor would very much like to know that fact."); *Hubiack v. Li-Cycle Holdings Corp.*, 2024 WL 2943959, at *8 n.10 (S.D.N.Y. June 10, 2024) (no liability for failure to disclose "additional details" about statements made); *Garnett v. RLX Tech. Inc.*, 632 F. Supp. 3d 574, 605 (S.D.N.Y. 2022), *aff'd sub nom. Tseng v. De Vries,* 2023 WL 8073087 (2d Cir. Nov. 21, 2023) (no duty to disclose "factual particulars" that may be "relevant or of interest to a reasonable investor" unless "necessary to make an overall disclosure non-misleading").

Given the fundamental disconnect between FE-6's allegations pertaining to insurance

---

[5]  FedEx, "Determining the Cost of Declared Value," https://www.fedex.com/en-us/shipping/declared-value.html#:~:text=The%20first%20$100%20of%20value,amount%20that%20exceeds%20that%20$100  (Oct.  6, 2024).

-15-

recovery on lost packages and the subject of the risk disclosure (RTR's insurance coverage as a whole), and that such insurance losses are not alleged to be material, the Court should reconsider its Order and dismiss the insurance coverage statement.[6] *Naughright v. Weiss*, 2012 WL 2402153, at *3 (S.D.N.Y. June 26, 2012).

## D. The Order Overlooks the Dispositive Issue of Negative Causation

Defendants' Motion demonstrated that the CAC must separately be dismissed because, apart from any issues with respect to falsity or materiality, Plaintiffs' alleged losses were not caused by any of the alleged omissions. MTD Br. at 34-35; Reply at 17. The Order, however, did not address this dispositive point. *See generally* Order. Where, as here, the Court fails to address an argument raised in the briefing, reconsideration is warranted. *See, e.g.*, *Morangelli v. Chemed Corp.*, 275 F.R.D. 99, 125 (E.D.N.Y. 2011) (granting reconsideration where court overlooked argument in defendants' brief); *Sedona Corp.*, 2006 WL 2034663, at *7 (same).

Upon reconsideration, the Court should also dismiss the remaining claims on the grounds that they are barred by negative causation. As Defendants showed, RTR's stock price decline started well before the first alleged corrective disclosure on December 8, 2021, MTD Br. at 34, Exs. 39, 65, so none of those losses are recoverable. *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995) ("[A] price decline before disclosure may not be charged to defendants"). And none of the three stock drops alleged in the CAC, ¶¶ 143, 151, 155, caused Plaintiffs any losses either because none of them revealed the information Plaintiffs claim was wrongfully hidden. MTD Br. at 34-35. In other words, any stock price declines were due to other factors, and do not give rise to compensable losses. The Court thus erred in overlooking the

---

[6] The Court's Order denying dismissal in part of Plaintiffs' Section 12 and Section 15 claims is premised on its analysis of falsity and materiality under Section 11. Order at 47, 52. Accordingly, the Court should reconsider its Order denying in part those claims as well given the overlooked facts and controlling precedent identified herein.

indisputable facts that none of the so-called corrective disclosures revealed the information Plaintiffs allege was wrongfully omitted:

- **Shipping Costs.**  None of the three alleged corrective disclosures mentioned that FedEx had allegedly doubled RTR's shipping rates.  ¶¶ 143, 151, 155.  There was thus no revelation of previously concealed facts on the FedEx rate increase that caused the stock price to fall.  It is true that the disclosure on December 8, 2021 discussed carrier rate increases and shipping cost "headwinds", *see* MTD Br. at 7-8, these disclosures concerned market-wide shipping cost pressures, which the Company had previously disclosed.  Plaintiffs cannot recover damages for stock drops unrelated to their falsity claims.  *See, e.g.*, Ex. 27 at 2.

- **Customer Theft.**  None of the three alleged corrective disclosures mention customer theft or fraud.  ¶¶ 143, 151, 155.  There was thus no revelation of previously concealed facts on customer theft or fraud that caused the stock price to fall.

- **Insurance.**  Likewise, none of the three alleged corrective disclosures mention insurance coverage.  ¶¶ 143, 151, 155. There was thus no revelation of concealed facts on the Company's insurance coverage that caused the stock price to fall.

That is dispositive because a disclosure that does not "reveal the falsity" of the alleged prior misstatement cannot be corrective.  *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419-20 (S.D.N.Y. 2009) (negative causation "evident on the face of the complaint" where alleged corrective disclosure did not "speak at all" to alleged misrepresentations); *Brown v. Ambow Educ. Holding Ltd.*, 2014 WL 523166, at *16 (C.D. Cal. Feb. 6, 2014) ("[B]ecause the[] alleged corrective disclosures [did] not reasonably evidence the alleged misstatements or misleading omissions … the face of the [complaint] demonstrates negative causation"); *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009) (excluding from Securities Act class any investors whose losses were due to alleged corrective disclosures that did not "reveal[] the truth about the subject of any of [d]efendants' alleged misstatements"); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 106 (2d Cir. 2007) (loss causation requires a "proximate causal link between the alleged misconduct and the plaintiff's economic harm").

Nothing in Plaintiffs' Opposition changes this.  Critically, the Opposition does not refute

a dispositive fact that no link between the alleged omissions and corrective disclosures exists. *See* Opp at 34-35. Instead, Plaintiffs assert that negative causation is an affirmative defense that cannot be resolved on a motion to dismiss. *Id.* That is incorrect. Courts in this Circuit routinely dismiss Section 11 and 12(a)(2) claims based on negative causation at the pleading stage. *See, e.g.*, *Britannia Bulk,* 665 F. Supp. 2d at 419-20; *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010); *see also McMahan*, 65 F.3d at 1049 (directing district court to reconsider dismissal of Section 11 claim for negative causation). Plaintiffs also object on the basis that one cannot go outside the Complaint in resolving negative causation at this stage. Opp. at 35. But Defendants did not run afoul of any such rule. Defendants' argument relies only on the CAC, documents incorporated into or integral to the CAC, and public stock price information, all of which may be considered. *See* MTD Br. at 3 n.1; *see also id.* 34-35; Reply at 17. For these reasons, the Court should grant this motion and on reconsideration, dismiss the CAC on negative causation grounds. *Morangelli*, 275 F.R.D. at 125; *Sedona Corp.*, 2006 WL 2034663, at *7.

## II.    ALTERNATIVELY, THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL UNDER SECTION 1292(B)

A district court may certify an order for interlocutory appeal if it (a) "involves a controlling question of law" (b) "as to which there is substantial ground for difference of opinion" and (c) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). The "resolution of an issue need not necessarily terminate an action in order to be 'controlling'" for the purposes of Section 1292(b). *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012), *aff'd*, 712 F.3d 136 (2d Cir. 2013). In instances where an interlocutory appeal will materially advance the litigation, certification should be granted. *See, e.g.*, *United States ex rel. Quartararo v. Cath. Health Sys. of Long Island*

*Inc.*, 521 F. Supp. 3d 265, 278 (E.D.N.Y. 2021); *Republic of Colombia*, 619 F. Supp. 2d at 11. Should the Court deny this Motion for Reconsideration, Defendants respectfully submit in the alternative that the Order should be certified for interlocutory appeal as to three questions.

### A.     Liability for Shipping Cost Risk Disclosures

The Court's Order finding an actionable omission for failure to disclose alleged doubled FedEx rates, Order at 34-35, raises a controlling question of law regarding the circumstances under which a risk disclosure is actionable: whether a registrant is required to disclose an increase in one of its component costs where that increase is not, and cannot be, alleged to have had a material effect on the registrant's results of operations, *see supra* § I.A.  First, this is a controlling question of law because if the answer to this question is "no," then Plaintiffs' claims based on the shipping costs risk disclosures must be dismissed.  *Tantaros v. Fox News Network, LLC.*, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) ("A question of law can [] be controlling if reversal of the district court's order 'could significantly affect the conduct of the action.'").  Second, there is substantial grounds for difference of opinion on this issue because the Court's Order conflicts with how other district courts within this Circuit have interpreted Second Circuit precedent.  *See, e.g.*, *Gao*, 590 F. Supp. 3d at 643; *FBR*, 544 F. Supp. 2d at 362; *Buhrke*, 2024 WL 1330047, at *17; *see also supra* § I.A; *See Fed. Hous. Fin. Agency*, 858 F. Supp. 2d at 340 (S.D.N.Y. 2012) (certifying § 1292(b) appeal when the different outcomes reached by two other district courts "suggest[ed] that there may be grounds, however weak, for a different of opinion").  Moreover, the Court's Order has "precedential value for a large number of cases," which also weighs in favor of determining that this is a controlling question of law "has broad-reaching ramifications" for public companies, which weighs in favor of finding that there are substantial grounds for difference of opinion. *Cath. Health*, 521 F. Supp. 3d at 278.  That is because, based on the Order's holdings, registrants would be required to disclose granular details about the inputs for their financial statements regardless of

-19-

whether they ultimately made a material difference to their results of operations or not. Third, interlocutory appeal on this issue can "materially advance" this litigation because it would substantially narrow the scope of discovery from eliminating 2 out of the remaining 5 alleged misstatements found actionable by the Order. *See Ramos* v. *Telgian Corp.,* 2016 WL 1959746, at *2 (E.D.N.Y. May 3, 2016) (interlocutory appeal would "materially advance" litigation if promises to narrow issues for trial).

### B.     Qualitative Materiality of Alleged Revenue Loss from Theft

The Court's ruling regarding the materiality of the alleged omission regarding the level of revenue loss from customer theft (and implicitly the materiality of insurance losses from such theft) raises a novel issue of law: namely, whether an event which has a presumptively immaterial impact on the issuer's business can nevertheless qualify as a material omission merely because the event involved a "significant aspect" of the issuer's overall business, especially where the alleged "significant aspect" does not refer to a "particular product or productline, or division or segment of a company" but rather to alleged losses to inventory. *Hutchison*, 647 F.3d at 488. Here, the Court held that the Company's failure to disclose that it allegedly lost $6 million in annual revenues due to inventory theft should have been disclosed in the Company's risk factors—even though that amount represented less than 3% of the Company's annual revenues and as such was presumptively immaterial, and none of the enumerated qualitative factors in SAB 99 applied— because "the loss of clothing through employee and customer theft or fraud" was a "significant aspect" of the Company's operations. Order at 40.

First, this is a controlling question of law because, if the answer to this inquiry is "no," then Plaintiffs' claims based on the alleged customer theft losses and RTR's alleged lack of insurance to cover those losses must be dismissed, thereby substantially narrowing the case. *Tantaros*, 465 F. Supp. 3d at 389.

Second, there are substantial grounds for difference of opinion.  The Second Circuit has held that an alleged misstatement that was presumptively immaterial cannot be material solely on the basis that it related to a "segment" of the registrant's business that "was a driving factor in its profitability." *RBS*, 783 F. 3d at 391 ("[T]his factor alone does not tip the scales in favor" of "treating the presumptively immaterial statements as material statements.").  It has also held that although the alleged misstatement was "quantitatively small," it was not "immaterial" because it pertained to "one of the largest investments in" one of the registrant's segments. *Blackstone*, 634 F.3d at 720 (finding at least one other qualitative factor was present).  But it has never held that a presumptively immaterial impact on a company's results of operations must be disclosed merely because it concerned an important "aspect" of a business, such as inventory, shipping costs, labor availability, and the like.  Accordingly, there are grounds for a difference of opinion on the interpretation and weight of the qualitative factor relied on by the Court in determining materiality. *See Tantaros*, 465 F. Supp. 3d at 388-40.

Third, interlocutory appeal can "materially advance" this litigation because dismissal of Plaintiffs' theft and insurance claims "will streamline discovery" and narrow the issues for trial. *Cath. Health.*, 521 F. Supp. 3d at 279.  Thus, this Court should certify Defendants' request for interlocutory appeal.

### C.    Propriety of Pleading Stage Dismissal for Negative Causation

Should the Court decline to reconsider its Order and dismiss this action based on the overlooked negative causation grounds, *supra* § I.D, interlocutory review is warranted.  First, this issue presents a controlling question of law: whether stockholders' claims under Section 11 and 12 can survive dismissal where the complaint undisputedly does not allege that any of the alleged omissions was ever revealed to the market, thereby establishing negative causation on the face of the complaint. *See Tantaros*, 465 F. Supp. 3d at 389 (reversal would "terminate" action).  There

are substantial grounds for difference of opinion on this question because the Second Circuit has previously held that district courts should consider negative causation as grounds for pleading stage dismissal. *McMahan*, 65 F.3d at 1049 (directing district court to reconsider dismissal of Section 11 claim for negative causation). Moreover, should the Court decline to dismiss on negative causation grounds, the Court's holding will have "broad-reaching ramifications" for public companies and their officers and directors, *Cath. Health*, 521 F. Supp. 3d at 278, who will be forced to undergo the financial burden and distraction of defending securities law claims (which are notoriously expensive) even if plaintiffs could never show that their alleged losses were caused by the alleged misstatements because no corrective information was ever disclosed. Third, interlocutory appeal can "materially advance" this litigation because if Defendants prevail on this defense, this action would be dismissed. *Republic of Colombia*, 619 F. Supp. 2d at 11.

## CONCLUSION

For the foregoing reasons, the Court should reconsider its Order with respect to negative causation and/or the falsity and materiality of the Shipping Costs, Customer Theft, and Insurance Coverage statements. Alternatively, the Court should certify the Order for interlocutory appeal pursuant to Section 1292(b).

Dated:    New York, New York
          October 9, 2024

Respectfully submitted,

**FRESHFIELDS BRUCKHAUS DERINGER US LLP**

*/s/ Mary Eaton*
Mary Eaton
Meredith Kotler
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
Telephone: (212) 277-4000
mary.eaton@freshfields.com

-22-

meredith.kotler@freshfields.com

*Counsel for Defendants Rent the Runway, Inc., Jennifer Y. Hyman, Scarlett O'Sullivan, Tim Bixby, Jennifer Fleiss, Scott Friend, Melanie Harris, Beth Kaplan, Dan Nova, Gwyneth Paltrow, Carley Roney, Dan Rosensweig, and Mike Roth*

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Todd G. Cosenza*
Todd G. Cosenza
Charles D. Cording
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
tcosenza@willkie.com
ccording@willkie.com

*Counsel for Defendants Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Piper Sandler & Co., Wells Fargo Securities, LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., and Telsey Advisory Group LLC*

-23-