**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJAT SHARMA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RENT THE RUNWAY, INC., JENNIFER Y. HYMAN, SCARLETT O'SULLIVAN, TIM BIXBY, JENNIFER FLEISS, SCOTT FRIEND, MELANIE HARRIS, BETH KAPLAN, DAN NOVA, GWYNETH PALTROW, CARLEY RONEY, DAN ROSENSWEIG, MIKE ROTH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., and TELSEY ADVISORY GROUP LLC,<br><br>Defendants, | Case No. 22-cv-06935 |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION FOR
RECONSIDERATION OF ORDER DENYING IN PART DEFENDANTS' MOTION
TO DISMISS OR, ALTERNATIVELY, CERTIFICATION UNDER 28 U.S.C. § 1292(B)**

**TABLE OF CONTENTS**

Page

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE DENIED ......... 2

      A.   Legal Standard For Reconsideration.................................................................. 2

      B.   Reconsideration Of The Court's Order On Shipping Cost Misstatements And
           Omissions Should Be Denied ........................................................................... 2

           1.   The Court Did Not Overlook Defendants' Motion To Dismiss
                Arguments Based On Vague And Generalized Statements About
                Shipping Costs ................................................................................... 3

           2.   The Court Applied The Correct Legal Standard In Finding The
                Shipping Cost Statements Actionable.................................................. 7

      C.   Reconsideration Of The Court's Opinion On The Theft, Fraud, And Clothing
           Insurance Statements Should Be Denied ............................................................ 9

      D.   Negative Causation Is Not A Dispositive Issue And The Court's Implicit
           Denial Of Defendants' Premature And Unproven Arguments Should Not Be
           Reconsidered .................................................................................................. 15

III.  DEFENDANTS' REQUEST FOR INTERLOCUTORY APPEAL SHOULD BE
      DENIED............................................................................................................. 20

      A.   Defendants Have Not Shown Exceptional Circumstances Warranting An
           Interlocutory Appeal Under Section 1292(b) ................................................. 20

      B.   The Court's Order Does Not Involve A Controlling Question Of Law .............. 22

           1.   Any Appellate Review Would Entail An Improper Fact-Specific
                Inquiry............................................................................................. 22

           2.   Section 1292(b) Review Is Especially Disfavored In Securities Cases.... 23

      C.   The Court's Order Does Not Present A Substantial Ground For Difference Of
           Opinion ......................................................................................................... 23

      D.   An Immediate Appeal Would Not Materially Advance The Ultimate
           Termination Of The Litigation........................................................................ 24

IV.   CONCLUSION.................................................................................................... 25

i

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Adair v. Keye Kotts Assocs., Inc.*,
1998 WL 142353 (S.D.N.Y. Mar. 27, 1998) ...............................................16, 18, 19

*Advanced Analytics Inc. v. Citigroup Glob. Mkts. Inc.*,
2022 WL 21295155 (S.D.N.Y. July 26, 2022) .........................................................15

*Akerman v. Oryx Commc'ns, Inc.*
810 F.2d 336 (2d Cir. 1987)......................................................................................18

*In re Ambac Fin. Grp. Inc. Sec. Litig.*,
693 F. Supp. 2d 241 (S.D.N.Y. 2010)........................................................................20

*Analytical Survs., Inc. v. Tonga Partners, L.P.*,
684 F.3d 36 (2d Cir. 2012), *as amended* (July 13, 2012) ................................. 3-4, 13

*Armstrong v. Collins*,
2011 WL 308260 (S.D.N.Y. Jan. 31, 2011) ..............................................................20

*ATG Cap. LLC v. MGT Cap. Invs.*,
2018 WL 2108237 (S.D.N.Y. May 7, 2018) ...............................................................2

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)........................................................................................19

*Bauer v. Prudential Fin., Inc.*,
2010 WL 2710443 (D.N.J. Jun. 29, 2010).................................................................19

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
2021 WL 2646353 (E.D.N.Y. June 28, 2021) ...........................................................17

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ......................................................................................6

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ..............................................................19

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
2020 WL 1950783 (E.D.N.Y. Apr. 22, 2020) ...........................................................15

*Bonilla v. Nelson & Kennard*,
2021 WL 2400914 (E.D.N.Y. June 11, 2021) .............................................................2

*In re Britannia Bank Holdings Inc. Sec. Litig.*,
  665 F. Supp. 2d 404 (S.D.N.Y. 2009)...............................................................................17

*Brown v. Ambrow Educ. Holding Ltd.*,
  2014 WL 523166 (C.D. Cal. Feb. 6, 2024)........................................................................17

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)................................................................................................5

*Consub Del. LLC v. Schahin Engenharia Limitada*,
  476 F. Supp. 2d 305 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008) ............................24

*In re CPI Card Grp. Inc. Sec. Litig.*,
  2017 WL 4941597 (S.D.N.Y. Oct. 30, 2017) .....................................................................15

*In re Dentsply Sirona, Inc. Sec. Litig.*,
  665 F. Supp. 3d 255 (E.D.N.Y. 2023) ................................................................................14

*ECA Local 134 IBE Joint Pensions Trust of Chicago v. JP Morgan Chanse Co.*,
  553 F.3d 187 (2d Cir. 2009)....................................................................................... *passim*

*In re ECVI Colls. Holdings Corp. Sec. Litig.*,
  469 F. Supp. 2d 88 (S.D.N.Y 2006)....................................................................................6

*In re Facebook, Inc. IPO Secs. & Deriv. Litig.*,
  986 F. Supp. 2d 524 (S.D.N.Y. 2014)........................................................................ *passim*

*Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*,
  2015 WL 685159 (S.D.N.Y. Feb. 18, 2015)........................................................................18

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
  873 F.3d 85 (2d Cir. 2017).........................................................................................16, 18

*Fed. Hous. Fin Agency v. UBS Ams., Inc.*,
  858 F. Supp. 2d 306 (S.D.N.Y. 2012), *aff'd*, 712 F.3d 136 (2d Cir. 2013) ............................23

*In re Flag Telecom Holding, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)................................................................................................17

*Freidus v. Barklays Bank PLC*,
  734 F.3d 132 (2d Cir. 2011)..............................................................................................24

*Hildes v. Arthur Andersen LLP*,
  734 F.3d 854 (9th Cir. 2013) ............................................................................................18

*In re IPO Sec. Litig.*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003).................................................................................23

*Kapsis v. Brandveen*,
     2009 WL 2950245 (E.D.N.Y. Sept. 9, 2009) ..................................................................15

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
     729 F.3d 99 (2d Cir. 2013).............................................................................................2

*Levine v. AtriCure*,
     508 F. Supp. 2d 268 (S.D.N.Y. 2007)......................................................................17, 21

*Litwin v. Blackstone Grp., L.P.*,
     634 F.3d 706 (2d Cir. 2011)..........................................................................................24

*M.K.B. v. Eggleston*,
     2008 WL 3230162 (S.D.N.Y. Nov. 7, 2006) ............................................................ 15-16

*McMahan Co. v. Wherehouse Ent., Inc.*,
     650 F.3d 1044 (2d Cir. 1995)............................................................................18, 19, 22, 24

*N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*,
     709 F.3d 109 (2d Cir. 2013)............................................................................................6

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
     11 F.4th 90 (2d Cir. 2021) .............................................................................................24

*SEC v. Gruss*,
     2012 WL 3306166 (S.D.N.Y. Aug. 13, 2012)...........................................................21, 22

*Set Cap. LLC v. Credit Suisse Grp. AG*,
     996 F.3d 64 (2d Cir. 2021)...............................................................................................8

*Shrader v. CSX Transp., Inc.*,
     70 F.3d 255 (2d Cir. 1995)...............................................................................................2

*Singh v. Cigna Corp.*,
     918 F.3d 57 (2d Cir. 2019)...............................................................................................24

*Suvino v. Time Warner Cable, Inc.*,
     2017 WL 11569346 (S.D.N.Y. Nov. 6, 2017).................................................................22

*Wausau Bus. Ins. Co. v. Turner Constr. Co.*,
     151 F. Supp. 2d 488 (S.D.N.Y. 2001)...........................................................................22

*In re WRT Energy Sec. Litig.*
     2005 WL 2088406 (S.D.N.Y. Aug. 30, 2005)................................................................20

**Statutes**

15 U.S.C. § 77k..................................................................................................................16

15 U.S.C. § 77l ................................................................................................................16

28 U.S.C. § 1292(b) ..................................................................................... *passim*

**Other Authorities**

Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 19, 1999) .................................10, 11

Lead Plaintiffs, Delaware Public Employees' Retirement System and Denver Employees Retirement Plan ("Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendants' Motion for Reconsideration of Order Denying in Part Defendants' Motion to Dismiss or, Alternatively, Certification Under 28 U.S.C. § 1292(b). *See* ECF No. 72 (the "Motion" or "Mot.").

## I.    PRELIMINARY STATEMENT

Defendants, being undoubtedly disappointed with having lost a substantial portion of their motion to dismiss, bring this motion hoping that a do over will result in a different outcome. However, the well-established law in this Circuit governing motions for reconsideration and the certification of interlocutory appeals does not countenance second or third bites at the apple. To obtain reconsideration Defendants were required to demonstrate an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error and to obtain certification of an interlocutory appeal Defendants were required to show that the Court's motion to dismiss order (the "Order") (ECF No. 77) involved a controlling question of law as to which there is substantial ground for a difference of opinion and that an immediate appeal would materially advance the ultimate termination of the litigation. As explained below, Defendants have not met the test for either requested forms of relief.

Neither the law nor the facts have changed. Instead, as discussed below, Defendants merely disagree with the truth of the allegations (which must be assumed to be true on a motion to dismiss), the inferences the Court drew from the allegations (inferences that must be drawn fully in Plaintiffs favor), and the Court's application of those allegations and inferences to well-established legal standards on materiality and negative causation which are both widely recognized as inherently fact specific. Thus, for the reasons stated herein, Defendants' Motion should be denied.

## II.    DEFENDANTS' MOTION FOR RECONSIDERATION SHOULD BE DENIED

### A.    Legal Standard For Reconsideration

Defendants' Motion is merely a request for another chance at relitigating their failed motion to dismiss. As Defendants' authority concedes, this is not a proper basis for a motion reconsideration of the Court's Order. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) ("Admittedly, a motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided."). Indeed, in the Second Circuit a motion for reconsideration "should be granted only when the [moving party] identifies an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). This standard is "strict" and accordingly reconsideration should be granted only in rare circumstances. *Bonilla v. Nelson & Kennard*, 2021 WL 2400914, at *1 (E.D.N.Y. June 11, 2021); *see also ATG Cap. LLC v. MGT Cap. Invs.*, 2018 WL 2108237, at *1 (S.D.N.Y. May 7, 2018) ("The standard for granting a motion for reconsideration is strict because reconsideration of a previous order is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources."). There has been no change in the law since Defendants filed their motion to dismiss nor has there been any new evidence. With the change in law and new evidence prongs of this Circuit's reconsideration standard unavailable, Defendants ostensibly contend there has been clear error or manifest injustice, however, they do not identify any clear error or manifest injustice other than their displeasure with the Court's rulings that applied the correct legal standards to highly fact-specific issues.

### B.    Reconsideration Of The Court's Order On Shipping Cost Misstatements And Omissions Should Be Denied

Defendants seek reconsideration of the Court's finding that the Complaint sufficiently

2

alleged under Rule 8 pleading standards that the Offering Documents materially misled investors by failing to disclose that RTR was forced to switch shipping carriers just prior to the IPO because FedEx doubled its shipping rates. Mot. at 4-8; Order at 32-36. Defendants' make two arguments in a failed attempt to have this portion of the Court's Order reconsidered. First, Defendants claim that the Court overlooked facts from outside the Complaint which, if improperly construed in Defendants' favor, would have resulted in a different outcome. Mot. at 4-5. Second, Defendants argue that the Court applied the wrong legal standard in finding the shipping costs misstatements and omissions to be actionable. Mot. at 6. Neither of these arguments merit reconsideration.

      **1.**      **The Court Did Not Overlook Defendants' Motion To Dismiss Arguments Based On Vague And Generalized Statements About Shipping Costs**

Defendants claim that investors should have known at the time of the IPO about the alleged shipping cost omissions (Mot. at 4-5), *i.e.*, "the failure to disclose the doubling in FedEx's shipping prices, which then precipitated a switch back to UPS." Order at 34. Fatally, for Defendants' current efforts, the Court addressed and rejected this argument in the Order:

> Defendants attempt to avoid liability by contending that RTR had gotten ahead of any impending downside to increased shipping costs by repeatedly disclosing "advanced warnings" to investors that RTR "anticipate[d] shipping cost headwinds due to macro global transportation network inefficiencies over the next several quarters." Defs' Memo at 22 (citing various SEC Form S-1s). However, as alleged, the shipping increase that materialized was not based on "macro global network inefficiencies" but rather on RTR's own *known* reduction in shipping items with FedEx, which led FedEx to double its rates.

Order at 35.

In doing so, the Court specifically cited Defendants' argument on this point and explained that their argument failed because the purported "advanced warnings" did not address the actual alleged omission. *Id.* For this reason, Defendants' Motion must be denied. *Analytical Survs., Inc.*

3

*v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012), *as amended* (July 13, 2012) (a motion for reconsideration "is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'").

In any event, further consideration of the exhibits cited by Defendants—the August 20, 2021 analyst presentation and a September 20, 2021 *Wall Street Journal* article—would not alter the outcome.[1] With respect to the analyst presentation (MTD Ex. 11 at 21-24), Defendants cited it in the motion to dismiss as a "*see also*" following citations to the "various SEC Form S-1s" addressed in the Order. MTD Br. at 22. The analyst presentation contains no disclosure of the alleged omission and just like the SEC Form S-1s merely notes anticipated "shipping rate headwinds." *Id.* at 24. Thus, the Court's analysis of the SEC Form S-1s equally applies to the analyst presentation and reconsideration would not lead to a different outcome.

Nor would reconsideration of the *Wall Street Journal* article alter the Order's disposition. Defendants did not even cite this article in support of their argument on pages 22-23 of their motion to dismiss but rather included it in a footnote to their background section when discussing e-commerce and shipping industry trends. *See* MTD Br. at 5 n.2. This is not surprising given that the article merely reports that: (i) FedEx its "shipping rates would go up an average of 5.9% [in 2022] across most of its services," (ii) UPS was also expected to increase rates for 2022, (iii) this was the first time in eight years that FedEx or UPS "strayed above annual increase of 4.9%," (iv) "[i]n recent weeks some large shippers ... received contract renewals that cap their annual increases at 5%" as opposed to "2.5% to 3%," and (v) "after lockdowns began [in 2020], both FedEx and UPS approached several larger shippers with new contracts that imposed double-digit

---

[1] The Motion claims that the analyst presentation was submitted to the Court as "Ex. 20" in connection with their motion to dismiss. *See* Mot. at 4. However, Exhibit 20 is a copy of the Company's final prospectus. The presentation Defendants appear to be referencing is at Exhibit 11 to their motion to dismiss.

cost increases through a combination of rates and fewer discounts." MTD Ex. 14 at 1-2. Nowhere does this article mention RTR. Nor does it disclose "the doubling in FedEx's shipping prices, which precipitated [RTR to] switch back to UPS," *i.e.*, "[a] 100 percent increase of a key cost driver for RTR." Order at 34-35. In other words, the article does not even contain the information necessary to draw the inference of investor knowledge Defendants seek.[2]

Continuing to advocate for a topsy-turvy analysis of the Complaint under which inferences are to be drawn in Defendants' favor and Plaintiffs are tasked with rebutting Defendants' counter-factual narratives, Defendants take issue with the Court's reliance on allegations drawn from FE-4's statements about FedEx doubling the Company's shipping rates and its switch back to UPS. Mot. at 5-6 However, Defendants do not appear to claim that the Court applied the incorrect legal standard in assessing the allegations drawn from FE-4's statements but rather the Motion focuses on their unsurprising disagreement with those allegations and the inferences the Court drew in Plaintiffs' favor from them. This is not proper grounds for reconsideration.

The Court correctly held that: (i) Plaintiffs may rely on the statements of former employees; (ii) the Court must take their statements as true at the motion to dismiss stage; and (iii) Plaintiffs must sufficiently describe the former employees so as to support the probability that person in the position occupied by the source would possess the information alleged. Order at 23 (citing and quoting *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 123-24 (2d Cir. 2013), *Novak v. Kasaks*, 216 F.3d 300, 313-14 (2d Cir. 2000), and *City of Omaha Police & Fire Ret. Sys. v. Evoqua Water Techs. Corp.*, 450 F. Supp. 3d 379, 405

---

[2] The Court was not required to even consider these documents as they are an inappropriate subject for judicial notice. It is axiomatic that at this stage of litigation courts must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

5

(S.D.N.Y. 2020)).

Here, the Complaint describes FE-4 with the level of specificity required under Rule 8 and the related jurisprudence governing the use of former employee statements. Order at 34-35. The Complaint identifies FE-4 as a "Senior Operations Manager, Outbound and Inventory Control and Quality Assurance" ("ICQA") from September 2019 till she became "Senior Manager, Operations Integrations and ICQA in August 2021. ¶84. FE-4 left the Company in 2022. *Id.* In other words, FE-4 was a Senior Manager in inventory control, *i.e.*, shipping, before, during, and after the IPO. She was also necessarily in these roles when the Company switched shipping carriers to FedEx and back to UPS. Thus, FE-4 was in the right place at the right time to know that just prior to the IPO "FedEx had doubled the Company's shipping rates because it was not shipping enough which caused 'panic' for 30 days until the Company switched back to UPS." ¶¶92-94.

Defendants' true gripe is that they prefer a counter-factual inference that what FE-4 states is not true. *See* Mot. at 5 (asking the Court to infer that FedEx wouldn't raise rates in 2021—despite arguing elsewhere that investors should have known shipping rates were rising in 2021). However, Defendants are entitled to no such inference and the credibility of FE-4 is not to be tested on a motion to dismiss. *See N.J. Carpenters Health Fund*, 709 F.3d at 121 (holding former employee statement must be "accepted as true"); *In re ECVI Colls. Holdings Corp. Sec. Litig.*, 469 F. Supp. 2d 88, 96-97 (S.D.N.Y 2006) ("[A]t the pleading stage the issue is not whether [a] confidential witness[] [is] telling the truth. It is whether there is a probability that they know what they are talking about."); *see also Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (holding disputes over former employees statements must "await discovery"). And, in any event, FE-4's credibility is corroborated by the fact that (i) the switching back to UPS

6

occurred (Order at 33 (citing ¶94)); (ii) fulfillment expenses did increase (*id.* (citing ¶140)); and (iii) Defendant O'Sullivan admitted after the IPO that the Company "anticipated" raising transportation costs during the IPO (*id.* at 33-34 (citing ¶142)). Thus, the Motion must be denied.

**2. The Court Applied The Correct Legal Standard In Finding The Shipping Cost Statements Actionable**

Defendants next argue that the Court applied the wrong legal standard in assessing the actionability of the shipping costs statements. *See* Mot. at 6-7. Specifically, Defendants contend that "plaintiff must adequately plead that the warned-of risk had already 'transpired—or become a near certainty' and was already 'materially affecting [the] business before the IPO.'" *Id.* at 6. However, Defendants entirely ignore the Complaint's allegations which establish that the Company's shipping costs were already rising, and therefore a certainty, at the time of the IPO. ¶¶9-10, 87-88, 92-95, 129, 131. Indeed, prior to the IPO, RTR had encountered substantial difficulties in finding a reliable and affordable shipping carrier. ¶¶9-10, 87-95. Approximately a year before the IPO, RTR switched from UPS to FedEx as its primary shipping vendor because UPS was too expensive to be sustainable; however, just months before the IPO, FedEx doubled its shipping rates because the Company was not making enough shipments. ¶¶10, 92-95, 129, 131. As a result, the Company was forced to switch back to the already prohibitively expensive UPS. *Id*. Moreover, as the Court noted, immediately after the IPO, Defendant O'Sullivan admitted that the Company had "anticipated ... transportation headwinds" due to "price increases" heading into the IPO. Order at 33-34 (quoting ¶142).

These facts and the inferences to be drawn in Plaintiffs' favor sufficiently establish the plausibility that Defendants' statement that the Company "cannot predict how th[e] transition [*i.e.*, the transition from FedEx to UPS] may impact our costs" (¶128) was false and misleading at the time of the IPO. Order at 36 ("all Plaintiffs must do is plead a *plausible* material omission,

not refute Defendants' proffered argument") (emphasis in original). Likewise, the other three shipping costs statements found in the Offering Documents purported "Risk Factors" (¶¶130-31) are plausibly false and misleading for representing increases in shipping costs as a mere potentiality because the fact that the "doubling of shipping rates occurred prior to the IPO Roadshow and the issuance of the Offering Documents, but was not disclosed, is the nail in the coffin" for Defendants. Order at 35-36 (finding Defendants' preferred interpretation "not the only logical inference that may be made by a reasonable investor"); *see Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 85 (2d Cir. 2021) ("cautionary words about future risk cannot insulate from liability an issuer's failure to disclose that the risk has, in fact, materialized"). Thus, the Court's Order contains no legal error.

Finally, Defendants' remaining argument is directed at the materiality of the resulting shipping cost increase. *See* Mot. at 7-8. Defendants did not raise these arguments in their motion to dismiss (*see* MTD Br. at 22-24), and therefore cannot be the basis for reconsideration. Moreover, the Court committed no error. The Court correctly stated the standard for materiality in the Order: "Whether the defendants' representations, taken together and in context, would have misled a reasonable investor" and would the omitted information, "in the view of a reasonable investor, have 'significantly altered the total mix of information made available.'" Order at 19. As to the materiality of increasing shipping costs, the Court correctly held that Defendants themselves identified "shipping costs [as] one of the 'primary costs' associated with 'fulfillment expenses' that would impact RTR's bottom line in terms of net profit" and that "'shipping costs' 'could have a material adverse effect on [the Company's] business, financial conditions, and results of operations.'" *Id.* at 34. Defendants' request for a contrary inference or to litigate pre-discovery what amount of the fulfillment costs increases were due to increased shipping costs is

8

not only not grounds for reconsideration but also—as the Court recognized—a "fact-specific and context-specific inquiry" not appropriate for a motion to dismiss. *Id.* at 19. Thus, the Court's Order should be sustained.

C.     **Reconsideration Of The Court's Opinion On The Theft, Fraud, And Clothing Insurance Statements Should Be Denied**

Defendants next seek reconsideration of the Court's rulings with respect to the Offering Documents materially false and misleading statements and omissions concerning theft, fraud, and clothing insurance. *See* Mot. at 8-14; *see also* Order at 8-9 (listing alleged misstatements). To do so, Defendants again recycle the same arguments made in their motion to dismiss in an effort to get a second bite at the apple. Once again, their arguments fail, and reconsideration should be denied.

First, Defendants concede, as they must, that the Court applied the correct and well-established legal standard for the highly fact-specific analysis of materiality articulated by the Second Circuit in *ECA Local 134 IBE Joint Pensions Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 204 (2d Cir. 2009): "The Second Circuit has 'consistently rejected a formulaic approach to assessing the materiality of an alleged misrepresentation,' and has held that "bright-line numerical tests for materiality are inappropriate."" Order at 39 (quoting *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 162 (2d Cir. 2000), and *ECA*, 553 F.3d at 205); *see also* Mot. at 9 ("the Second Circuit requires that 'both quantitative and qualitative factors [] be considered in determining materiality'") (quoting *ECA*, 553 F.3d at 204). In other words, Defendants do not point to an intervening change in law rather they disagree with the Court's application of this fact-specific standard to the Complaint's allegations when read as true and the inferences to be drawn therefrom in Plaintiffs' favor.

Defendants claim that the Court failed to recognize a preliminary assumption under *ECA*

9

and the SEC's Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 19, 1999) ("SAB 99"), that a "five percent numerical threshold is a good starting place for assessing [] materiality" *ECA*, 553 F.3d at 204, yet the Court did exactly that. *See* Order at 39 ("For example, in *Ganino*, 'an alleged misrepresentation relating to less than two percent of defendants assets, *when taken in context*, could be immaterial as a matter of law.'") (quoting *ECA*, 553 F.3d at 205). The Court then went on, as instructed by *ECA*, to assess qualitative factors which nevertheless would make the amount of theft occurring at RTR and their lack of sufficient insurance material to investors. The Court found, based on the allegations in the Complaint and Defendants' own representations in the Offering Documents that "the clothing sourced and possessed by RTR is its most valuable physical asset," "the alleged pervasiveness of the theft was certainly material and was plausibly already affecting RTR's revenue and operations," and "RTR's chosen insurers 'capped' claims on property 'at $100 per shipment' and that when RTR did file claims for lost items it was only successful 35 percent of the time." Order at 40-43 ("loss of clothing through employee and customer theft or fraud is certainly a 'significant aspect' of RTR's operations which may be material to a reasonable investor") (quoting *ECA*, 553 F.3d at 204-05).

This fact-specific analysis of qualitative factors is where Defendants disagree with the Court and do so by advocating for a bright-line materiality test that finds no support in the law. According to Defendants, SAB 99 must be applied as a strict checklist for materiality (Mot. at 10), SAB 99 must be construed in their favor (*id.*), and materiality can only be found when there are multiple checks under SAB 99 (*id.* at 11 n.4). That is not the law.

First, *ECA* makes clear that while courts should consider SAB No. 99's factors "in determining whether the misstatement significantly altered the 'total mix' of information available to investors," SAB 99 "does not change the standard of materiality." *ECA*, 553 F.3d at

10

198 (noting SAB 99 is "persuasive authority"); *see* Order at 40 ("RTR's failure to disclose such facts about the level of theft it had experienced could plausibly 'in the view of a reasonable investor, have "significantly altered the total mix of information made available."'") (quoting *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019)).

Second, even if the Court credited Defendants unsupported and counterfactual argument that thefts of RTR's most valuable asset did not "concern[] *a segment or other portion* of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability" under SAB 99 (Mot. at 10) (emphasis in original), SAB 99 itself makes clear that the factors listed there in are not "an exhaustive list of the circumstances that may affect the materiality of a quantitatively small misstatement." *See also* Order at 39 (noting that qualitative factors to consider include "the misstatements' relation to a significant aspect of [the company's] operations") (alteration in original) (quoting *ECA*, 533 F.3d at 204-05). Thus, there is no error, and the Court should not reconsider its highly fact-specific analysis of materiality. Order at 42 ("it is the partial disclosure of thefts and fraud without supplying the additional facts as to the extent of harm these frauds and thefts were having on the company's finances that makes the allegations plausibly material to the reasonable investor"); *id.* at 43 ("It is plausible that this failure to additionally disclose these facts," *i.e.*, "that RTR's chosen insurers 'capped' claims on property 'at $100 per shipment' and that when RTR did file claims for lost items it was only successful 35 percent of the time," would be material to a reasonable investor at an IPO for the same reasons just explained when discussing theft of clothes. ***RTR's designer clothing inventory was its physical lifeblood*.**") (emphasis added).

Third, Defendants' myopic focus on the $6 million in losses RTR was suffering at the time of the IPO according to FE-2 and desire to hold that omission to a bright-line test, fails to do

11

exactly what the Second Circuit has instructed courts to do, i.e., consider the alleged misstatements and omissions "*in context*." Order at 39 (citing *ECA*, 553 F.3d at 205) (emphasis in original). The Complaint does not allege that Defendants were required to disclose the alleged omissions in a vacuum, rather Defendants were required to disclose the impact of theft because they chose to include statements concerning theft in the Offering Documents. None of Defendants' arguments change the fact that while the Company may have warned investors that theft *could* have an impact, at the time of the IPO, it had no mechanism in place to stop theft and was actively ignoring it, resulting in continued, substantial losses. Rather, the Offering Documents told investors that the Company had "*implemented fraud prevention measures, such as detection tools to identify irregular or high risk customer order patterns, to reduce the risk of fraud*." ¶132 (emphasis in original). However, the Company did not have policies or procedures in place to prevent theft, and the Company failed to take any actions against customers who stole rented merchandise other than prohibiting those customers from placing new orders. ¶133. As the Court correctly held, "it is the partial disclosure of thefts and fraud without supplying the additional facts as to the extent of harm these frauds and thefts were having on the company's finances that makes the allegations plausibly material to the reasonable investor." Order at 42.

The same is true for Defendants' arguments with respect to insurance coverage, which boil down to the suggestion that since according to Defendants' the thefts were immaterial, therefore, lack of insurance coverage for those thefts must be immaterial. *See* Mot. at 14. However, Defendants' again fail to address the alleged misstatements and omissions *in context*. As the Court recognized "[w]hile the Prospectus details a variety of potential risks that RTR might incur due to action on part of their insurers and generally discloses that RTR did have insurance coverage for, among many things, 'property,' *it entirely fails to disclose the additional critical*

12

*fact that RTR's chosen insurers 'capped' claims on property 'at $100 per shipment' and that when RTR did file claims for lost items it was only successful 35 percent of the time.*" Order at 43 (emphasis added). While the losses resulting from insufficient insurance coverage might not cross a numerical threshold, the Court was correct in finding that the Complaint sufficiently alleged actionable misstatements and omissions because "RTR's designer clothing inventory was its physical lifeblood." *Id.*

Next Defendants turn their attention to FE-2 and FE-6. As with FE-4, Defendants recycle their claim that FE-2 would not have had access to granular revenue information. *See* Mot. at 11. However, the Court has already rejected this argument in noting that it "misapprehends the relevant factual allegation[s]" which were "well corroborated by other FEs in the CAC." Order at 38 (FE-2 was corroborated by "FE-5, who was a 'senior employee' directly stationed in RTR's Asset Protection department, as well as FE-6, who dealt with shipping and carrier claims and therefore was in the plausible position to know of lost packages."). As this argument was already addressed by the Court, reconsideration is improper. *See, e.g.*, *Analytical Survs.*, 684 F.3d at 52. Defendants' attacks on FE-6 likewise fail because they merely and unsurprisingly believe she "is simply mistaken." Mot. at 15. However, as noted above, a former employee's credibility is not to be assessed on a motion to dismiss, and the allegations drawn from their statements must be accepted as true. Furthermore, Defendants' unsupported claim from outside the Complaint that the Court should infer that there were additional sources of insurance violates basic law on how inferences should be drawn on a motion to dismiss.

Finally, Defendants take issue with the Court's holding that the Complaint plausibly alleged an undisclosed trend that was "both [1] presently known to management and [2] reasonably likely to have material effects on the registrant's financial condition or results of

13

operations." Order at 40-41; *see* Mot. at 12-14. Again, Defendants point to no misapplication of law and instead only express frustration with the inferences that were, and must have been, drawn in Plaintiffs favor. In addition to seeking to relitigate the materiality of the alleged misstatements and omissions (Mot. at 13-14)—which as discussed above is not grounds for reconsideration— Defendants take issue with the inference drawn from the statements of FE-5 and FE-1. *See In re Dentsply Sirona, Inc. Sec. Litig.*, 665 F. Supp. 3d 255, 290 (E.D.N.Y. 2023) ("Item 303 claims are subject to *Basic's* test for materiality," which is "an 'inherently fact-specific finding,' which imposes a low bar on a plaintiff.") (quoting *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 718 (2d Cir. 2011)).

Unlike with FE-4 and FE-2, Defendants do not argue that the Complaint fails to adequately describe them or the basis for the knowledge,[3] rather Defendants do not agree with the inferences drawn from their statements and Defendants' statements in the Offering Documents which supported the finding that there was an "upward trend of thefts due to RTR's choice to expand clothing returns by adding more drop boxes." Order at 41. However, as stated before, Plaintiffs are entitled to "all reasonable inferences in [their] favor." Order at 36. Here, one such reasonable inference was that at the time of the IPO there was "an upward trend of thefts due to RTR's choice to expand clothing returns by adding more drop boxes." Order at 41 (noting that the expanded use of drop boxes described in the Offering Documents was sufficiently alleged to have "'facilitated the theft of rented merchandise' and that the risks of using drop boxes had already materialized by the time of the IPO"). Likewise, the Court was correct in inferring RTR's management knowledge of this trend from the alleged facts that (1) FE-5 "approached former

---

[3] Nor could they since "FE-5 was employed with Rent the Runway from March 2019 to July 2021 as a senior employee in Asset Protection" and FE-6 worked at RTR between June 2019 and July 2021 and "was responsible for increasing shipping efficiency, acting as a liaison between customers and the RTR Transportation team and dealing with shipping carrier claims." ¶¶99, 103.

Rent the Runway Director of Operations Chris Brougham about creating policies and procedures to prevent these thefts from occurring, but ... Rent the Runway never addressed this issue during FE-5's tenure," and (2) FE-1, who "reported to Becky Hyman Leader, RTR's vice president of Customer Experience," stated that "Defendant Hyman and Becky Hyman Leader were aware of the theft issue but did not take any actions to stop them and ignored recommendations … to help prevent thefts." Order at 41; *see In re CPI Card Grp. Inc. Sec. Litig.*, 2017 WL 4941597, at *3 (S.D.N.Y. Oct. 30, 2017) (plaintiffs need only allege a plausible inference of management's knowledge); *In re Blue Apron Holdings, Inc. Sec. Litig.*, 2020 WL 1950783, at *8 (E.D.N.Y. Apr. 22, 2020) ("Drawing the allegations in the light most favorable to Plaintiffs, … Defendants were aware of the existence of [the alleged trend]").

Accordingly, the Court should deny reconsideration on the materiality of the Company's statements concerning theft, fraud, and insurance coverage.

**D.      Negative Causation Is Not A Dispositive Issue And The Court's Implicit Denial Of Defendants' Premature And Unproven Arguments Should Not Be Reconsidered**

Defendants also seek reconsideration because the 54-page Order—which denied their motion in all respect except for the Complaint's claims "regarding consumer demand and … SEC Item 105 claims" (Order at 54)—did not span even more pages and address their premature and unproven affirmative defense of negative causation. Mot. at 16-18. Not addressing their negative causation argument in the level of detail desired by Defendants is not grounds for a Rule 59(e) motion. *See, e.g.*, *Advanced Analytics Inc. v. Citigroup Glob. Mkts. Inc.*, 2022 WL 21295155, at *1 (S.D.N.Y. July 26, 2022) (rejecting reconsideration sought "because 'the Court did not discuss in its … Order each of the arguments … Plaintiffs had proffered"); *Kapsis v. Brandveen*, 2009 WL 2950245, at *1 (E.D.N.Y. Sept. 9, 2009) (denying motion for reconsideration of matters "*implicitly* denied" in prior order) (emphasis in original); *M.K.B. v. Eggleston*, 2008 WL 3230162,

15

at *1 (S.D.N.Y. Nov. 7, 2006) (denying motion for reconsideration "rais[ing] nothing that was not previously considered, and rejected, by the Court, either explicitly or implicitly"). Thus, the Motion should be denied.

Even if Defendants' arguments were the proper subject for reconsideration, they provide no basis for altering the outcome of the Order. Contrary to Defendant's ardent wishes, loss causation is not an element of Plaintiff's Securities Act claims, the Complaint does not allege "corrective disclosures," and the damages prescribed under the Securities Act may only be reduced when, and if, Defendants meet the "heavy" burden of proving a negative causation defense "conclusively." *Adair v. Keye Kotts Assocs., Inc.*, 1998 WL 142353 at *3, 6-8 (S.D.N.Y. Mar. 27, 1998) (Sotomayor, D.J.)

Contrary to Defendants' outlandish and unsupported claim that Plaintiffs have a burden to "show that their alleged losses were caused by the alleged misstatements" (Mot. at 22), causation is "not a *prima facie* element to be proven" or shown by Plaintiffs. *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, 873 F.3d 85, 153 (2d Cir. 2017). Consistent with the deterrent and punitive aims of the Securities Act, Congress enacted a simple formula to straight forwardly determine damages thereunder. 15 U.S.C. § 77k(e) (damages measured by difference between the offering price and, as appropriate (1) share price on date suit was brought, or (2) price at which shares sold prior to litigation, or (3) price at which shares sold during litigation); 15 U.S.C. § 77l(a)(2) (rescissory damages for Section 12 (a)(2) claims). The Complaint alleges that the Defendants sold RTR shares for $21.00 in the IPO and the stock closed at $1.58 on November 14, 2022, the day this action was filed. ¶¶1, 15; *see also* ¶¶20-21 (citing Plaintiffs' Certifications, ECF Nos. 29-31, showing the purchase of RTR shares at prices higher than $1.58 and sale at prices lower than $21.00). Nothing more is required to be alleged or proven by Plaintiffs as to

16

damages. *See Levine v. AtriCure*, 508 F. Supp. 2d 268, 272 (S.D.N.Y. 2007) ("§ 11 can be said to create a factual presumption that any decline in value is … caused by the misrepresentation in the registration statement").

The Complaint does not, as Defendants falsely claim, allege "corrective disclosures" (Mot. at 16-18), because Plaintiffs bear no burden to allege loss causation. *See Behrendsen v. Yangtze River Port & Logistics Ltd.*, 2021 WL 2646353 at \*14 (E.D.N.Y. June 28, 2021) (explaining that the "corrective disclosure theory" is one of several methods by which a plaintiff may show loss causation by alleging negative market reaction to news revealing a prior misrepresentation in inapposite Section 10(b) fraud cases where plaintiffs do have to allege loss causation). Here, rather than pleading corrective disclosures, the Complaint does nothing more than plead some of the myriad stock drops which occurred when RTR announced poor financial metrics after the IPO—in particular, increased shipping costs, "raising transportation costs," changes in shipping carriers, and the need for a "massive restructuring plan" to reduce costs. ¶¶140, 142-43, 145, 149, 151-53, 155. The Complaint does so in support of alleging the materiality of these topics to investors.[4]

Finally, nothing in the Motion or Defendants' meager two and a half pages of prior

---

[4] Because the Complaint does not allege loss causation or "corrective disclosures," Defendants' reliance on *In re Britannia Bank Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404 (S.D.N.Y. 2009) (Mot. at 17-18), is misplaced because in that "unusual" case the complaint affirmatively plead loss causation which forced plaintiffs "to concede that the bulk of their loses [we]re not recoverable." *Id.* at 418-19. The same is true for *Brown v. Ambrow Educ. Holding Ltd.*, 2014 WL 523166 (C.D. Cal. Feb. 6, 2024) (Mot. at 17), and the class certification decision in *In re Flag Telecom Holding, Ltd. Sec. Litig.*, 574 F.3d 29 (2d Cir. 2009) (Mot. at 17), because in those cases plaintiffs brought Section 10(b) fraud claims in addition to Section 11 strict liability claims and, therefore, had to affirmatively allege loss causation. *See Brown*, 2014 WL 523166, at \*15 ("Plaintiffs affirmatively allege that the putative class was damaged by the decline in stock prices caused by the following, and only the following corrective disclosure"); *Flag Telecom*, 574 F.3d at 41 (excluding from class in-and-out traders with both Section 10(b) and Section 11 claims for failure to "establish loss causation"). The Complaint in this action contains no such allegations. *See* ¶15 ("As a result of these undisclosed, adverse facts Rent the Runway's stock plummeted falling from its offering price of $21.00 per share to close at $1.58 on November 14, 2022, the day this Action was filed.").

17

briefing on this issue (MTD at 34-35, MTD Reply at 17) comes anywhere close to meeting the "heavy" burden of proving an affirmative defense. *See Nomura*, 875 F.3d at 153 (stating that the burden of proving negative causation is "heavy"); *Akerman v. Oryx Commc'ns, Inc.* 810 F.2d 336, 341 (2d Cir. 1987) (Defendants' "heavy burden" reflects "Congress' desire to allocate the risk of uncertainty to defendants in these cases."); *see also Hildes v. Arthur Andersen LLP*, 734 F.3d 854, 860 (9th Cir. 2013) (holding defendants face a "heavy burden" to address and refute each potentially viable means by which the alleged misrepresentations could have caused any portion of the losses that are presumed by statute). If Defendants hope to be successful on their affirmative defense at a future date, they will need to disprove causation for every decline in the value of the Company's shares between the IPO and the date this action was commenced. *See, e.g.*, *McMahan Co. v. Wherehouse Ent., Inc.*, 650 F.3d 1044, 1048-49 (2d Cir. 1995) (Mot. at 16) ("any decline in value is presumed to be caused by the misrepresentation" and the "defendant … bears the burden of proving that the price decline was not related to the misrepresentations"); *Fed. Hous. Fin. Agency v. Nomura Holding Am. Inc.*, 2015 WL 685159, at \*4 (S.D.N.Y. Feb. 18, 2015) ("to make out a successful [negative causation] defense [the defendant] must prove not the mere possibility that some other factor caused the plaintiff's loss but rather that all or an identified portion of plaintiff's loss ***was*** caused by that other factor," and describing this as a heavy burden) (emphasis in original); *Adair*, 1998 WL 142353, at \*7 (Defendants' must "prove that other factors caused the decline in price of plaintiffs stock.").

In other words, Defendants do not prove negative causation, *i.e.*, disprove presumed loss causation, by claiming that only price declines on certain days could have a causal connection. Yet, that is all Defendants have attempted to do here by conclusively stating "any stock price declines were due to other [unidentified] factors." Mot. at 16. Nowhere have Defendants proven

18

what caused the stock's price declines on any date between the IPO and commencement of this action, including December 9, 2021, June 10, 2022, September 13, 2022, or any date prior to December 8, 2022.[5]

Moreover, Defendants conveniently ignore that the specifically alleged price declines on December 9, 2021, June 10, 2022, and September 13, 2022, occurred on dates when the Company spoke to the market about increasing costs, including increasing shipping costs, and the need for a massive reorganization to address costs. Thus, even under Defendant's distortion of the law which would have Plaintiffs show a causal link between the subject of the alleged misrepresentations and a purported "corrective disclosure," Defendants' arguments fail.

Unlike here, in the rare cases where Defendants have been able to prove a negative causation defense at summary judgment or trial, "they have not only submitted expert testimony, but have provided and discussed evidence attributing the decline to factors" other than the alleged misrepresentation. *Adair*, 1998 WL 142353, at *7. Again, Defendants have not done so. There is no event study or other evidence properly before the Court proving the cause of the stock prices decline on any day prior to the commencement of this suit. Until Defendants present such evidence, any decline in value is presumed to be caused by the misrepresentation in the

---

[5] Defendants boldly proclaim that "[a] price decline before disclosure may not be charged to defendants" (Mot. at 16) but blatantly misrepresent the law to the Court by omitting the Second Circuit's following sentence: "The defendant, however, bears the burden of proving that the price decline was not related to the misrepresentations in the registration statement." *McMahan*, 65 F.3d at 1049. Defendants' misrepresentations of the law do not end there. Unlike any argument put forward by Defendants in this case, the complaint in *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*, 2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) (Mot. at 18), itself "establish[ed] that the decline in ACA's stock was not caused by the allegedly false and misleading statements" since the stock traded above the IPO price while disclosing increased exposure to subprime mortgages. *Id.* at *11; *see also Bauer v. Prudential Fin., Inc.*, 2010 WL 2710443, at *8 (D.N.J. Jun. 29, 2010) (finding *Blackmoss* and analysis of causation unpersuasive). Finally, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) (Mot. at 17), does not even address negative causation.

19

registration statement." *In re WRT Energy Sec. Litig.* 2005 WL 2088406, at *1 (S.D.N.Y. Aug. 30, 2005).

### III. DEFENDANTS' REQUEST FOR INTERLOCUTORY APPEAL SHOULD BE DENIED

#### A. Defendants Have Not Shown Exceptional Circumstances Warranting An Interlocutory Appeal Under Section 1292(b)

Defendants' motion, pursuant to 28 U.S.C. § 1292(b), to certify for interlocutory appeal this Court's Order on their motion to dismiss amounts to nothing more than a third attempt to make the same arguments the Court already once rejected. Indeed, as with their motion to dismiss and their simultaneous motion for reconsideration, Defendants do nothing more than express disagreement with the Court's application of the well-established materiality standard articulated in *ECA* (Order at 39), and disappointment that they bear an unmet burden to disprove causation under the Securities Act's strict liability scheme. Neither the law nor the facts have changed, and the Court's prior order upholding Defendants' four "shipping cost" and five "theft, fraud, and clothing insurance" related misstatements and omissions (*see* Order at 7-9) remains correct. As courts in this Circuit have recognized, "[t]he arguments were made before and their repetition now does not make them any more convincing than they were previously." *Armstrong v. Collins*, 2011 WL 308260, at *2 (S.D.N.Y. Jan. 31, 2011); *see also In re Facebook, Inc. IPO Secs. & Deriv. Litig.*, 986 F. Supp. 2d 524, 531 (S.D.N.Y. 2014) ("[A] motion for certification of an interlocutory appeal may not be used to simply 'repeat arguments made in [a] motion to dismiss.'").

Certification pursuant to Section 1292(b) is granted only in "exceptional circumstances." *In re Ambac Fin. Grp. Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010). Moreover, "proponents of an interlocutory appeal have the burden of showing that all three of the substantive criteria are met[:] '(1) that such order involves a controlling question of law[;] (2) as to which

20

there is substantial grounds for difference of opinion[;] and (3) that an immediate appeal from [that] order may materially advance the ultimate termination of the litigation.'" *Facebook*, 986 F. Supp. 2d at 529 (quoting Section 1292(b) and citing *Casey v. L.I.R.R.*, 406 F.3d 142, 146 (2d Cir. 2005)). Additionally, "these criteria supply only the minimum standard that movants must meet." *SEC v. Gruss*, 2012 WL 3306166, at *2 (S.D.N.Y. Aug. 13, 2012). As such, district courts and the Second Circuit routinely deny Section 1292(b) requests in securities cases. *See, e.g.*, *Facebook*, 986 F. Supp. 2d at 530 ("The Second Circuit has noted that 'interlocutory appeals are strongly disfavored in federal practice,' and movants cannot invoke the appellate process 'as a vehicle to provide early review [even] of difficult rulings in hard cases.'").

Defendants cannot satisfy any of the three criteria or establish the requisite "exceptional circumstances" needed to certify the Court's Order. First, whether the Defendants' misstatements and omissions are material or whether Defendants' have proven the affirmative defense of negative causation are not "controlling question[s] of law" under Section 1292(b). Instead, both determinations require fact-specific inquiries. *See, e.g.*, Order at 19 ("The materiality of statements and omissions under §§ 11 and 12(a)(2) is a fact-specific and context-specific inquiry.") (citing *Litwin*, 634 F.3d at 716-17, and *Freidus v. Barklays Bank PLC*, 734 F.3d 132, 140 (2d Cir. 2011)); *Levine*, 594 F. Supp. at 476 (holding that negative causation's "highly fact specific arguments regarding the timing and content of disclosures only underscore the impropriety of resolving these issues on a motion to dismiss"). Second, there is no "substantial ground for difference of opinion" regarding the Court's application of the correct legal standard under *ECA*. Indeed, Defendants do not explain any such misapplication of the standard in the Motion, but merely disagree with the Court's application of the correct standard to the facts alleged in this case. Yet "[a] mere claim that the district court's ruling was incorrect does not

21

demonstrate a substantial ground for difference of opinion." *Wausau Bus. Ins. Co. v. Turner Constr. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001). Defendants' disagreement with the Court is of no consequence under Section 1292(b). Third, an immediate appeal would most likely not materially advance the ultimate termination of this litigation. Defendants' negative causation arguments premised on their mischaracterization of the Second Circuit's holding in *McMahan* are a non-starter (Mot. at 22; *supra* at Sec. II.D. n.4), and Defendants concede that success on one set of misstatements and omissions would still require the litigation of the remaining (Mot. at 20). For these reasons, as explained further herein, the Court should deny the Motion.

**B.      The Court's Order Does Not Involve A Controlling Question Of Law**

**1.      Any Appellate Review Would Entail An Improper Fact-Specific Inquiry**

A question of law is "controlling" only if it is a "'pure' question of law." *Facebook*, 986 F. Supp. 2d at 536 (quoting *In re Worldcom, Inc.*, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003)). Courts in the Second Circuit have consistently held that "[q]uestions regarding application of the appropriate law to the relevant facts are generally not suitable for certification under § 1292(b)." *Id.*; *see also Gruss*, 2012 WL 3306166, at *3 (the issue for certification was not a controlling question of law because it "raises several factual issues, rendering certification inappropriate"). Moreover, even "mixed questions of law and fact," such as the materiality of a statement or the proof of an affirmative defense, "are not appropriate for certification under § 1292(b)." *Facebook*, 986 F. Supp. 2d at 536; *see also Suvino v. Time Warner Cable, Inc.*, 2017 WL 11569346, at *3 (S.D.N.Y. Nov. 6, 2017) (denying Section 1292(b) certification where questions of fact "can be raised in later motion practice on [defendant's] affirmative defenses"). Whether the Defendants' statements and omissions are material is not, and cannot be, a pure question of law, because as the Second Circuit explicitly recognized in *ECA*, "to determine

22

whether a misleading statement is material, courts ***must engage in a fact-specific inquiry***." *ECA*, 553 F.3d at 197. Likewise, with respect to Defendants' negative causation argument "whether losses were attributable to other sources is necessarily a fact question." *In re IPO Sec. Litig.*, 241 F. Supp. 2d 281, 351 n.80 (S.D.N.Y. 2003). Indeed, a fact-specific inquiry is precisely what this Court already did (and what the Second Circuit would necessarily have to do were certification granted) in denying Defendants' motion to dismiss. Order at 32-44.

### 2. Section 1292(b) Review Is Especially Disfavored In Securities Cases

The Second Circuit almost never grants interlocutory review of motion to dismiss decisions in securities cases, bearing out how particularly inappropriate a fact-intensive review is with respect to such cases. *See Facebook*, 986 F. Supp. 2d at 533-34 ("The Second Circuit … has only four times in the last thirteen years entertained a Section 1292(b) appeal from an order denying a motion to dismiss in a federal securities class action [and i]n these four instances, the Second Circuit has granted review almost exclusively on threshold issues such as jurisdiction, standing and statutes of limitations."). Indeed, the only case involving the interlocutory review of a motion to dismiss in a securities case cited by Defendants was to review the timeliness and standing of the plaintiff's claims—issues that have no relevance to the Motion. *See Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 337 (S.D.N.Y. 2012), *aff'd*, 712 F.3d 136 (2d Cir. 2013) (Mot. at 18-19).

### C. The Court's Order Does Not Present A Substantial Ground For Difference Of Opinion

"A substantial ground for difference of opinion exists when '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit.'" *Facebook*, 986 F. Supp. 2d at 539. Moreover, it "must arise out of a genuine doubt as to whether the district court applied the correct legal standard in its order." *Consub Del. LLC v.*

23

*Schahin Engenharia Limitada*, 476 F. Supp. 2d 305, 309 (S.D.N.Y. 2007), *aff'd*, 543 F.3d 104 (2d Cir. 2008).

Controlling Second Circuit authority on the issue of materiality of misstatements and omissions in securities cases is neither conflicting nor is it of the first impression. *See, e.g.*, Order at 19, 25, 39-40 (citing, quoting, and applying *ECA*, 553 F.3d 206, *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*, 11 F.4th 90, 100-01 (2d Cir. 2021), *Singh*, 918 F.3d at 63, *Litwin,* 634 F.3d at 716-17, *Freidus*, 734 F.3d 132, and *Ganino*, 228 F.3d at 162). As discussed above, Defendants do not argue that there are conflicting standards for materiality in this Circuit. Rather, Defendants only disagree with how the well-established law on materiality was applied to the facts of this case and now call their factual quibbles a "substantial ground for difference of opinion." It is not.

The law of the Circuit on negative causation is also neither conflicting nor is it of the first impression. Indeed, Defendants' argument relies solely on their misrepresentation of the Second Circuit's holding in *McMahan* (Mot. at 22); however, when the Second Circuit's ruling is read in full, it is clear that Defendants always bear the burden of "proving that the price decline was not related to the misrepresentations in the registration statement." 65 F.3d at 1049; *see supra* Sec. II.D. n.4. A burden of proof they have not met.

### D.  An Immediate Appeal Would Not Materially Advance The Ultimate Termination Of The Litigation

As noted above, the Defendants recognize that certification could very well not result in the termination of the case and in doing so admit that this case does not constitute an "exceptional circumstance." *See* Mot. at 20 (conceding that "interlocutory appeal on this issue can 'materially advance' this litigation because it would substantially narrow the scope of discovery from eliminating 2 out of the remaining 5 alleged misstatements found actionable by the Order."); *id.*

24

at 21 (suggesting that "dismissal of Plaintiffs' theft and insurance claims 'will streamline discovery' and narrow the issues for trial"); *id.* at 22 (arguing in favor of certification because of the "financial burden and distraction of defending securities law claims"). Certification would neither dispose of all issues, nor streamline discovery. *See Facebook*, 986 F. Supp.2d at 532. Nor are the potential burdens of litigating a case that has survived motion to dismiss "exceptional circumstances." Indeed, as the court in *Facebook* recognized "interlocutory appeal ... in these 'big' cases alleging violations of the securities laws is particularly inappropriate" due to "highly fact-specific applications of law to fact." *Id.* at 533.

Moreover, as a practical matter, "obtaining reversal of an opinion denying a motion to dismiss will *always* contain the possibility of a dismissal and is not an 'exceptional circumstance' that 'justif[ies] a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Id.* at 531 (emphasis in original) (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978)). If this were sufficient, then interlocutory review of motion to dismiss denials would be commonplace and virtually automatic. That is clearly not the law, as interlocutory review is strictly reserved for exceptional cases. *See id.* at 531. The Court should deny the Motion because an immediate appeal would only delay, rather than materially advance, this litigation.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion for reconsideration of the Court's Order on their motion to dismiss or for an immediate appeal of that Order pursuant to 28 U.S.C. § 1292(b).

DATED: October 23, 2024                    Respectfully submitted,

                                          */s/ Alfred L. Fatale III*

25

**LABATON KELLER SUCHAROW LLP**
Alfred L. Fatale III
Guillaume Buell
Robert S. Rowley
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com
gbuell@labaton.com
rrowley@labaton.com

*Lead Counsel for Lead Plaintiffs and
the Class*

26

**CERTIFICATE OF SERVICE**

I, Alfred L. Fatale III, certify that on October 23, 2024, the foregoing document entitled

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**

**DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING IN**

**PART DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,**

**CERTIFICATION UNDER 28 U.S.C. § 1292(B)** was severed on the following counsel via

email:

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Mary Eaton
Merdith Kotler
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
mary.eaton@freshfields.com
meredith.kotler@freshfields.com

WILLKIE FARR & GALLAGER LLP
Todd G. Cosenza
Charles D. Cording
787 Seventh Avenue
New York, New York 10019
tcosenza@willkie.com
ccording@willkie.com

                                        /s/ Alfred L. Fatale III
                                          Alfred L. Fatale III

27