**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJAT SHARMA, Individually and on Behalf of All Others Similarly Situated, <br><br>                Plaintiff, <br><br> -v.- <br><br> RENT THE RUNWAY, INC., JENNIFER Y. HYMAN, SCARLETT O'SULLIVAN, TIM BIXBY, JENNIFER FLEISS, SCOTT FRIEND, MELANIE HARRIS, BETH KAPLAN, DAN NOVA, GWYNETH PALTROW, CARLEY RONEY, DAN ROSENSWEIG, MIKE ROTH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., and TELSEY ADVISORY GROUP LLC, <br><br>                Defendants. | Case No. 1:22-cv-6935-OEM-VMS |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF ORDER DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY, CERTIFICATION UNDER 28 U.S.C. § 1292(B)**

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP <br> Todd G. Cosenza <br> Charles D. Cording <br> 787 Seventh Avenue <br> New York, NY 10019-6099 <br> Telephone: (212) 728-8000 <br><br> *Counsel for Defendants Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Piper Sandler & Co., Wells Fargo Securities, LLC, JMP Securities LLC, KeyBanc Capital Markets Inc., and Telsey Advisory Group LLC* | FRESHFIELDS US LLP <br> Mary Eaton <br> Meredith Kotler <br> 3 World Trade Center <br> 175 Greenwich Street, 51st Floor <br> New York, New York 10007 <br> Telephone: (212) 277-4000 <br><br> *Counsel for Defendants Rent the Runway, Inc., Jennifer Y. Hyman, Scarlett O'Sullivan, Tim Bixby, Jennifer Fleiss, Scott Friend, Melanie Harris, Beth Kaplan, Dan Nova, Gwyneth Paltrow, Carley Roney, Dan Rosensweig, and Mike Roth* |

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

ARGUMENT ...................................................................................................................... 1

I.     THE COURT SHOULD GRANT RECONSIDERATION AND DISMISS THE
       REMAINING CLAIMS ........................................................................................... 1

       A.     The Order Overlooks Facts and Controlling Precedent Requiring Dismissal
              of the Shipping Costs Statements ............................................................... 1

       B.     The Order Overlooks Facts and Controlling Precedent Requiring Dismissal
              of the Customer Theft Statements ............................................................... 4

       C.     The Order Overlooks Facts and Controlling Precedent Requiring Dismissal
              of the Insurance Coverage Statement ......................................................... 6

       D.     The Order Overlooks the Dispositive Issue of Negative Causation ........... 7

II.    ALTERNATIVELY, THE COURT SHOULD CERTIFY THE ORDER FOR
       INTERLOCUTORY APPEAL UNDER SECTION 1292(B) .................................. 9

CONCLUSION ................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adair v. Kaye Kotts Assocs., Inc.*,
1998 WL 142353 (S.D.N.Y. Mar. 27, 1998) ..............................................................9

*Advanced Analytics, Inc. v. Citigroup Glob. Markets Inc.*,
2022 WL 21295155 (S.D.N.Y. July 26, 2022) ...........................................................7

*Armstrong v. Collins*,
2011 WL 308260 (S.D.N.Y. Jan. 31, 2011) .............................................................10

*ATG Cap. LLC v. MGT Cap. Invs.*,
2018 WL 2108237 (S.D.N.Y. May 7, 2018) ..............................................................1

*Bonilla v. Nelson & Kennard*,
2021 WL 2400914 (E.D.N.Y. June 11, 2021) ...........................................................1

*Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.*,
2010 WL 148617 (S.D.N.Y. Jan. 14, 2010) ..............................................................8

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
665 F. Supp. 2d 404 (S.D.N.Y. 2009).........................................................................8

*City of Dearborn Heights Act 345 Police & Fire R v. Axonyx, Inc.*,
374 F. App'x 83 (2d Cir. 2010) ..................................................................................3

*In re Coty Inc. Sec. Litig.*,
2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) ...........................................................6

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
986 F. Supp. 2d 524 (S.D.N.Y. 2014).......................................................................10

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
858 F. Supp. 2d 306 (S.D.N.Y. 2012).......................................................................10

*Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*,
2023 WL 6594885 (E.D.N.Y. Aug. 25, 2023)............................................................2

*In re Gentiva Sec. Litig.*,
971 F. Supp. 2d 305 (E.D.N.Y. 2013) ........................................................................1

*Goldkrantz v. Griffin*,
1999 WL 191540 (S.D.N.Y. Apr. 6, 1999).................................................................8

*Gortat v. Capala Bros.*,
   2010 WL 1423018 (E.D.N.Y. Apr. 9, 2010) ...............................................................2

*Gutman v. Lizhi Inc.*,
   633 F. Supp. 3d 681 (E.D.N.Y. 2022) ........................................................................6

*IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of*
   *Scot. Grp.*,
   783 F.3d 383 (2d Cir. 2015).......................................................................................4

*Kapsis v. Brandveen*,
   2009 WL 2950245 (E.D.N.Y. Sept. 9, 2009) .............................................................7

*In re Keyspan Corp. Sec. Litig.*,
   383 F. Supp. 2d 358 (E.D.N.Y. 2003) ........................................................................3

*Klinghoffer v. S.N.C. Achille Lauro, et al.*,
   921 F.2d 21 (2d Cir. 1990)........................................................................................10

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*,
   729 F.3d 99 (2d Cir. 2013)..........................................................................................1

*Levine v. AtriCure, Inc.*,
   508 F. Supp. 2d 268 (S.D.N.Y. 2007).........................................................................9

*M.K.B. v. Eggleston*,
   2006 WL 3230162 (S.D.N.Y. Nov. 7, 2006)...............................................................7

*McKenna v. Smart Techs. Inc.*,
   2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012) ...............................................................2

*McMahan & Co. v. Wherehouse Ent., Inc.*,
   65 F.3d 1044 (2d Cir. 1995).........................................................................................9

*In re MSC Indus. Direct Co.*,
   283 F. Supp. 2d 838 (E.D.N.Y. 2003) ........................................................................2

*Novak v. Kasaks*,
   216 F.3d 300 (2d Cir. 2000).........................................................................................2

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995)...........................................................................................1

**Statutes**

U.S.C. §1292(b) ...............................................................................................................9, 10

**Other Authorities**

L. Civ. R. 6.3 ................................................................................................................................1

**ARGUMENT**

**I.     THE COURT SHOULD GRANT RECONSIDERATION AND DISMISS THE REMAINING CLAIMS**

Reconsideration under L. Civ. R. 6.3 is proper where a court's decision overlooked "decisions or data that might reasonably be expected to alter" the result. *In re Gentiva Sec. Litig.,* 971 F. Supp. 2d 305, 336-37 (E.D.N.Y. 2013), *on reconsideration in part* (Dec. 10, 2013); Mot. at 3-4. There is no requirement to show a "change in the law" or "new evidence," as Plaintiff incorrectly asserts. Opp. at 2.[1] Indeed, reconsideration is proper even where the movant "introduce[es] additional relevant case law" bearing on a court's decision. *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (affirming reconsideration grant based on overlooked Circuit precedent and legislative history).[2] Because Defendants meet the governing standard, reconsideration should be granted and the remaining claims dismissed.

**A.     The Order Overlooks Facts and Controlling Precedent Requiring Dismissal of the Shipping Costs Statements**

As the Motion demonstrates, reconsideration on the shipping costs disclosures is warranted because the Order misconstrued the allegations of the CAC regarding the purported reasons for the FedEx shipping rate increase, misapplied settled law in crediting FE-4's statements, and overlooked RTR's disclosures and public facts showing that the shipping cost omissions were not

---

[1] Citations to "Opp." refer to Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion for Reconsideration, or, Alternatively, Certification Under 28 U.S.C. § 1292(b), ECF 84. Other capitalized terms used but not defined herein shall have the same meaning as in the Memorandum of Law in support of Defendants' Motion, ECF 83 ("Mot.").

[2] Plaintiffs' authorities, Opp. at 2, do not stand for a different proposition and are distinguishable on their facts. *See Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 108 (2d Cir. 2013) (affirming denial of reconsideration given "high standard necessary to vacate an arbitral award" where movants "did not present any new facts or controlling law that the court overlooked"); *Bonilla v. Nelson & Kennard*, 2021 WL 2400914, at *1 (E.D.N.Y. June 11, 2021) (noting that "*[t]ypical* grounds" for reconsideration "include an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice") (emphasis added); *ATG Cap. LLC v. MGT Cap. Invs.*, 2018 WL 2108237, at *1 (S.D.N.Y. May 7, 2018) (denying reconsideration because defendants did not point to any "facts or law that the Court overlooked").

material.  Mot. at 4-8.  Because Plaintiffs have no real answer to any of this, the Motion should be granted.

*First*, the Court held that the shipping cost disclosures were misleading because they failed to disclose that the *reason* FedEx allegedly doubled its rates was due to the RTR's "*reduction* in shipping."  Order at 35 (emphasis added).  But the CAC alleges no such thing.  The closest it comes is alleging that RTR "was not shipping enough," ¶ 93, which is not the same as a volume reduction.  Mot. at 5.  What is more, the Prospectus shows shipping costs increased as order volumes increased, *id.*, and the CAC alleges no facts to support any inference that FedEx's "throughput," Order at 34, was lower despite these increases.  Plaintiffs dispute none of this.[3]

*Second*, the Order should have disregarded FE-4's statements.  The law is clear that a complaint must adequately allege facts showing "the probability that a person in the [source's] position … would possess the information alleged."  *Novak v. Kasaks*, 216 F.3d 300, 314 (2d Cir. 2000).  The CAC does not meet that standard.  There is no allegation that FE-4 was responsible in any way for the FedEx relationship, knew what the terms of the agreement between FedEx and RTR were, tracked volumes shipped via FedEx versus other carriers, or spoke with FedEx or anyone at RTR who was responsible or knowledgeable about such things.  All it alleges is FE-4's job title—"Senior Operations Manager, Outbound and Inventory Control and Quality Assurance," ¶ 84.  On its face, FE-4's title alone does not support the probability that FE-4 knew about "shipping" as Plaintiffs now claim, Opp. at 6, let alone details about shipping volumes generally, or by carrier, or the rates associated with each.  *See, e.g., In re MSC Indus. Direct Co.*, 283 F. Supp. 2d 838, 847 (E.D.N.Y. 2003) (allegations without details on FE's "work responsibilities

---

[3] "Plaintiffs' failure to address [] argument in opposition [] amounts to a concession of [that] argument." *Flanagan v. Girl Scouts of Suffolk Cnty., Inc.*, 2023 WL 6594885, at *8 (E.D.N.Y. Aug. 25, 2023) (gathering cases); *Gortat v. Capala Bros.*, 2010 WL 1423018, *11 (E.D.N.Y. Apr. 9, 2010) (argument not raised in opposition brief waived), *aff'd*, 568 F.App'x 78 (2d Cir. 2014).

[that] would provide them a basis for knowing" are insufficient); *McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *12 (S.D.N.Y. Apr. 3, 2012) (CW allegations "simply not enough" without "sufficient plausible detail as to why individuals who held those positions would have any knowledge regarding the" alleged omission); *City of Dearborn Heights Act 345 Police & Fire R v. Axonyx, Inc.*, 374 F. App'x 83, 85 (2d Cir. 2010) (rejecting CW allegations without "factual underpinnings"). As such, this is not a situation where Defendants merely "disagree[]" with the CAC's allegations, Opp. at 5, but one where Plaintiffs' allegations fall short of accepted requirements and should have been disregarded.

*Third*, the Order overlooked case law mandating that a risk factor disclosure is not actionable unless the risk of which it warns had already materialized. Mot. at 6-8. Plaintiffs suggest this argument is misguided because "shipping costs were already rising, and therefore a certainty, at the time of the IPO." Opp. at 7. But there is no dispute that shipping costs were already rising: before the IPO, the Company itself disclosed that fact, Ex. 11 at 24, media covered the cost increases, MTD Br. at 5 & n.2, and the *Wall Street Journal* reported that FedEx and UPS were doubling their shipping rates for their large clients, Ex. 14. There can be no omission claim when the risk of which Plaintiffs complain (rising costs) was a matter of public record. *See, e.g.*, *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358, 377 (E.D.N.Y. 2003) (no liability for failure to disclose information already "in the public domain") (gathering cases).

That leaves the question whether the alleged FedEx rate hike materially affected RTR's results of operations as of the IPO. Mot. at 7. Plaintiffs attempt to side-step this issue, arguing that materiality issues should not be assessed on a motion to dismiss, Opp. at 8-9, but they ignore (a) cases in this Circuit dismissing risk factor challenges for failure to allege material impact, Mot. at 6-7, and (b) the record facts showing that, although raw dollar cost of fulfillment went up as

order volume increased, fulfillment costs as a percentage of revenue *declined* from 3Q19 (52% vs. 33%) and were flat compared to 3Q20 (31% vs. 33%), Mot. at 8, and RTR took steps to offset the shipping rate increases, including through diversification of its carrier network, use of drop boxes, consolidation centers, fulfillment efficiency initiatives like order consolidation and packing, and other transportation innovations.  Mot. at 8; MTD Br. at 10 n.9; ¶ 11; Prospectus at 186.[4]

**B.      The Order Overlooks Facts and Controlling Precedent Requiring Dismissal of the Customer Theft Statements**

Defendants seek reconsideration because the Order's materiality analysis goes further than every Second Circuit decision to speak to the issue.  RTR disclosed that it had in fact suffered losses from theft and warned that the losses could be "significant," ¶ 134, and reported the dollar amount of losses from "unreturned" and "lost" items as part of "rental product depreciation" in its financial statements.  Mot. at 11.  Even if these disclosures were not sufficient (which they were), the alleged theft losses represented less than 3% of annual revenues and were thus presumptively immaterial under Second Circuit law.  Mot. at 9.  The Order, however, held that the alleged revenue impact was material anyway because it concerned inventory which was an important "aspect" of the business.  Order at 40.  Defendants are aware of no case where the Second Circuit or another court in this District has found materiality under these or similar circumstances.  To the contrary*,* the Second Circuit has held that, even where a quantitatively immaterial misstatement related to a segment of the business that was an important driver of profitability, "this factor alone does not tip the scales in favor of finding the misstatements material."  *IBEW Loc. Union No. 58 Pension Tr. Fund & Annuity Fund v. Royal Bank of Scot. Grp.*, 783 F.3d 383, 391 (2d Cir. 2015).  That

---

[4] Given this, the risk warning that RTR "cannot predict how th[e] transition [of shipping vendors] may impact [its] costs" is not actionable and the CAC does not allege otherwise.  ¶ 128.

reasoning is even stronger where the registrant, like RTR, does not report separate segments.[5] Prospectus at F-8; Mot. at 9-11.  If that were the law, there would be no practical limitation on what such an issuer would need to disclose to avoid liability under the securities laws and the quantitative threshold for presumptive immateriality would cease to have any meaning.  Here, for example, any number of scenarios could be said to relate to inventory, and, by the Order's reasoning, all of them would need to be disclosed regardless of how meagre their quantitative impact.  Plaintiffs have no response to this.  Mot. at 9-11.

Plaintiffs also have no response to Defendants' argument that FE-2 would have no "basis for knowing" lost revenue from theft because (a) a revenue impact calculation depends on too many unknown variables and (b) nothing in the CAC supports the inference that FE-2 performed or saw such a calculation, or learned of its results from others, including other FEs, none of whom corroborated FE-2's claims about the *amount* of such losses.  *See* Order at 38 (other FEs only corroborated "factual existence of thefts").  Instead, Plaintiffs rely on a conclusory assertion that "this argument was already addressed by the Court," Opp. at 13, without confronting the additional overlooked facts and case law cited in the Motion, Mot. at 11.

As to the alleged Item 303 violation, it requires sufficient allegations of management's actual knowledge of an alleged upward trend in thefts due to the use of drop boxes *and* that the trend "would have a material impact on [RTR's] operations or revenue."  Mot. at 12-13; *see* Opp. at 13-14.  Here, Plaintiffs concede that they base their allegations of management's knowledge of a reportable trend on (i) FE-5's alleged 2019 meeting regarding "policies and procedures to prevent these thefts," and (ii) FE-1's claim that RTR management was "aware" of the "theft issue"

---

[5] Segment reporting is governed by ASC 280, published by the Financial Accounting Standards Board, available at *https://onlinelibrary.wiley.com/doi/abs/10.1002/9781119216698.ch16.*

but failed to take action.  Opp. at 14-15.  But the use of drop boxes is not alleged to have been discussed in either instance, Mot. at 12-13, a point Plaintiffs concede.  Mot. at 12-13.  Indeed, the CAC does not allege any fact or FE testimony regarding increased theft due to drop boxes ever being mentioned, considered, or reported to *the Defendants*, which it must do to show knowledge of an upward trend.  *Gutman v. Lizhi Inc.*, 633 F. Supp. 3d 681, 690 (E.D.N.Y. 2022) (Item 303 requires showing that "[d]efendants knew" of "an existing trend and its future material impact on the company," and "allegations that [d]efendants 'should have known' will not suffice."); *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *7 (S.D.N.Y. Mar. 29, 2016) (allegations that "negative trends were discussed" at "senior levels" is "insufficient to raise a plausible inference of knowledge").  The Order overlooks this deficiency.  Mot. at 12-13.  The Order also overlooks the fact that the CAC does not allege this supposed "trend" had a material impact.  Mot. at 13-14.  Nor could it.  The Company recorded losses from theft as part of "rental product depreciation," which was trending *downward* in the lead up to the IPO, Mot. at 12, undermining any suggestion that the "trend" was likely to have a material negative impact, or that Defendants knew it.

C.    **The Order Overlooks Facts and Controlling Precedent Requiring Dismissal of the Insurance Coverage Statement**

In holding the insurance coverage disclosures actionable, the Order overlooked several critical facts: (i) the CAC nowhere alleges that insurance losses would result in a "net loss for RTR's bottom line," Order at 43-44; (ii) FE-6's allegations refer only to insurance on "lost packages;" (iii) FedEx's publicly-disclosed standard insurance limit was $100 per shipment for lost packages; and (iv) RTR disclosed that it carried insurance coverage for property and other risks, not just for "lost packages."  Mot. at 14-15.  That is enough to warrant reconsideration.

Plaintiffs admit that losses from theft may not cross a "numerical threshold," effectively conceding that there is no basis for inferring a "net loss."  Opp. at 13; Order at 43-44.  They do not

contest that FedEx's insurance limit was publicly known and only covered lost shipments. Mot. at 15. And they admit that RTR's disclosures made clear that the Company retained property insurance. Opp. at 12-13. Instead, they raise two arguments, neither of which alters the outcome.

Plaintiffs claim that Defendants improperly rely on sources from outside the CAC. Opp. at 13. Not so. Defendants rely on the plain language of the Prospectus as a whole and public data that may properly be considered. Mot. at 15. They also suggest that Defendants attack FE-6's "credibility," which is inappropriate on a motion to dismiss. Opp. at 13. But Defendants did not attack FE-6's credibility; they detailed the disconnect between the CAC's allegations that RTR faced "material" losses from customer *and* employee theft, ¶ 98, and FE-6's allegations referring to only insurance caps and recovery rates on "lost packages" ¶¶ 104-05, and the Order's inferences that those caps and rates applied to RTR's insurance on its "property" or "*on [] clothes* and on shipping." Order at 43 (emphasis added). No such inference was warranted. Mot. at 15.

### D.    The Order Overlooks the Dispositive Issue of Negative Causation

Plaintiffs do not dispute that negative causation may be raised on a motion to dismiss despite being an affirmative defense. Mot. at 16-18; Opp. at 15-20. Instead, they argue that, even assuming reconsideration were proper, dismissal on negative causation grounds should not be granted for four separate reasons, none of which is persuasive here.[6]

*First*, Plaintiffs argue loss causation is not an element of a Securities Act claim. Opp. at 16. Defendants, however, clearly never said otherwise. MTD Br. at 34 (discussing the "affirmative defense" of negative causation).

---

[6] Plaintiffs suggest that reconsideration of this issue is not proper because the Court "implicitly" denied Defendants' arguments on negative causation. Opp. at 15-16. In truth, the Court did not discuss negative causation at all. Plaintiffs' cases are therefore inapposite because none involved a similar oversight. *See Advanced Analytics, Inc. v. Citigroup Glob. Markets Inc.*, 2022 WL 21295155, at *1 (S.D.N.Y. July 26, 2022); *M.K.B. v. Eggleston*, 2006 WL 3230162, at *1 (S.D.N.Y. Nov. 7, 2006); *Kapsis v. Brandveen*, 2009 WL 2950245, at *1 (E.D.N.Y. Sept. 9, 2009).

*Second*, Plaintiffs argue they never alleged any corrective disclosures in the CAC and instead only cited stock drops for the purpose of alleging materiality.  Opp. at 17.  Plaintiffs never raised this "materiality" point before.  And their effort to disclaim any allegations of a "corrective disclosure" is at odds with their own pleading:  the CAC spends pages on post-IPO price declines based on "news" revealed by the Company following the IPO, which is just another way of alleging loss causation.  ¶¶ 143, 151, 155.  Defendants have therefore met their burden because none of this "news" revealed any of the allegedly omitted information, a point the CAC itself effectively concedes.  ¶ 15 ("*As a result of these undisclosed, adverse facts*, Rent the Runway's stock plummeted, falling from its offering price of $21.00 per share to close at $1.58 on November 14, 2022") (emphasis added).

*Third*, Plaintiffs' attempt to distinguish the cases granting motions to dismiss on negative causation grounds, Opp. at 17 n.4, falls flat.  There, as here, the allegedly omitted information was never disclosed and so revelation of the so-called "truth" could not have caused the stock price to fall.  *See, e.g.*, *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419-20 (S.D.N.Y. 2009) (negative causation "evident on the face of the [c]omplaint" where post-IPO disclosure did not "speak at all" to alleged misrepresentations); *Blackmoss Invs. Inc. v. ACA Cap. Holdings, Inc.,* 2010 WL 148617, at *11 (S.D.N.Y. Jan. 14, 2010) (complaint and public filings it incorporated showed no stock drop due to post-IPO disclosures of allegedly omitted information).

*Finally*, Plaintiffs' lament that Defendants have not provided "an event study or other evidence" to show negative causation, Opp. at 19, is likewise misplaced.  An "event study" would only be necessary where a stock drop followed a revelation of the alleged omissions along with *other* information, raising the question of what impact the revelation had.  *See, e.g.*, *Goldkrantz v. Griffin*, 1999 WL 191540, at *3 (S.D.N.Y. Apr. 6, 1999) (observing that expert analysis of the

cause of stock drops typically starts with the price prior to a "disclosure" of hidden information, and is used to determine the "effect of [that] disclosure"). There is no need for such a study where, as here, the alleged omissions were never disclosed (a point Plaintiffs concede), and, therefore, *any* drop in RTR's stock price before this action was filed would necessarily be a "price decline before disclosure" that "may not be charged to defendants." *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044, 1049 (2d Cir. 1995).

None of Plaintiffs' "event study" authorities, Opp. at 17-20, is to the contrary because in those cases, plaintiffs alleged that the omitted information was disclosed, and defendants then faced the burden of proving the effect (or lack thereof) of that disclosure compared to other events. *See, e.g.*, *Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 274 (S.D.N.Y. 2007) (parties disputed whether alleged corrective disclosure in newspaper article was first time corrective information entered the market); *Adair v. Kaye Kotts Assocs., Inc.*, 1998 WL 142353, at *2 (S.D.N.Y. Mar. 27, 1998) (plaintiffs alleged defendants failed to disclose impending loss and defendants eventually disclosed that loss).

## II.    ALTERNATIVELY, THE COURT SHOULD CERTIFY THE ORDER FOR INTERLOCUTORY APPEAL UNDER SECTION 1292(B)

As shown in the Motion, certification is proper because the Order (i) raises controlling questions of law as to Plaintiffs' challenge to the shipping costs, theft, and insurance disclosures, and Defendants' affirmative defense of negative causation; (ii) there is substantial grounds for difference of opinion based on inconsistent Second Circuit precedent or decisions by other district courts in this Circuit; and (iii) interlocutory review would materially advance this litigation by either terminating it or significantly narrowing issues for discovery and trial. Mot. at 19-22.

Rather than engage with these points, Plaintiffs raise a host of arguments that misstate the relevant standard or otherwise do not bear upon the pertinent issues. For example, Plaintiffs argue

certification is not warranted here because "[n]either the law nor the facts have changed." Opp. at 20.  But such a showing is not required and Plaintiffs cite no authority establishing otherwise. Plaintiffs also complain that Defendants merely "repeat" arguments previously made, suggesting that this is improper.  *Id.*  Assuming that were the law—and it is not[7]—many of the arguments set forth in the Motion addressed issues raised for the first time in the Order, and are not a rehash of Defendants' motion to dismiss arguments.  Plaintiffs also suggest certification is inappropriate because the issues presented involve "mixed" questions of fact and law, such as Defendants' negative causation argument.  Opp. at 22.  Negative causation may be resolved at the motion to dismiss stage, as multiple courts in this Circuit have held.  *Supra* at 8; MTD Br. at 34-35.[8] Plaintiffs also suggest that certification is improper where interlocutory appeal will not end the case.  Opp. at 25.  The Second Circuit has squarely held otherwise.  *Klinghoffer v. S.N.C. Achille Lauro, et al.*, 921 F.2d 21, 24 (2d Cir. 1990) (gathering cases); *see also Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012) (granting certification where interlocutory appeal "has the potential to end or at a minimum significantly restrict the scope of this litigation" by dismissing multiple misstatements from the case).

## CONCLUSION

Accordingly, the Court should grant reconsideration, or, alternatively, certify the Order for interlocutory appeal.

---

[7]  Plaintiffs cite *Armstrong v. Collins* for this proposition, but *Armstrong* held that "repetition" of arguments is not sufficient to warrant *reconsideration*—not interlocutory appeal.  2011 WL 308260, at *2 (S.D.N.Y. Jan. 31, 2011).

[8]  Plaintiffs broadly argue there is a special rule "especially disfavoring" interlocutory review in securities cases.  Opp. at 23.  They cite one case in support, which does not state any such rule, and is in any event factually distinguishable. *In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 986 F. Supp. 2d 524 (S.D.N.Y. 2014) (denying certification in "complex multidistrict litigation," in which court found certifying appeal would "serve only to impede institutional efficiency."). The only question before this Court is whether Defendants meet the standard for interlocutory review under §1292(b), which they do.

Dated:    New York, New York
          October 30, 2024

Respectfully submitted,

**FRESHFIELDS US LLP**

*/s/ Mary Eaton*
Mary Eaton
Meredith Kotler
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
Telephone: (212) 277-4000
mary.eaton@freshfields.com
meredith.kotler@freshfields.com

*Counsel for Defendants Rent the Runway, Inc.,
Jennifer Y. Hyman, Scarlett O'Sullivan, Tim Bixby,
Jennifer Fleiss, Scott Friend, Melanie Harris, Beth
Kaplan, Dan Nova, Gwyneth Paltrow, Carley Roney,
Dan Rosensweig, and Mike Roth*

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Todd G. Cosenza*
Todd G. Cosenza
Charles D. Cording
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
tcosenza@willkie.com
ccording@willkie.com

*Counsel for Defendants Goldman Sachs & Co. LLC,
Morgan Stanley & Co. LLC, Barclays Capital Inc.,
Credit Suisse Securities (USA) LLC, Piper Sandler
& Co., Wells Fargo Securities, LLC, JMP Securities
LLC, KeyBanc Capital Markets Inc., and Telsey
Advisory Group LLC*

-11-