UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK (BROOKLYN)

| | |
|---|---|
| RAJAT SHARMA, individually and on Behalf of All Others Similarly Situated, | Case No. 1:22-cv-06935-OEM-TAM |
| Plaintiff, | Brooklyn, New York<br>April 7, 2025<br>10:09 a.m. |
| v. | |
| RENT THE RUNWAY, INC. et al, | |
| Defendants. | |

TRANSCRIPT OF TELEPHONE STATUS CONFERENCE HEARING
BEFORE THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

| | |
|---|---|
| For the Movants:<br>(Delaware Public Retirees'<br>Retirement System and<br>Denver Employees<br>Retirement Plan) | Alfred L. Fatale, III, Esq.<br>Labaton Keller Sucharow, LLP<br>140 Broadway<br>34th Floor<br>New York, NY 10005 |
| For the Defendants:<br>(Rent the Runway, Inc. and<br>Indiv. Defendants) | Mary J. Eaton, Esq.<br>Freshfields US, LLP<br>3 World Trade Center<br>175 Greenwich Street<br>Ste 51st Floor<br>New York, NY 10007 |
| For the Defendant:<br>(Goldman Sachs & Co. LLC) | Charles D. Cording, Esq.<br>Willkie Farr & Gallagher, LLP<br>787 7th Avenue<br>New York, NY 10019-6099 |
| Clerk: | KKS |
| Court Recorder: | Electronic Sound Recording |

Transcription Service:          Chris Hwang
                                Abba Reporting
                                PO Box 223282
                                Chantilly, Virginia  20153
                                (518) 302-6772

Proceedings recorded by electronic sound recording; transcript produced by transcription service.

(Call to order at 10:09 a.m.)

THE CLERK:  This is civil cause for a status conference, docket 22-CV-6935, Sharma v. Rent the --

THE COURT:  Ms. Chan, did you drop?  Let's give her a second to come back on.

THE CLERK:  Judge, can you hear me?

THE COURT:  I can, yes.

THE CLERK:  Okay, I'll call the case over.  This is civil cause for a status conference, docket 22-CV-6935, Sharma v. Rent the Runway, Inc., et al.

Before asking the parties to state their appearance, I would like to note (indiscernible) necessary by the Court. Would the parties please state their appearances for the record, starting with the Plaintiff?

MR. FATALE:  Good morning, Your Honor, this is Alfred Fatale from Labaton Keller Sucharow on behalf of the lead Plaintiffs Delaware Public Employees Retirement System and Denver Employees Retirement Plan.

THE COURT:  Okay.  And for the Defendants?

MS. EATON:  Good morning, Your Honor.  This is Mary Eaton from Freshfields on behalf of Rent the Runway and the Rent the Runway individual Defendants.

THE COURT:  Okay, and on behalf of the banks?

MR. CORDING:  Good morning, Your Honor, this is Charles Cording from Willkie Farr & Gallagher on behalf of the

underwriter Defendants.

THE COURT:  All right, I don't know what is going on today with this phone line.  There's all these beeping.  I think people are dropping in and out.  This is very strange.  I'm not -- this really has not happened before to this degree.

So let's just do our best to sort of figure out how to get through this.  And if everybody could be patient, that's great.

So we're here because pending before me is a motion to stay discovery.  And I genuinely have questions about whether or not the discovery stay should be extended.  And I'm curious to hear from both sides.

As to Plaintiff, Mr. Fatale, I'm very interested to hear what sort of discovery you're seeking to take and what that would look like in the opening phases and why you believe that that's appropriate.

And I fully understand the arguments as they've been briefed, but I am concerned that the case is, you know, from 2022 at this point.  We're in 2025.  And you know, the question of whether or not the motion for reconsideration is likely to be successful is a significant question in my mind at least.

So, Mr. Fatale, would you like to start with an overview of where you guys are and why you believe it's time to start discovery?

MR. FATALE:  Sure, thank you, Your Honor.  And it

really is an open question because the parties have not engaged in anything since the motion to dismiss.  The answer deadline was held in abeyance.

So I haven't received initial disclosures.  There's been no discovery sent.  So I can only speak to past experiences.

I think, you know, the -- a great first step would be having, you know, a Rule 16 conference set, so that the parties could meet and confer under their 26(f) obligations.

I can understand who potential custodians are and sources of documents.  I've seen it different in different cases, you know.

There could have been, you know, a team of limited employees at Rent the Runway working on the IPO.  And you know, so that would be one source of information.  The people working on the IPO, the people handling the insurance issue, and sort of high level people with the shipping issues.  There's two issues that got forward on the case, insurance issues dealing with stolen property of the company and also the cost of shipping.  You know, an initial disclosure would help answer a lot of those questions.

As to discovery from the banks, it's often the case, you know, through initial disclosures and initial conversations, we find out it's not, you know, the 20 banks or so that are named as Defendants here who did the work on the

IPO, the purported due diligence, but usually typically some lead underwriters.

And you know, there's often an agreement that could be reached that, you know, a stipulation if the Defendants were going to rely on just the due diligence conducted by certain banks, you know, one or two lead banks, then you know, the scope of the discovery that we would need to all the banks is much limited.

You know, but initially, I need to know, you know, who the potential custodians are and sources of documents. Then I'd be prepared to serve, you know, document requests and meet and confer about them and, you know, usually come to an agreement or the scope of that discovery.

But you know, I'm really at a disadvantage at this moment to talk about burden because I don't see any -- I'm not aware of anything unique here in comparison to any IP -- any other IPO case that I've been involved in like this.

And Defendants' motion, you know, it didn't clearly articulate to me what the burden was for normal course discovery at this point other than discovery is burdensome.

THE COURT: All right, Ms. Eaton, would you like to respond?

MS. EATON: Yes, thank you, Your Honor. So a couple of points, the first about the nature of the stay. So, of course, we've given the Court's November 20 order.

There has been a stay practically in effect since that time. And it makes sense to us that we should at least wait until the motion for reconsideration is resolved.

That motion was filed in October. So -- and it's fully briefed. So it's been outstanding for a matter of months. And of course, we cannot know when Judge Merchant is going to resolve the motion, one would expect that decision to come relatively soon.

At that point, we're going to understand what the scope of the case is. She may agree with us for example on our arguments as to loss causation in which case the case will be over and there will be no discovery.

Alternatively, she may disagree with our arguments there, but agree with our arguments with respect to the shipping cost issues for instance that Mr. Fatale just referenced.

We have no way of knowing at this point what's going to go forward, although we expect to know soon. And it makes sense to us as a practical matter to wait until we get that decision. So that's point number 1.

Point number 2 is I did hear Your Honor express some skepticism about whether this -- the PSLRA stay really applies here. And I wanted to address that.

As the Court knows, the PSLRA requires a stay of all proceedings during the pendency of a motion to dismiss. And

there have been several cases that have addressed the question of whether a motion for reconsideration constitutes a motion to dismiss for the purposes of the PSLRA stay.

There are several cases that in our view rightly hold that it does.  These are referenced in our papers at pages 2 to 3 of the ECF --

THE COURT:  But Ms. Eaton, do those cases go so far as to state that that -- to state that that stay continues to be mandatory or was that an exercise of discretion?

MS. EATON:  No, these are cases where they -- the Court decided that the PSLRA stay was in effect.  It's not discretionary.  It's automatic.

And the way to lift it is for the Plaintiff to make a motion to lift the stay.  And there are certain requirements that they have to make under the statute in order to do that.

What -- so what I'm saying here is there's a difference of opinion between Plaintiffs and Defendants about whether the automatic stay under the PSLRA applies.

And we acknowledge we think the better argument is that it does.  We think the better reasoned cases holding that it does apply here.

We've made the point that there's nothing in the 2nd Circuit going the other way, no cases holding that a motion for reconsideration does not fall within the PSLRA, zero.

And that to the extent that other cases from other

jurisdictions go the other way, they're very distinguishable and for a very important reason here, Your Honor.

We have an argument on negative causation that the judge simply did not address.  She did not rule on it one way or another.  She obviously didn't uphold it, nor did she reject it.

So, in a very important sense, our motion to dismiss is -- and nobody denies that a motion to dismiss is subject to the automatic stay.  Our motion to dismiss is still pending.  And the automatic stay should apply until it's resolved.

The fact that we had to remind the judge that she did not deal with this issue via a motion for reconsideration, which is the proper vehicle for doing this, does not transform it into something else.

So I -- in other words, the PSLRAs, they must apply here because the judge has not fully ruled on the motion to dismiss and that makes this case very different than any case cited in the papers.

As to the discretionary stay, if the Court were to conclude that the PSLRA automatic stay doesn't apply, it is our view that the discretionary stay should apply for the same reasons articulated in the cases we cited in our papers.

I appreciate that Mr. Fatale thinks there's little merit to the arguments that we made, but the fact of the matter is that they -- the judge did not even address the loss

causation issue.

And as to the other issues, there are serious questions about how she construed the complaint. There's things in the opinion about what the complaint says that the complaint actually does not say and her understanding of the applicable law.

So it's squarely falls within an appropriate motion for reconsideration. It's meritorious on that basis. It is up to them to show that they are prejudiced. I didn't hear Mr. Fatale address that factor.

There is no prejudice here. All the cases holding that prejudice to the plaintiffs is good reason not for granting a discretionary stay or for lifting it are cases where the case has been underway for some time.

There's a schedule that's being disrupted, the parties are in the middle of discovery, and things of that nature. None of that is applicable here.

And so, I don't -- I really don't think that there's any burden on the Plaintiff, no reason to fear loss of evidence or anything like that that would justify not granting a discretionary stay.

And as to the burden on the company, as Mr. Fatale knows, this is a putative class action for the violation of the securities laws in connection with RTR's initial public offering. Cases like this are notoriously complicated and

expensive to litigate.  That burden is even greater than normal.

Whereas here, the issuer is a small development stage company that's already experiencing financial strain.  That's a public fact.  One only needs to look at their recent public filings to know that with indemnification obligations towards the 21 other Defendants.

It would potentially be ruinous for the company to engage in widespread unnecessary discovery now.  So that's our submission with respect to the discretionary stay.

I also want to mention one other thing, which I think is important for the Court to appreciate, which is that as we mentioned in our papers, and this of course depends on what Judge Merchant's ruling on the motion for reconsideration is, but we currently intend if this case is going to move forward to answer the complaint and then promptly move for a judgment or in the pleadings under Rule 12(c).

And there is no argument to be made that the automatic stay under the PSLRA would not apply at that point.  In fact, the cases cited in my friend's opposition to our stay motion, some of them at least, acknowledge that.

This is not a motion that we will bring lightly, and nor is it a motion that we would bring solely for the purposes of delay.

As I mentioned, our goal is to get this case either

dismissed or appropriately streamlined before we go forward with this expensive discovery. And the motion under 12(c) is a route towards that end.

I want to assure the Court that this will not be a repeat of our motion to dismiss. It's something quite different.

For one thing, a 12(c) motion is fundamentally different than a 12(b) motion. They're alike in the sense that both test the sufficiency of the complaint, but unlike a 12(b) motion, the party could raise entirely new arguments on 12(c) to show that the complaint fails to state a claim, even if some of those arguments were raised before.

And secondly, it's based on the pleadings, including the answer and any documents properly attended to the answer and can only be brought after the pleadings have closed.

So, here, we do have new arguments that we think can legitimately be raised under Rule 12(c). One of those arguments is negative causation. And that argument would be designed to address the new points that Mr. Fatale raised in opposition to our motion to stay.

And we can address those arguments that the Plaintiffs raised as to negative causation on a 12(c) motion. I referenced other materials that the Court can properly consider that were not before the Court before.

So, for all of those reasons, Your Honor, we think

that it is appropriate at this point to continue the stay that is already in effect until we get the Court's decision on the motion for reconsideration, at which point, the case will either be at an end or it can be appropriately scoped and the burden on the Defendants of discovery can be appropriately minimized.

THE COURT:  All right, thank you for that perspective.

And I will want to hear your response, of course, Mr. Fatale, but I'd like to hear from Mr. Cording next.

Mr. Cording, would you like to respond to anything that's been raised either by Mr. Fatale or Ms. Eaton?

MR. CORDING:  Yes, thank you, Your Honor.  And the underwriter Defendants as to the stay motion support Rent the Runway's position, which was articulated by Ms. Eaton.  So I won't re-hash that.

But I did want to briefly respond to a couple of the points specific as to the banks.  So just as background here, we represent a syndicate of nine banks that served as the underwriters for Rent the Runway's initial public offering October 2021.

There were three of those banks, Morgan Stanley, Goldman Sachs, and Barclays that served as the lead underwriters with Goldman Sachs and Morgan Stanley having the largest allocations and having the out front positions.

To comments that were made earlier and, you know, we handle a number of these cases.  And there are certain I think kind of themes as to discovery that come across.

The due diligence process that these banks follow is pretty formal and standardized.  So they typically maintain a central underwriting file that includes things like, you know, the engagement level materials, their under -- their due diligence requests to the banks, their responses, their internal memoranda as the offering advances to things like internal committees.

And so, that is a central file that is maintained in these cases that can pretty easily and readily be produced.

And then, from there, there is typically a degree of engagement around custodians.  And sometimes in these cases, the requests from the Plaintiffs can be very broad.  Sometimes they can be very narrow.

We think here, given, you know, that there are really two issues remaining around insurance and shipping, that the discovery request extended towards the underwriters should be narrow in scope with the file and any supplementation around the margins to be sufficient, but that remains to be seen and would need to be negotiated.

And the reality is that there are nine banks here that had -- that participated in the process, that as Ms. Eaton referenced, these banks are subject to indemnification by Rent

the Runway.

So, really, the way to think about it is that the discovery here directed at the underwriters, whatever that turns out to be in practice reflects costs that ultimately get passed back to the issuer as the indemnifying party.

But that's, I think, the bank's perspective. And if there are any other questions you had as to discovery or status as to the banks, I'd be happy to address them now.

THE COURT: All right, thank you for that.

Mr. Fatale, would you like to respond to both of the arguments made by your adversaries here?

MR. FATALE: Yes, thank you, Your Honor. Let me first address, you know, I tried to answer the question on in discovery burden at the beginning. So let me take a step back and address the PLSRA (sic).

I think if you look at the three decisions from this circuit that are cited in the papers, starting with Solomon, which is the only really reported written out decision, which rejects the idea that motion to dismiss should be read broadly as some courts in the 9th Circuit have with the application of the automatic PLSRA stay, I think it's in our favor Solomon.

And then, the two other cases, the memo decision and Deutsche Bank and the transcript decision in, what is it called, Moshell (phonetic), I think a fair reading of both of them is not that the PLSRA discovery stay is being applied, but

that a discretionary stay is being granted in those cases, taking in consideration the spirit of the PLSRA, but I think factually, this case is very different than both of those cases.

In the Deutsche Bank case, you were dealing with a change of law at the 2nd Circuit, which was the same change of law that led to the discretionary stay in Solomon.

And Moshell, there was new evidence that came to light.  It wasn't issues -- look, we both have different views on both sides as to the merits of the reconsideration motion, but as it comes to a discretionary stay coming out of those cases, I think the merits miliate (phonetic) it differently than they would in this case.

As to prejudice to Plaintiffs, moving to the discretionary stay, we did articulate this in our paper. Courts recognize that passage of time, particularly when Defendants are undergoing reorganizations and, you know, the idea of swift administration of justice, this would frustrate our discovery purposes and is prejudicial to lead Plaintiffs the passage of time.

And you know, we -- I didn't lead that with that at the beginning because the first point I think is the burden that needs to be met by Defendants.

And I don't feel that we can assess that burden without, you know, some of these preliminary stages happening.

I've worked with counsel for the underwriters on other cases and have come to agreement with discovery focused on lead underwriters.  So, you know, I've been in several of these cases at these points.  And I'm used to doing it as a meet and confer process and coming to agreement on scope and burden issues.

With respect to the 12(c) motion, I think we have -- we're going to have a fundamental disagreement there.  When I do see that motion, I do not believe that you can bring a 12(c) motion for failure to state a claim on an issue that you already raised that defense for in a 12 -- in a motion to -- in a 12 motion to dismiss brief, I think they're wrong on that.

So I don't think that section -- a motion for judgment on the pleadings is even proper or, you know, proper here.

So I'm not conceding that should they do that and I see it, if it's just as they said premised on the idea of failure to state a claim, I think that defense has been raised once under Rule 12 and is that ship has sailed.

THE COURT:  And as to prejudice, Mr. Fatale, you mentioned the reorganization of the company.  Can you elaborate a little bit on what you understand that to mean for based on what you have learned about the company and why that is part of your prejudice argument?

MR. FATALE: Sure, Your Honor. And, again, I'm gleaning only what I read in the papers and even to what has been alluded to today on the statements that Rent the Runway, the company, is not in the strongest of financial positions. There's been a significant reduction in workforce that has seen departures of not only Defendants, but at least and this was, you know, months ago at this point, I don't even know, you know, I -- I'm only following when it pops up in my news feed on my alert, you know, at least when we wrote the letter, there had been a reduction of 10 percent of corporate work force. I follow the stock. I do follow the news. Things have not been great for Rent the Runway.

So there is concerns about the company continuing in its form. I have concerns about, yeah, I have serious concerns about the viability of the company going forward.

I have -- based only on what I'm reading at the newspapers, because we haven't had discovery yet, but from what I'm reading, there are significant departures of employees.

I, of course, have every reason to believe that Defendants are preserving documents, but you know, being able to compel witness -- compel former employees to give testimony as opposed to current employees gets more difficult as they leave as does, you know, the possibility for loss of materials that those people might have outside the direct control of the company.

And also of course fading memories at this point. This IPO happened several years ago at this point. And each day goes by, takes it longer and longer, and memories fade, and plaintiffs wait for their chance to prove their case.

THE COURT: Ms. Eaton, would you like to respond to any of that?

MS. EATON: Yes, thank you, Your Honor. A couple of points. First, I did not hear Mr. Fatale respond to the critical point that the PSLRA stay is in effect, still in effect, because the motion to dismiss has not been fully resolved. That's as a result of the fact that the judge did not rule on one of our arguments.

So, with that stay in effect, it's his burden to make a motion to lift the PSLRA stay, which as I mentioned has different and more severe requirements than those which apply towards the discretionary stay.

As to the reorganization point, I would note that the company had already reorganized before Plaintiffs filed their amended complaint.

And there may be another reorganization in the future, but this is a fact of corporate life. It's nothing new. There's no reason to suppose that evidence will be lost, et cetera.

As to fading memories, I don't think that's sufficient either under the PSLRA or as a matter -- a stay as a

matter of discretion.  And when you think about it, it really doesn't have any application with the remaining issues here.

There's nothing certainly to do with loss causation. The price of this stock fell before -- immediately after the IPO before any further information was released.  That has nothing to do with anybody's memory and is not a loss that is recoverable by the Plaintiffs.

The way those issues are litigated is through public disclosures about the subjects that Plaintiffs claim were materially misrepresented in public reaction to subsequent information post IPO, particularly by securities analysts.  So it just doesn't apply there.

It doesn't apply I don't think either to the insurance issue.  There's a claim oddly that the company had no insurance.  That's not a question I don't think of people's memories.  Either we had insurance or we didn't have insurance. And I can assure the Court that we did.

And the same goes I think fairly to the question of shipping costs.  You know, there -- were the shipping costs increased, by how much?  I do not think the reason why they increased is relevant, but that's in there, too.  And those things would be in the record and wouldn't rely entirely on people's memories.

So while that may be a fair point in other cases, I don't think that it's a point here.  And unlike Mr. Fatale, I

don't see a way.

Is there a way to cabin discovery here?  That's a discussion that we would gladly have with Mr. Fatale if that's -- if it was possible to do that without needlessly burdening the company.

Certainly that is something that we would entertain, even though we believe that he has no right to discovery now and he will have no right to discovery once the 12(c) motion is filed if there's a need to file it.

But we've offered compromise to counsel through the Plaintiffs before this practice that we follow and we do that again.  But the problem, Your Honor, is I'm not seeing a way to cabin this naturally that would make some sense.

We have numerous Defendants.  We have, quote unquote, class period that's roughly a year I think.  And going to ask for emails, for example, from everybody who had anything to do with shipping costs and managing shipping.  That's a lot of people and a lot of emails.  And there really isn't a way to do that inexpensively.

There are class certification issues here as well.  And those are going to likewise be quite expensive.

This isn't the case where there are no certification issues.  There are, including knowledge of these issue by these Plaintiffs, meaning that they knew about the shipping cost issues and they continued to buy the shares anyway.

I'm not sure that that makes them appropriate Plaintiffs and I'm not sure that that means that this is the case that is appropriate for class certification.  So there will be issues in that respect, too.

Now I've prepared, if the Court would like, to suggest what we would be willing to do, if pressed, but as I said, it's our position that the stay does apply under the PSLRA.  It does apply as a discretionary matter and as a practical issue.

It doesn't make any sense to list it now, while we're on the verge of getting a decision that will tell us what the scope of the case is going to be.

THE COURT:  All right, thank you.  In terms of your suggestion of some method for cabining discovery, you know, that's part of the reason I wanted to have the call, to be candid, because sometimes there are ways to do a phased discovery approach that's, you know, not the -- not just opening the floodgates and opening the spigots that will result in the types of costs that you identified at the outset, Ms. Eaton.

So I'm curious if Mr. Fatale has any ideas about what a sort of stay, or sort of cabined, and sort of initial discovery process would look like.

Just to start things moving, I don't expect, and this is with all respect to everyone on the line, that we're going

to have this case completely go away on this motion for

reconsideration given Judge Merchant's prior opinion. That's

my reading of the tea leaves.

I don't have any inside knowledge there. We

certainly don't share our thoughts before the opinions are

issued, but that's just my reading of the tea leaves.

And so, given that, I'm loathe to just have this

languish. So I'm -- part of the reason for having it as a call

like this instead of just ruling on the papers was a hope to

find out if there is a way to do some interim steps or some

cabined or limited opening discovery steps.

So, Mr. Fatale, do you have any thoughts there

because it is complicated as Ms. Eaton has identified. I agree

with her on that. And I don't think it's as simple as just

saying, okay, discovery's open, good luck, you guys. So, Mr.

Fatale, back to you.

MR. FATALE: Yes. No, I appreciate that, Your Honor.

So, again, I think one of the first steps that would be helpful

to know for me would be initial disclosures so I know sources

of documents and I know people who were involved, you know,

who -- the people who Defendants think had information of this

case.

I don't think their initial disclosures are going to

have hundreds of people listed as was just suggested with

everybody involved in in shipping and everything.

You know, if I got a list of some people to start with, you know, these were the head people in the IPOs, this was the person in charge of shipping, this was the person in charge of insurance, you know, we could start there without prejudice and, you know, I think just to get things going.

I don't need to serve, you know, the largest discovery request in the world without prejudice to future discovery requests, but I think, you know, we could get started with, you know, 10 to 20 -- the document demands focused on perhaps more centralized stuff than emails in the first instance.

You know, I do think the -- I can't think of a securities case like this that doesn't involve email production, but if that's really the concern, you know, step 1 could at least be, you know, targeted requests, maybe one or two people's email, you know, something to just get things going so we can work out some of the initial disagreements we're having.

Protective orders, ESI production, discussion of sources and people that we are going to want to target. And you know, some initial discovery requests to give us a flavor of where the case is going. So, that way, when we do serve, you know, let's say discovery request number 2, it's not, you know, 100 document demands just shooting in the blank. I already have a sense of terminology, and how the processes were

going, and how information was moving, and who was discussing what.  These people were, you know, the two people that we got emails were for, I see who's cc'd on these things.  I see who's involved in this decision making.

You know, that could be a productive first step to not only limiting the burden here in the beginning, but also having savings later on when then we have, you know, a more fulsome discovery discussion after the ruling or motion to reconsideration where, you know, there's more shared information between the sides on where likely discoverable information is located and who's going to have it.

THE COURT:  All right, Ms. Eaton, any reaction to that?

MS. EATON:  I do have a reaction to that, Your Honor.  Thank you.  And I appreciate Mr. Fatale making an effort to limit things here.

What I would suggest is that (indiscernible) stay discussion that we meet and confer about the possibility of doing things perhaps along the lines of what he described.  I just am not entirely sure that try everything --

THE COURT:  Okay, Ms. Eaton?

MS. EATON:  Yes.

THE COURT:  I don't know if it's the weather today or it's the stars, the sun.  The phones are just not cooperating with us super well.  You're now kind of echoing and cutting in

and out.  So if you could just slow down and speak as clearly as possible, I'm hopeful that might help.

MS. EATON:  Will do, Your Honor.  Sorry about the technical issues.  And I'm not sure what you heard or didn't hear, so I will repeat myself a bit.

What I was saying was I appreciated Mr. Fatale's offer essentially to have a discussion with us about the scope of discovery.

And I think it makes sense for the parties to meet and confer and discuss potential ways of limiting the scope here, so it does not become prohibitively expensive, which is a real risk, Your Honor.  The real risk in these cases says why there is an automatic stay under the PSLRA, because of the prohibitively extensive nature of discovery in these cases.

So if Mr. Fatale would entertain this possibility, I think it would be useful for us to have a discussion about how we could limit it.

I am not sure that what he proposed here on the conference today is necessarily going to work, but I am confident that if he and I had a meet and confer, that we would be able to come up with something if it is Your Honor's ruling that discovery should proceed now, notwithstanding.

THE COURT:  All right, thank you for that.

And Mr. Cording, would you like to be heard on this last point regarding the possibility of trying to come up with

a plan with some sort of phased or cabined initial discovery period while we figure out the scope of the case?

MR. CORDING:  Thank you, Your Honor.  And on behalf of the banks, we would certainly be pleased to participate in any meet and confer process.

The thing I would add is as they highlighted before, there is a degree of central recordkeeping here for the banks. So, something like that, short of custodial email discovery, to the extent discovery goes shorter than anything, could be the place to start to get documents moving without having this become particularly burdensome or expensive in collecting or reviewing documents from a syndicate of nine banks.

THE COURT:  Okay.  All right, well, this has been very informative.  You know, we have reviewed the cases closely.

And I'm not prepared to issue any type of detailed ruling here on the phone, but I do -- I am taking the motion under advisement in light of the additional information and perspectives that were adduced on the call.

So I want to thank you all for your excellent arguments and the briefing.  And I'll preview for you a little bit where I'm kind of leaning with the rationale to follow.

I am sort of leaning in the direction that I'd like the parties to start thinking about a sort of cabined Phase 1 discovery that would not necessarily include, you know, complex

email searching and ESI protocols and things, but just starting to understand the lay of the land because I know from other PSLRA cases that that alone can take weeks, if not months.

So even though I hear you, Ms. Eaton, that we may be seeing this motion for reconsideration on the sooner side, as you also stated, we don't know when that's going to be. And I'm certainly not going to inquire of Judge Merchant. It would be totally inappropriate.

So, you know, I think based on what I know so far and based on my review of the motion for reconsideration papers as compared to her memorandum and the case in its totality, I would like to start to see some sort of modest steps towards understanding the lay of the land, but I'm not prepared at this moment, I don't think, to open the full spigot.

And I think that given the considerations of the PSLRA and the importance of keeping things streamlined enough that we don't put a huge -- if it proves to be undue burden on the Defendants, that we don't go into discovery areas that may or may not be trimmed down as part of this next phase of this motion for reconsideration.

So that's kind of where I'm currently leaning. I think you guys all probably figured that out already. So I don't think I'm revealing any big state secrets here with rationale to follow.

So I will, you know, as part of my ultimate decision

ask that you guys do that meet and confer and give me a status report at some point in the next, you know, few weeks. And we'll kind of see -- take it in steps and see where we land once we have a little more information from the District Court judge as well.

With all of that said, is there anything else we should do today?

Mr. Fatale?

MR. FATALE: No, Your Honor. I appreciate you taking the time and leading us through this. And I look forward to talking to Defendants in the coming days and hopefully moving this forward in a constructive way.

THE COURT: Ms. Eaton, anything else for today?

MS. EATON: Nothing further, Your Honor. I thank you. It's been a pleasure appearing before you.

THE COURT: Thank you.

And Mr. Cording, anything further?

MR. CORDING: Same, Your Honor. Thanks very much. We appreciate it. Nothing further for the banks.

THE COURT: All right, thank you all. Have a great rest of your day. Bye bye.

(Proceedings concluded at 10:53 a.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


/s/ *Chris Hwang*

_____        April 11, 2025

Chris Hwang                     Date

Court Reporter