UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

RAJAT SHARMA, *individually*     *     Case No. 22-CV-06935(OEM)
*and on behalf of all others*    *
*similarly situated,*            *
                                 *
              Plaintiff,         *     Brooklyn, New York
                                 *     November 4, 2025
     v.                          *
                                 *
                                 *
RENT THE RUNWAY, INC.,           *
 et al.,                         *
                                 *
              Defendants.        *
                                 *
* * * * * * * * * * * * * * * *

        TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
          BEFORE THE HONORABLE SETH D. EICHENHOLTZ
               UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:            ALFRED L. FATALE, III, ESQ.
 Delaware Public Employees    JESSICA GOODRELL, ESQ.
 Employees Retirement Plan:   Labaton Keller Sucharow LLP
                              140 Broadway
                              New York, NY 10005


For the Defendant,            AGNES DUNOGUE, ESQ.
 Rent the Runway, Inc:        MARY JANE EATON, ESQ.
                              Freshfields
                              3 World Trade Center
                              175 Greenwich Street
                              New York, NY  10007


For the Defendant,            CHARLES DEAN CORDING, ESQ.
 Goldman Sachs & Co.:         Willkie Farr & Gallagher LLP
                              787 7th Avenue
                              New York, NY 10019


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**Shelton, CT 06484 (203)732-6461**

2

(Proceedings commenced at 4:13 p.m.)

THE CLERK:  Today is November 4, 2025 at 4:13 p.m. This is the matter of Sharma vs. Rent The Runway, docket no. 22-CV-6935, civil cause for an initial conference.  Parties, state your appearances for the record, starting with the plaintiff.

MR. FATALE:  Your Honor, Alfred Fatale, from Labaton Keller Sucharow, on behalf of the plaintiffs, Delaware Public Employees Retirement System and Denver Employees Retirement Plan. I'm joined by my associate, Jessica Goodrell.

THE COURT:  Good afternoon to both of you.

MS. DUNOGUE:  Good afternoon, Your Honor.  Agnes Dunogue, from Freshfields, representing Rent the Runway and the individual defendants.  And I'm joined by my colleagues, Mary Eaton and I'll let you --

MS. EATON:  (Indiscernible) Your Honor.

THE COURT:  Good afternoon to both of you.

MR. CORDING:  Good afternoon, Your Honor.  My name is Charles Cording.  I'm from Wilkie Farr Gallagher, and I'm serving as counsel for the underwriter defendants.

THE COURT:  Okay.  Good afternoon to you as well. All right. Thank you, all.

We are here for an initial conference in this matter.  I have received and reviewed the party's proposed

discovery schedule and plan.  I've also reviewed the procedural posture in this case.  I'm aware of the parties' disputes about a potential discovery stay.  So I want to start out the conference by hearing about that.  And we'll start with the plaintiffs.

MR. FATALE: Your Honor, would you like me to come to the podium or stand here?

THE COURT:  You can stand there.  Whichever -- you're welcome to come to the podium.

MR. FATALE:  No, no, that's fine, Your Honor. Thank you.  I just want to make sure that I'm being heard.

So, as Your Honor said that, you know, we're here on competing discovery plans, but really there is this threshold issue as to whether discovery is stayed.  So it was my plan to start with that.

This issue goes back to November of last year, when defendants started their campaign to delay discovery in this case by sending a letter to the court.  That's ECF number 87, a letter asserting that the PSLRA stayed discovery while their motion for reconsideration of the district court judge's ruling on the motion to dismiss stayed discovery.

They also stated in that letter a year ago that if they were unsuccessful in bringing that motion for reconsideration, that they would then file a 12(c) motion and use that as further support for why discovery should be

4

stayed.

Judge Merkl heard arguments on that issue and agreed with the position of Judge Lynch in *Solomon* that defendant's assertion that the laws established that successive motions do stay discovery under the PSLRA is, to say the least, overstated.

The court, however, did grant a discretionary stay of discovery and certainly limited discovery on initial disclosures, mostly the exchange of insurance agreements, some contracts that are in issue in this case.

After the district court judge rejected in part the motion for reconsideration and again sustained lead plaintiff's Section 11 claim under the Securities Act, defendants wrote to the court in September of this year. That's docket number 102, saying again that they would be filing a trustee motion and that discovery should be stayed.

Judge Merkl swiftly responded to that letter at docket no. 103 and said continued delays of discovery are not warranted.

We're now here with competing schedules and the same arguments that defendants, you know, have made before and why the discovery should be stayed under PSLRA and the case law they cite does not support their position.

They rely on -- the first case they rely on is *Gardner.* It is a case that does not involve successive

5

motions for a motion to dismiss to dismiss the case for failure to state a claim.

The (indiscernible) answer motion there was the first challenge to the complaint and it was stylized as a 12(b) or 12(c) motion.

In other words, like Judge Lynch is talking about in *Solomon,* his warnings, the court had not found on any motion yet that the complaint stated a claim.

Thus the purpose of the PSLRA made sense because a court had not ruled on the sufficiency and it didn't want to engage in a fishing expedition.

The same is true in the case *Texas Pacific*, which they say no motion to dismiss, only an answer and then the 12(c) motion.

The case -- there are other cases, district cases. *Lynn Tyler* (ph) and (indiscernible) *v. Tyler* and *BE Health*. *Lynn v. Tyler* relies on BE Health and in doing so they're relying on Ninth Circuit law and misinterpreting Ninth Circuit law.

The court in *BE Health* came to the decision that a motion for judgment on a (indiscernible) discovery notwithstanding a prior ruling on a motion to dismiss by misapplying the Ninth Circuit's decision in *Petrie*.

There the Ninth Circuit held that the PSLRA discovery stay applied pending a second motion to dismiss to

6

an amended complaint that had not yet been sustained by the court.

(Indiscernible) is also distinguishable due to the disregard in that case of the warning from Judge (indiscernible) in *Solomon* that to permit -- to quote, permit defendants indefinitely to renew a stay simply by filing successive motion to dismiss would invite abuse.

The Court did so because in Tyler -- in *Lynn v. Tyler*, because the 12(c) motion had not been a dance for delay.

Here defendants have revealed that was their intention going back to November before the court even ruled on the motion for consideration and said that we're going to file a 12(c) after we -- after we lose that and then we'll stay discovery again.

And now, you know, the second (indiscernible) we argue (indiscernible) it's more the same with their bifurcation.  So that would be my argument, Your Honor.

THE COURT:  Well, let me ask you and I'm going to ask the same of the defendants.

Let's assume I were to proceed as Judge Merkl has in the past and allowed some discovery over the next, let's say two, three months, and then we'd come back together and we'd reassess.  What would that discovery look like in your view?

7

MR. FATALE:  I think, Your Honor, we already did a phase one of some key documents and I have real concerns here as to prejudice, particularly with discovery of third parties and people who have left the company.

The issues in this case involve contracts with FedEx and UPS.  We need to get subpoenas out to them.  They need to be made aware of this litigation.  We need to collect that material.

Being that this is also securities case and some of the defenses they've raised and are anticipating raising in connection with class certification and summary judgment are investor knowledge and truth in the market.  That requires going to get discovery from analysts and -- analysts and market participants.  So that would be critical.

And it's time.  It's (indiscernible) years and the company has pushed off and pushed off discovery and it's time to proceed.  Memories fade.  Things get lost despite the best of retention policies, particularly in a company that's going through reorganization after reorganization.

I think there's real prejudice concerns for discovery after three years plus not going forward at this time.  Thank you, Your Honor.

THE COURT:  All right, I appreciate that.  I'll hear from --  who from the defendants wants to be heard first on this?

8

MS. DUNOGUE:  Your Honor, I'll start.

THE COURT:  Okay.  Please proceed.

MS. DUNOGUE:  So to be clear, the automatic stay is required by statute under the PSLRA.

THE COURT:  Is it required right now?  So in other words, you have made a pre-motion conference request to Judge Merchant.  You do not have a motion pending.  Why do I need to stay now?

MS. DUNOGUE:  Because the judge's own rules indicate -- Judge Merchant's own rules indicate that the filing of a pre-motion letter requesting a conference, because she requires that type of pre-motion letter, is the same as filing a motion.

THE COURT:  Okay.  And let me also just ask --  I didn't interrupt you at all.

MS. DUNOGUE:  Absolutely.

THE COURT:  So I shouldn't have jumped right in.

But what about Judge Merkl's order which was issued for better or for worse right before I took over the case? How do you suggest I handle that?  Or what --  you know, why should I disturb that order, which made clear she did not intend to stay discovery?

MS. DUNOGUE:  Well, with respect, I do want to direct Your Honor to exactly what Judge Merkl said.

First of all, she had a decision in connection with

a motion for reconsideration, which is not a motion to dismiss.

THE COURT:  I'm aware that this was --  but my understanding of plaintiff's argument -- and I'll pull it up right now -- was that she said, as the court previously observed, when denying in part defendant's motion to stay discovery, the court is cognizant that discovery poses a burden for defendants in this case.

Notwithstanding that observation, continued delays of discovery are not warranted.  Accordingly, the parties should meet and confer to discuss the scope of discovery and shall be prepared to discuss scheduling at the initial conference.

That was the order scheduling the conference that after transfer to me became this conference.  I set this conference because Judge Merkl had set an initial conference.

And when I got it in -- my practice was when I get a transfer case, if the other judge has a conference, I try and get the parties in as near in time -- tells me something about my schedul -- as I can.  So that's the posture as far as I understand.

And I don't think -- I think Judge Merkl was suggesting in this order that her reasoning, or certainly reasoned reading of this order is that her reasoning in the motion for reconsideration context, in her view, would still

10

apply here even if a motion, even if a 12(c) motion was filed.  But I'll let you address it.

MS. DUNOGUE:  Thank you, Your Honor.  A key difference is what she says before right in that same entry, she says the defendant shall file an answer or otherwise respond.

Then she notes, the court further notes that the party's joint status report indicates defendant's intention to file a motion for judgment on the pleadings under Rule 12(c) while plaintiffs seek discovery.  That was the status at the time.   There was an indication that the defendants intended to file a 12(c).

She then goes on to say the parties are respectfully reminded that any motion practice must be initiated in accordance with the individual rules of the assigned district judge, Judge Merchant.

THE COURT:  Right.

MS. DUNOGUE:  And then went on to say, et cetera, et cetera.

Now there is a key difference in the procedural posture there.  At the time, there was nothing pending before Judge Merkl, including a 12(c) pre-motion letter.  We did file that letter under Judge Merchant's own rules.

That letter constitutes, for procedural purposes and timing purposes, the same as the filing of a motion.  So

11

Judge Merkl, our understanding, was of the same view that she had when she denied a stay in part in connection with a motion for reconsideration, because she said in that order, I understand that the PSLRA is automatic once there's a motion to dismiss pending. But right now there is no motion to dismiss pending.

Similarly, at that time that she issued that entry order, there was no 12(c) motion pending before her, including a 12(c) letter, which under Judge Merchant's own rules, is the equivalent.

THE COURT: Okay, continue.

MS. DUNOGUE: So given that -- so respectfully, we do not believe that Judge Merkl has ruled on the issue.

THE COURT: And can I ask -- sorry. One more threshold question that popped into my head that would be really helpful.

MS. DUNOGUE: So obviously implicit in plaintiff's argument, in some ways explicit, is that they believe that you are filing this motion purely to delay this case. That there have been a number of motions to dismiss that have already been ruled upon by Judge Merchant.

What is it about this -- and I reviewed the pre-motion conference letter written to Judge Merchant, and for the life of me, I was not able to figure out what's new here and what couldn't have been argued earlier. So could you

12

address that?

MS. DUNOGUE:  Certainly.  First of all, the plaintiff's reference to alleged delay was also made when we filed our motion for reconsideration.

And contrary to apparently plaintiff's belief that it was frivolous and stated belief that it was frivolous, et cetera, Judge Merchant, in fact, did dismiss another claim which she had previously allowed to go forward in issuing her motion to dismiss.

So respectfully, we believe that per Judge Merchant's own order, the motion was not frivolous.  It certainly was not intended to be, and it was not because it got rid of another one of the three claims that the plaintiff has, and in fact also got rid of their Section 303 claims, if I remember correctly.

So I'm referring to the three main claims as to Section 11, but they've also got 105 and 303.  So it got rid of another of the Section 1112 buckets of allegations, as well as 303 entirely.  So it did quite significantly narrow the case.

And I think by Judge Merchant's own order, it is clear that that was not frivolous or a mere attempt to delay with no basis.  At this point there is only one claim left.  That's it.

And that claim is relying on one allegation from a

13

purported statement by a former employee purporting to relay what she believes was the case as to the effect of certain contracts with vendors that RTR had and why those contracts were entered into.

Integral to that question is what the contracts say. I mean, the allegation is the rates were doubled. That's not a theoretical, that's not a feeling. That's not, you know, a subjective sense.

That depends on what the contracts actually say and whether in fact they were doubled. Obviously, at the motion to dismiss stage, we were bound by the arguments that are within the four corners of the complaint and the specific allegations.

And we -- you know, we're not in a position to answer that yet and attach the contracts themselves. We have now done so through the answer and the contracts. And case law is clear that those can be considered -- well, we believe case law is clear that that's an issue for Judge Merchant. I know that my learned colleagues over at plaintiffs dispute that.

But from our perspective, it is permissible for Judge Merchant to consider that. She is going to be considering it. She's ordered briefing. That itself has been found in other cases to be almost itself prohibitive of the fact that the motion is not frivolous or meant purely for

14

delay.

Clearly, the judge, by requiring a pre-motion letter, has a process so that she can eliminate things that she believes will not be conducive, will not lead to a narrowing of the case. She did not do that over plaintiff's objections. She did grant the briefing, and that briefing will be proceeding.

THE COURT: And I see by the schedule, unless there was an extension I'm missing, the moving papers -- oh, sorry. November 23rd.

MS. DUNOGUE: That's right. Right before Thanksgiving.

THE COURT: Okay. Maybe that reflects our view of it as well. I don't know. We'll see. But all right. I appreciate all this.

So the difference is -- what you're saying is previously, motion to dismiss, 12(b)(6). Now you have a 12(c). You're going to rely on documents that were attached to your pleadings. That's the difference. So you've never made a 12(c) motion before?

MS. DUNOGUE: Correct. We have not made a 12(c) motion before, correct.

THE COURT: So you did motion to dismiss the complaint, you did motion for recon, and now you're doing the 12(c).

15

MS. DUNOGUE:  Correct.

THE COURT:  Okay.  And those -- those are three motions, this third being the third that have been filed in this case.

MS. DUNOGUE:  Yes.

THE COURT:  Okay.  Plaintiff, is that correct?

MR. FATALE:  That's correct as to the orders. I disagree with what the issue is going to be in --

THE COURT:  I'll come back to you.  I'll come back to you. I just want to make sure I'm right because I -- because, unfortunately, when a case is transferred to me, I feel like I don't have the command of the docket sheet the way I would if it's been with me the whole time.  So that's -- why I just want to make sure I'm not missing something.  So let me continue with defendants.

MS. DUNOGUE:  So that being the case -- and I'm happy to answer any other questions that Your Honor has.  I understand this is being transferred over and the case has been pending for -- you know, there's been a lot going on, including the exchange already of documents, et cetera.

But -- so at this stage, 12(c) has essentially been filed for purposes of the applicable stay, per Judge Merchant's individual rules.

And the PSLRA mandates that all discovery and other proceedings shall be stayed during the pendency of a motion

16

to dismiss.  And plaintiff has not been able to and cannot point to one case, a single decision that has affirmatively held that a 12(c) motion does not trigger the PSLRA automatic stay.  *Solomon* is what they keep referring to.  There the judge specifically said, I'm not going to decide that.  I have some doubts.  There might be some differences, but he specifically said, I'm not going to decide that.  So he did not hold that.

In *Signet*, which they reference as well, again, there was not a decision that the 12(c) does not trigger an automatic stay.

In fact, the specific decision was under the specific circumstances there that the plaintiff had met the burden of showing exceptional circumstances that might warrant a stay.

THE COURT:  And to that point here, one of the arguments that I understand was something that was on Judge Merkl's mind, and frankly is on mine, is the point of the automatic stay is to prevent frivolous litigation.

I'm not suggesting the outcome of the 12(c) motion one way or another.  I don't know enough about the law and the facts of this case.  It's all -- and it's before Judge Merchant.

But I do know enough about civil litigation to know that if you've survived a motion to dismiss and survive the

17

motion for recon, regardless of whether -- what the statute may mean, and maybe that's going to be a response to frivolous, it does not appear the litigation is frivolous.

MS. DUNOGUE:  Well, with respect, Your Honor, the actual -- what the PSLRA states its purpose is and what cases have said is to ensure that there is a sufficient -- that the complaint has met the sufficiency standard.

And when the sole remaining claim is about what specific contractual rates were and the sole purportedly factual allegation is the statement of what one unidentified former employee says she believes they were, then the question of whether that is sufficient without having to get into months and months of discovery should be able to be determined based on those contractual rates.  And so that is what we have provided.

If I may, Your Honor, just to put context for this as well, it would be one thing -- you know, that at this point we would suggest, and we haven't argued that in our papers because, you know, we're not certainly going to ascribe any bad motives to the plaintiffs as they have to us.

But the RFPs that they have served while the stay was pending are over 80 requests for production of documents, which pertain to all documents related to the IPO, all documents regarding the RTR.  This is now a plaintiff in search of a theory because they know that their current

18

allegations are not supported by the contracts.

With respect, that's exactly what the PSLRA is intended to avoid.

THE COURT:  Well, then let me ask you, because -- look, I'm with you on some of this.  I just don't know that this is justification for a stay.

You know, I'm mindful of the posture, I'm mindful of the concerns here and even, you know -- and I'm still thinking through the stay issue as we discuss it.

But I want to know if, say I were to say, okay, we're going to continue as Judge Merkl had on the, you know, in her order regarding the motion for reconsideration and seem to suggest in her order, you know, setting forth this conference, some kind of discovery moving forward.

And I'm mindful of what plaintiff said, and I will drill down now in light of the very thoughtful argument you've put before me about really what kind of discovery do they need on this claim and what is truly the purpose of discovery.  I'll certainly test that.

But let's say I were to say we're going to move forward on some things.  What in defendant's view are the some things after that initial exchange that took place last time that could take place over the course of the next couple of months?

MS. DUNOGUE:  I will definitely answer that

19

question.  But if I may just take one step back just before we get to that, just because I just again, want to be absolutely sure that we've conveyed our points.

You know, I just did want to point out that the only other case that they cite in connection with their claim that, you know, there shouldn't be a stay here or that there isn't a stay under 12 -- under the PSLRA in connection with the 12(c) is *Coinbase*.

And I do want to reference that case because although the court, in the specific text order that they referenced, indicated that their discovery would not be stayed subsequently, when having received the 12(c), and having looked at the case law, the judge there, who perhaps was having some of the same concerns about, well, you know, what's the equities here, should I just allow this to go forward, specifically said -- and again, we don't believe -- we're not playing games.  This is, you know, a legitimate motion.

But just to make clear, in terms of like, what is binding on Your Honor here, the district court in that situation said the plain language of the PSLRA requires a stay of discovery during the pendency of any motion to dismiss.

And the weight of authority overwhelmingly supports an interpretation of this provision that extends to a

20

successive Rule 12(c) motion.

And then later on, the magistrate judge in that case said, upon further review of the case law, the court recognizes that its discretion to allow the parties to forge ahead with discovery is limited because of the PSLRA's automatic stay. And under the PSLRA, the plaintiffs must make a motion to try to seek relief from that stay.

There is a way of doing that under the PSLRA. Obviously, as Your Honor knows, the plaintiffs must move and meet the burden of showing that it is necessary to lift the stay to preserve evidence or to prevent undue prejudice to the party. Those are the two prongs, and it must be done by motion. The plaintiff has not done this here.

And, you know, with respect, the PSLRA requirements are there for a reason, and the plaintiff should do that. And that is the burden that applies to the plaintiff in that situation of showing either undue prejudice or that it is necessary to preserve evidence.

We will happily brief that if the plaintiffs make such a motion, and we do not believe that can be met here.

THE COURT: That to me strikes me as a bit more form over substance, because I think I could readily construe the arguments they're making as a motion on those exact points, right? They're coming here, they're saying, witnesses -- it's been three years. There are problems with

21

non-party witnesses.  We don't want to lose people.  We don't want people's recollections to fade.

And those are the kinds of arguments that, you know, are concerning to someone in my position to say, all right, let's -- I don't know, hopefully Judge Merchant will turn this around in a couple months, and maybe by March or April, we'll have a decision on the -- on the motion to dismiss on the 12(c) motion.  But, you know, it could be longer than that.

And those -- those problems are problems common to litigation.  They're problems that, you know, I think could readily be addressed.

And I'm still, you know -- you know, Judge Merkl had quoted the *Solomon* case talking about judicial discretion in this situation, which certainly makes it seem a little bit in the discretion bucket than the mandatory bucket that you're arguing.

What's -- and maybe I missed it.  What's the response to Judge Merkl's position regarding the *Solomon* case, and this being a little bit more of a discretionary issue at this point, as to whether a motion at this phase is appropriate to trigger the stay?

MS. DUNOGUE:  Well, again, that was stated in connection with a motion for reconsideration.

THE COURT:  Understood.

Case 1:22-cv-06935-OEM-SDE    Document 121    Filed 11/06/25    Page 22 of 36 PageID #: 2834

22

MS. DUNOGUE: Even under 12(c) there is a mechanism to address a plaintiff's concerns, if the plaintiff can make a showing that there's undue prejudice or the loss of evidence or the significant risk of loss of evidence.

There is a standard for that. Simply saying, it's been a while, we'd like to get going is not sufficient. As Your Honor knows, sometimes motions to dismiss take several years to decide. And, you know, both Mr. Fatale and I have had that situation.

But that's not sufficient to say, well, while the judge is considering these issues, let's go ahead and lift the stay, because people move on, they leave the company, et cetera.

There's been no showing here. The plaintiff has not even purported to try to make a showing, as they must, in order to meet that standard to lift the stay, that there has been a loss of evidence or there has been specific undue prejudice.

And the specific factual issues that Judge Merkl referenced in particular, again there in that hearing, plaintiff's counsel referenced the fact that the company was in a difficult financial situation at the time and that that might cause some issues.

The company has now closed a refinancing and, you know, is in a very different situation than that was the case

23

at the time.

There's, you know, (indiscernible) have been issued, and all the usual things that one must do has occurred, and the plaintiff has not met their burden of showing that these exceptional circumstances that would warrant the lifting of an automatic stay have been met.

THE COURT:  Okay.  Thank you.  Anyone else on the defendants side like to be heard?

MR. CORDING:  Yes, Your Honor. Charles Cording, from Willkie Farr and Gallagher, for the underwriter defendants.

We largely join in and support the arguments that have been raised by Rent The Room counsel.  But there are two points I just wanted to raise briefly.

So, one, on the issue of either there being a campaign to stop discovery or stonewalling or there being some particularized need for discovery here due to the risk of loss of evidence, I just wanted to point out that during the phase one discovery process, my clients. who are the non-investment banks who served as underwriters, provided very meaningful discovery to the plaintiffs.

So we produced on the order of about 14 to 1500 documents from the deal file maintained by Goldman Sachs, which is the lead underwriter in the case.

Those, from our vantage point, constitute the core

24

documents that we'd be producing in this case that reflect the underwriter's diligence, their assessment of the issues, including the issue left in the case, their internal presentations, their correspondence with Rent The Runway.

So this is not a case where they haven't gotten any paper or, you know, these are the underwriter defendants. There's a real risk that if a stay, were to, you know, be implemented and continue on that they would not get any discovery, there'd be a risk of spoliation of key documents here.  From our vantage point, they've already gotten very meaningful discovery from our clients.  That's point one.

Point two just we agree with the Rent the Runway defendants that the 12(c) motion here triggered an automatic statutory stay.  There was some suggestion in plaintiff's presentation about the *BE Health* case, which case I think is directly on point.  It involves successive motions.  A motion to dismiss that was granted in part and then denied in part, and then a 12(c) motion.

There the Northern District of California found that the stay was triggered by the later success of the 12(c) motion.  There was a suggestion that that was based on some idiosyncrasy of Ninth Circuit law or even a misconstrual of Ninth Circuit law.

I just wanted to point out briefly that the case they cited for the proposition that a 12(c) motion is a

25

motion to dismiss within the meaning of the automatic stay provision, it is the case from the Eastern District of New York, *Gardner vs. Major Auto*.

So just in brief in *BE Health*, the Northern District of California said lead plaintiff has not offered any compelling argument as to why this court should interpret the PSLRA differently from district courts that treat a Rule 12(c) motion the same as a Rule 12(b)(6) motion for purposes of the discovery state provision.

In the Eastern District New York, a court found that, quote, a Rule 12(c) motion is a motion to dismiss within the meaning of the PSLRA automatic stay provision and that, therefore, the stay is triggered by defendant's Rule 12(c) motion.

And so we think, you know, largely the 12(c) motion, as opposed to the motion for reconsideration, explains the difference between where we were with Judge Merkl, which was talking about a discretionary stay, and where we are now, which is a mandatory statutory stay.

THE COURT:  Okay.  Thank you so much, Mr. Corning.

And I want to make clear, I know plaintiff came out a little hot with the allegations.  I heard that.  That's not really weighing on my head in this decision.

So I appreciate why the defendants keep raising that, but I'm not making my decision based on theories of

26

ulterior motives with motion filing.

Just that the fact that the reality -- the fact of the motions has delayed the case, and that could potentially prejudice plaintiff. And that's the factor that's weighing in my mind. So I just want to clear that up, because you're right, that was what was argued. But I just want to make clear what's on my mind.

I do want to -- in either -- our friends from Freshfields could answer or Mr. Cording, just going back to Judge Merkl's minute entry, I know it's making a lot out of an order, a very brief order on the docket, but that took place, my understanding, in reference to the statement, that there was going to be this 12(c) motion.

So assuming I were to believe that Judge Merkl was making a finding that discovery was appropriate notwithstanding that motion, which I've heard the argument of why I shouldn't make that finding, and that isn't what you believe, what she was saying, but let's assume it was, what is my authority or discretion at this point to depart from that, assuming I was inclined to do so, which I'm not necessarily, but assuming I was.

MS. DUNOGUE: Thank you, Your Honor.

At that point, the defendants had not made a request for a stay. So this was not an order. I mean, it's a way to think about it between, you know, a dicta and

27

holding.

We had not -- we had noted that we intended to file a 12(c), but the specific status report and order that was being looked at and what she was actually ruling on at the time was the receipt of the party's stipulation and proposed order regarding the defendant's time to answer, and that is what she granted on consent.

THE COURT:  Okay.

MS. DUNOGUE:  And, you know, just to be clear, if -- understood, Your Honor, that you're saying, well, maybe it's form over substance about emotion, et cetera, we can do it quickly.

But we do think that it is important to at least require the plaintiff to meet the burden that is applicable to the burden.

THE COURT:  I heard you, and it's on my mind. Okay.  But I'm going to let the plaintiff speak to two things.

One, you know, certainly I will give the opportunity to respond to anything that was argued.  It's like -- I do want to say, like I said, it is not particularly impressive to me when one party suggests another party has a certain motive.

There's a reality here, and that's this case is getting old, and this is requesting yet another stay, whether

they're entitled to it automatically or not and prejudice to the plaintiff that could result in that.

I'm happy just to leave it there. We don't need to talk about people's motives, but I do want to hear your response to that argument.

I especially want to hear why I shouldn't ask you to submit a -- even if I wasn't sure whether I thought the stay was appropriate, what would be the harm in asking you to submit a letter saying, we're asking -- assuming there's an automatic stay, we're asking to be relieved from the automatic stay. Because if we are not, this will be the prejudice, and these are the things we'll be looking for. And if you were to do that, I think it would help me in two respects.

One, I think it would help me assess what discovery would look like if I allowed discovery to proceed. Because just for everyone's benefit, if I were to do that, I'm not going to set a discovery period.

We're going to figure out what's going to happen in a period of time and then we're going to come back and we're going to keep meeting. Maybe we could do it over the phone if people want, instead of coming in person.

But we're going to keep meeting and we're going to figure out where things are going because we want to make sure that the prejudice issue and the burden to the

29

defendants doesn't stretch beyond what is appropriate given the posture of this case.

MS. DUNOGUE: So it would help me assess that.

And then, of course, we'd also be on more solid ground if I were to grant it, because we would be following the process that defendant is suggesting is required under the statute.

MR. FATALE: Sure. Your Honor, and first, apologies to everyone if my insinuations were taken wrong. You know, I do have to argue a prejudice here. I'm being told that I'm not arguing a prejudice.

So there's a little blending between prejudice and delay and where the delay came from and how that's prejudicing in my client. And if it was overly zealous in that, I apologize.

The posture of these letters was opposition that the stay doesn't apply. So I wasn't going to take on a burden that I did not have in our already lengthy joint status report.

If the court would like a letter laying out the prejudice that my clients face after three years in this case, I am happy to do that. No problem. I can't argue against that.

THE COURT: And let me just tell you right now that like, I don't want anyone to do work that's unnecessary,

30

right?

But I think, like I said, regardless of which road I were to go down, my intent today, if I was not going to agree with defendants and just issue a stay to this -- this motion was done and given Judge Merkl's prior writings and position on this issue, which weighs a lot on my mind, candidly, was not where I was inclined to go to begin with, was to figure out what that discovery would look like and how I can balance those issues of prejudice.

You are making a formal motion saying, assuming it stay's appropriate, given their, their -- their motion, we would nevertheless be entitled to this discovery because of the prejudice we would suffer otherwise, would be extremely helpful to me in crafting an order that gives the parties the appropriate guidance of what can be done in whatever period we're going to do that discovery before we get back together again and see how things are going.

MR. FATALE:  Sure.  So would Your Honor be envisioning letter motions of a certain length or --

THE COURT:  I mean, my rules in theory require the parties to do a joint letter, six pages, three pages each. But I think in this case, that's probably not the ideal format.  I would -- I'm not -- I'm not a big page limit person if the parties really believe it requires more than that.

31

And I understand I'm asking you to set forth both prejudice and the things that you would need, because that's important to me. You heard that argument on their end. Their argument was this is about setting rates. They have that information. What else could they possibly need? There's this unnamed comment by this unnamed official. What else could they possibly need?

I'd like -- and if I wasn't going to go this route, I'd ask you to talk a little bit more about it today. But because I'm inclined to go this route, I want to see that in your letter. So if you think that needs to be a five page letter, then fine, it's a five page letter. And then I'll give you however long you need to do it. I'll give defendants however long they need to respond. If all the defendants want to do one joint response, I'd love that. Thank you very much. And then I don't need a reply or anything. I will review it.

And if I -- I don't think I will need further argument from the parties on it, but if so, I'll set down a telephone conference. If not, I'll issue an order. That's what I'm thinking.

MR. FATALE: Five pages will be fine. Do you mind if I confer with my colleague about other deadlines to see if we can do this by a week?

THE COURT: Folks on the defense end, be thinking

32

how long you'll need for the response.

MS. DUNOGUE:  Yes.

THE COURT:  The plan will be due December 3rd.

MR. FATALE:  We could put that letter in in a week.

THE COURT:  Okay.  All right, that's fine.  So that's -- well, a week from today is a federal holiday.  It's better to say -- so let's say the 12th, which is next Wednesday.

MR. FATALE:  Thank you.

THE COURT:  No pressure, defendants.  You could have more than a week if you need to respond.  But we are getting near Thanksgiving, so you're going to have to make an intentional pre or post-Thanksgiving --

MS. DUNOGUE:  Your Honor, if I may --  only because we're going to be traveling, so just to avoid any issues with that, if we could do the 21st.  So that's a little bit more than a week, but just to accommodate international travel.

THE COURT:  As I said, it's totally fine.  I appreciate the parties doing this.  I think this will be helpful in reaching an appropriate resolution here and kind of not going on a brief mention in a docket entry by Judge Merkl and what's already there.

It'll also -- you know, I would say for the defendants, it would be helpful for me to understand a bit more in your written letter about, you know, kind of the

33

newness of the current motion and why -- I know you explained it pretty well today, but if there's some context you could put in the motion regarding whether there would be prejudice and all that stuff and the timing and all this stuff, that would be helpful for my consideration.

MS. DUNOGUE:  Of course, Your Honor.

THE COURT:  And it would be without any prejudice to your position, of course, that the automatic stay applies. And, you know, so these letters would be -- assuming that the stay didn't apply here's -- or assuming the stay did apply here's why they shouldn't be entitled to the exception that the defendants acknowledge are there.

MS. DUNOGUE:  Understood, Your Honor.

THE COURT:  Thank you.  All right.

I apologize I wasn't able to resolve it for all of you today, but I expect we'll be able to resolve it soon and send you on your way, one way or another.  And anything else from the plaintiff today?

MR. FATALE:  No, Your Honor. I think it makes sense to address this issue first before dealing with the other issues that were in the letter.  So, you know, we'll deal with that in the future.

THE COURT:  Absolutely.  And certainly, like, I know there's that secondary issue about bifurcation that's out there and kind of the overlap.

34

And I think your letter may necessarily touch on that. And, you know, certainly feel free to address -- if it's individual claims, if it's class claims, you know, you can highlight for me -- same with defendants -- if that's a concern of yours, I don't want you to feel like you can't address that.

But if we necessarily need to address that again, or I have your -- I feel a lot more comfortable about your written submissions on bifurcation than I do on this original issue, which I think is a little more complicated than each side suggests in their papers.

So, you know, feel free to highlight that, but don't feel like you need to spend, you know, a bunch of pages just arguing for or against bifurcation.

My inclination, just to be candid, would be that unless I misunderstand the case, I think that, you know, I would want to do as much overlap discovery as possible, if there is and if there's not, you know, then I'll hear burden on it. Okay?

MR. FATALE: Thank you, Your Honor.

MS. DUNOGUE: Thank you.

THE COURT: You're welcome.

THE COURT: Anything from the defendants?

MS. DUNOGUE: No, thank you, Your Honor.

THE COURT: Okay. I really appreciate the parties

taking the time to talk this through with me.  This was an incredibly helpful discussion about this issue, and I look forward to your letters.  And like I said, I'll either get you an order or I'll get you --  or I'll put another conference on.

Let me just ask before we go, phone conference?  Would that be the preference?

MR. FATALE:  Whatever Your Honor wants.  We're one subway --

MS. DUNOGUE:  We're both very close by.  Okay.

THE COURT:  I've gotten daggers from attorneys that are like, how dare you drag me into Brooklyn?  My office is in Manhattan.  I'm like, there's this thing.  It's called the subway.

MS. DUNOGUE:  I also live here, so it's no problem.

THE COURT:  All right.  So I think if I need to bring us in, I'll bring us in.  And of course, you know, if something comes up or just for your schedules that's too inconvenient, I'm completely open to a letter at least two days in advance, please, saying we just -- we'd prefer to do it by the phone.  Okay.  All right.  Thank you all again.  Unless there's anything further.  We're adjourned.

MS. DUNOGUE:  Thank you, Your Honor.

(Proceedings concluded at 4:57 p.m.)

36

I, CHRISTINE FIORE, court-approved transcriber and certified electronic reporter and transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

*Christine Fiore*

_____          November 5, 2025

Christine Fiore, CERT

Transcriber