# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| RAJAT SHARMA, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>  v.<br><br>RENT THE RUNWAY, INC., JENNIFER Y. HYMAN, SCARLETT O' SULLIVAN, TIM BIXBY, JENNIFER FLEISS, SCOTT FRIEND, MELANIE HARRIS, BETH KAPLAN, DAN NOVA, GWYNETH PALTROW, CARLEY RONEY, DAN ROSENSWEIG, MIKE ROTH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., and TELSEY ADVISORY GROUP LLC,<br><br>       Defendants, | Case No. 22-cv-06935-OEM-SDE<br><br>**FILED UNDER SEAL** |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................... 3

     A.    Plaintiffs' Remaining Narrowed Claims ................................................................... 3

     B.    Undisputed Facts, Underlying Shipping Agreements And Disclosures Made By RTR ................................................................................................................. 5

ARGUMENT ...................................................................................................................... 9

     A.    Legal Standards .............................................................................................................. 9

     B.    The Shipping Agreements Are Integral To Plaintiffs' Shipping Cost Allegations And Must Be Considered By The Court At This Stage .................... 10

     C.    Plaintiffs Fail Adequately To Plead An Actionable Misstatement Or Omission ........................................................................................................................ 13

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*,
    28 F.4th 343 (2d Cir. 2022) ...................................................................................9

*Bohmer v. N.Y.*,
    684 F. Supp. 2d 357 (S.D.N.Y. 2010).................................................................12

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002)................................................................................12

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018).................................................................................9

*In re Coty Inc. Sec. Litig.*,
    2016 WL 1271065 (S.D.N.Y. Mar. 29, 2016) .....................................................18

*Doron Precision Sys., Inc. v. FAAC, Inc.*,
    423 F. Supp. 2d 173 (S.D.N.Y. 2006)..................................................................15

*Dwyer v. Allbirds, Inc.*,
    598 F. Supp. 3d 137 (S.D.N.Y. 2022)..................................................10, 11, 12, 15

*Fadem v. Ford Motor Co.*,
    352 F. Supp. 2d 501 (S.D.N.Y. 2005), *aff'd*, 157 F. App'x 398 (2d Cir. 2005).....................19

*In re FuBo TV Inc. Sec. Litig.*,
    2024 WL 1330001 (S.D.N.Y. Mar. 28, 2024) .....................................................9

*Gayle v. Pfizer Inc.*,
    452 F. Supp. 3d 78 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 79 (2d Cir. 2021)..........................11

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010).............................................................................9, 13

*HDtracks.com, LLC v. 7digital Grp. PLC*,
    2019 WL 6170838 (S.D.N.Y. Nov. 19, 2019)..................................................11, 12

*Henry v. Dow Jones*,
    2009 WL 210680 (S.D.N.Y. Jan. 28, 2009) .......................................................20

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
    62 F.3d 69 (2d Cir. 1995).............................................................................. *passim*

*Janbay v. Canadian Solar, Inc.*,
  2013 WL 1287326 (S.D.N.Y. Mar. 28, 2013) ........................................................................18

*Kasilingam v. Tilray, Inc.*,
  2021 WL 4429788 (S.D.N.Y. Sept. 27, 2021) .......................................................................18

*Keita v. Am. Sec. Ins. Co.*,
  2021 WL 5865734 (E.D.N.Y. Dec. 10, 2021) .........................................................................9

*Koutsoudakis & Iakovou L. Grp. PLLC v. Osman*,
  2023 WL 5232622 (S.D.N.Y. Aug. 14, 2023) ...........................................................2, 10, 12

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)....................................................................................2, 10, 13

*Lian v. Tuya Inc.*,
  2025 WL 733253 (S.D.N.Y. Mar. 7, 2025) ................................................................ *passim*

*Litwin v. Blackstone Grp., L.P.*,
  634 F.3d 706 (2d Cir. 2011)....................................................................................................13

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
  6 F.4th 293 (2d Cir. 2021) ..............................................................................................10, 11

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001).....................................................................................19

*In re Lyondell Chem. Co.*,
  491 B.R. 41 (Bankr. S.D.N.Y. 2013), *aff'd*, 505 B.R. 409 (S.D.N.Y. 2014) ........................11

*Pesserillo v. Nat'l Grid*,
  78 F. Supp. 3d 551 (E.D.N.Y. 2015) ......................................................................................12

*Pizza on 23rd Corp. v. Liberty Mut. Ins. Co.*,
  723 F. Supp. 3d 307 (S.D.N.Y. 2024).....................................................................................13

*Roberts v. Babkiewicz*,
  582 F.3d 418 (2d Cir. 2009)................................................................................................2, 9

*Santos v. Dist. Council*,
  619 F.2d 963 (2d Cir. 1980)......................................................................................................9

*Singh v. Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019)......................................................................................................13

*Washington Cap. Ventures, LLC v. Dynamicsoft, Inc.*,
  373 F. Supp. 2d 360 (S.D.N.Y. 2005)..........................................................................10, 11, 12

*Waswick v. Torrid Holdings, Inc.*,
    2023 WL 9197563 (C.D. Cal. Dec. 1, 2023) ..........................................................22

*Yak v. Bank Brussels Lambert*,
    252 F.3d 127 (2d Cir. 2001)..............................................................................12

*Zagerson v. N.Y.C. Dep't of Educ.*,
    No. 1:20-cv-11055 ...............................................................................................9

*Zappin v. Cooper*,
    2024 WL 3084015 (2d Cir. June 21, 2024) ........................................................10

**Statutes**

15 U.S.C. § 77k ........................................................................................................1, 3, 13

15 U.S.C. § 77l ..............................................................................................................1, 3

15 U.S.C. § 78o .............................................................................................................1, 3

**Other Authorities**

Fed. R. Civ. P. 12 ......................................................................................... *passim*

## PRELIMINARY STATEMENT

After careful review, this Court previously dismissed claims as to all but two statements Plaintiffs have challenged under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933. Plaintiffs' sole remaining claim rests on two statements in Rent the Runway ("RTR")'s Offering Documents (defined below) concerning shipping costs. Plaintiffs' only allegations in support of their claim that those two statements were misleading are based on purported assertions from one unnamed former employee—FE-4—about RTR's shipping agreements with FedEx and UPS. Those allegations are that, prior to the IPO, FedEx "doubled the Company's shipping rates," which "forced" RTR to "switch back[] to UPS," which Plaintiffs add (without a supporting factual allegation) was "prohibitively expensive." Corrected Amended Complaint (ECF 61) ("CAC") ¶¶ 92-93. At the motion to dismiss stage and upon reconsideration, this Court relied on those allegations in concluding that, assuming they were true, the CAC pled Securities Act claims for alleged false or misleading statements as to shipping costs, in the registration statements and prospectus (the "Offering Documents") filed in connection with RTR's initial public offering ("IPO"). *See* Memorandum and Order as to Defendants' Motion to Dismiss (ECF 77), Sept. 25, 2024 ("MTD Decision"); Memorandum and Order as to Defendants' Motion for Reconsideration (ECF 100), Sept. 12, 2025 ("Reconsideration Decision").

The Defendants have now filed their answers, providing responses to each allegation of the CAC and attaching full and complete copies of RTR's agreements with FedEx and UPS in 2021. *See* RTR Defendants' Answer (ECF 106; ECF 117) and Exhibits ("Answer"); *see also* Underwriter Defendants' Answer (ECF 105; ECF 119). Based on the pleadings and the agreements, Defendants move pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings as to Plaintiffs' sole remaining claims concerning shipping costs.

The agreements attached to RTR's Answer are plainly integral to the CAC's allegations about the shipping rates with FedEx and UPS and the timing of when those terms were agreed, and are therefore to be considered by this Court in assessing whether the CAC adequately pleads a claim that the two challenged statements concerning shipping costs contain materially false or misleading representations. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (agreement "integral" where complaint "relie[d] heavily upon its terms and effect" and court could "consider its terms in deciding whether [plaintiff] can prove any set of facts that would entitle it to relief"); *see also Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009) (in addressing a 12(c) motion, the court "rel[ies] on the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case"); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (extrinsic documents attached to defendant's answer were "integral" to complaint in 12(c) motion analysis). Further, "[i]f a document integral to the complaint contradicts that complaint … the court need not accept the complaint's allegations as true." *Koutsoudakis & Iakovou L. Grp. PLLC v. Osman*, 2023 WL 5232622, at *3 (S.D.N.Y. Aug. 14, 2023).

The actual terms and timing of the shipping agreements plainly show that the CAC's sole allegations in support of their remaining shipping cost claims – on which the Court previously relied – are untrue. FedEx did not "double" its rates nor did FedEx's decision to increase rates "force" RTR to return to UPS. Thus, the CAC provides no factual allegations in support of its shipping cost claims. Further, the agreements and relevant undisputed facts set forth in the CAC and Answer show that the two remaining challenged statements did not contain false or misleading statements of material fact. Accordingly, the CAC fails adequately to plead a plausible claim under the Securities Act as to shipping costs, and the CAC must be dismissed and judgment granted

to Defendants on the pleadings as to Plaintiffs' sole remaining claim.

## BACKGROUND

### A.    Plaintiffs' Remaining Narrowed Claims

Plaintiffs' sole remaining claims pertain to just two statements about RTR's shipping costs, which Plaintiffs allege are false on the basis of one purported assertion from an unnamed former employee.[1]  *See* MTD Decision at 32-36; Reconsideration Decision at 6-11.  Specifically, the two challenged statements are:

- "***A substantial majority of our inbound shipments from customers are currently returned through a single vendor—we have from time to time transitioned, and are currently in the process of transitioning, inbound shipments from this vendor to multiple other vendors, and we cannot predict how this transition may impact our costs and our customer sentiment and satisfaction***."  CAC ¶ 128 (emphasis by Plaintiffs).

- "***Shipping and logistics are a critical part of our business and our supply chain and any changes or interruptions in shipping or logistics operations could adversely affect our operating results***. … *[O]ur business relies on the successful management of reverse logistics needed to ingest,* clean, and restock returned items quickly and efficiently in order to offer them for rental or resale to other customers.  *If we are not able to negotiate acceptable pricing and other terms with these vendors or they experience performance problems or other difficulties, our operating results and customers' experience could be negatively impacted*. … *Increases in shipping costs* or other significant shipping difficulties or disruptions or any failure by our brand partners or third-party carriers to deliver high-quality products to us or to our customers, as applicable, in a timely manner or to otherwise

---

[1] As a short summary to the extent it is helpful to the Court:  In the CAC, Plaintiffs challenged statements in the Offering Documents in three distinct categories—regarding (i) consumer demand, (ii) consumer theft and insurance coverage, and (iii) shipping costs—and asserting claims under Sections 11, 12(a)(2), and 15 of the Securities Act, as well as in connection with Items 303 and 105 of SEC Regulation S-K.  CAC ¶¶ 111-138.  The Court has dismissed (a) Plaintiffs' Sections 11, 12 and 15 claims in connection with (i) consumer demand, (ii) customer theft and insurance coverage, and (b) all of Plaintiffs' claims in connection with Items 303 and 105.  *See* MTD Decision (dismissing Plaintiffs' Securities Act and Item 303 claims in connection with alleged consumer demand statements and all Item 105 claims); Reconsideration Decision (dismissing Plaintiffs' Securities Act and Item 303 claims in connection with alleged consumer theft and insurance coverage statements).  The CAC does not assert an Item 303 claim as to shipping costs.  *Compare* CAC ¶¶ 128-131 (no Item 303 allegation as to shipping costs statements) *with* ¶ 127 (Item 303 allegation as to consumer demand) *and* ¶ 138 (Item 303 allegation as to consumer theft and insurance coverage).

adequately serve our customers *could damage our reputation and brand and may substantially harm our business.*"  CAC ¶ 130 (emphasis by Plaintiffs).

The CAC alleges that these two statements were false and misleading because they allegedly "failed to disclose that prior to the IPO, Rent the Runway had switched from UPS to FedEx as its primary shipping vendor because UPS was too expensive to be sustainable, however, just before the IPO, FedEx doubled its shipping rates for the Company and the Company was forced to switch back to the already prohibitively expensive UPS."  CAC ¶¶ 129, 131.

The sole purported factual basis set forth in the CAC for this contention is an alleged statement from a former employee, designated as "FE-4," who was allegedly employed at RTR as a Senior Operations Manager, Outbound and Inventory Control and Quality Assurance ("ICQA") in September 2019 and transitioned to Senior Manager, Operations Integration and ICQA in August 2021, and who allegedly stated that FedEx had "doubled [] RTR's shipping rates because it was not shipping enough, which caused 'panic' for 30 days until the Company switched to UPS." CAC ¶¶ 84, 93.[2]  The Court "f[ound] that, as alleged, the failure to disclose the doubling in FedEx's shipping prices, which then precipitated a switch back to UPS, is plausibly material to any potential investor such that it was required to be disclosed."  MTD Decision at 34; *see also* Reconsideration Decision at 6-11 (denying defendants' motion for reconsideration "with respect to shipping costs statements" after considering defendants' arguments as to (i) news articles concerning FedEx and UPS shipping increases and (ii) the lack of allegations concerning FE-4's job responsibilities).

---

[2] The CAC also references purported statements by another former employee, designated as "FE-1," that "[d]ue to significant cost increases after the first year of contracting with FedEx, as well as reliability issues, Rent the Runway was forced to switch back to using the prohibitively expensive UPS for shipping."  CAC ¶ 92.  The Court found "that FE-1 opinions in this regard are only 'vague assertions' that do not make the Offering Documents false or misleading for lack of any additional disclosure."  MTD Decision at 33.

**B.      Undisputed Facts, Underlying Shipping Agreements And Disclosures Made By RTR[3]**

RTR is an emerging growth e-commerce company that created the world's first shared designer closet—the "Closet in the Cloud"—from which customers can rent thousands of clothing styles by hundreds of designer brands. CAC ¶¶ 61-62; Answer ¶¶ 61-62. This action was brought after RTR's October 27, 2021 IPO, in connection with which RTR filed with the SEC its Registration Statement on Form S-1 on October 4, 2021, two amendments to the same on Forms S-1/A on October 18, 2021 and October 22, 2021, respectively, and Prospectus on Form 424B4 on October 27, 2021 (ECF 71-15, 71-16, 71-19, 71-20) (collectively, the "Offering Documents"). CAC ¶¶ 1, 106-107; Answer ¶¶ 1, 106-107.

Prior to the IPO, RTR entered into a series of shipping agreements with both UPS and FedEx. Specifically, RTR executed: (i) a contract with UPS in July 2019 (Ex. A),[4] (ii) a contract with FedEx in August 2020 (and an amendment to certain terms of the same in April 2021), as to which FedEx sent a termination notice on July 19, 2021 (Exs. B, C, and F), (iii) a contract with UPS in May 2021 with amendments in June 2021, July 2021, and August 2021 (Exs. D, E, G, and J), and (iv) contracts with FedEx in August 2021 (Exs. H and I). *See* Answer ¶¶ 10, 91-94.

Under the FedEx agreements,  *See* Ex. B at 4-7, 13-15, 17; Ex. H at 3-6; Ex. I at 3-5. The agreements

---

[3] The following are drawn from Plaintiffs' CAC, the Answer and the underlying FedEx and UPS agreements provided as exhibits thereto, and the Offering Documents for the purpose of stating what the latter disclosed.

[4] For the Court's convenience, Exhibits A-J to the Answer are reattached to the Declaration of Agnès Dunogué in Support of Defendants' Motion for Judgment on the Pleadings ("Declaration"), filed concurrently herewith.

████████████████████████████████████████████████████ *See* Ex. B at 7-9, 18-19; Ex. H at 6-7; Ex. I at 6-8.  The rates under these agreements ████████████ ████████ did not constitute 100% increases across all services.  *See* Appendix.[5]

With respect to the UPS contracts, the rates ███████████████████████ ████████████████████████ *See* Exs. D, J.  These agreements included ███ ██████████████████ *Id.*

The shipping agreements, ████████████████████████████ Ex. F; Ex. D at 2.  Hence, both FedEx's and UPS's pricing, including ██████████████ ████████████████████ Ex. F; Ex. D at 2.  Indeed, the termination notice sent by FedEx to RTR on July 19, 2021 provided for ██████ "termination of the above-referenced Account Number(s) [for RTR] and the discontinuation of the discounts and incentives, as set forth in the Agreement(s)."  Ex. F.

The shipping agreements likewise ████████████████████████ ██████████████  Indeed, RTR entered into a new contract with UPS before receiving FedEx's notice of termination of the 2020 agreement and its associated pricing.  Ex. F; Ex. D at 2.  As of the time of the IPO, FedEx had reliability issues, and RTR's customers had complained about FedEx's performance.  CAC ¶¶ 10, 92; Answer ¶¶ 10, 92.  Further, RTR engaged in diversification to multiple additional vendors and more ways for customers to return clothing.  Prior to the IPO, RTR was diversifying its carrier network beyond FedEx and UPS and expanding its network of drop-off options for customer returns, as part of undertaking measures to reduce or offset increasing fulfillment expenses (including due to labor cost increases) and to be responsive to

---

[5] For the Court's convenience, Defendants attach as an Appendix █████████████████ taken directly from the 2020 and 2021 FedEx agreements and presented in side-by-side table form.

customer preferences.  CAC ¶¶ 9, 91, 94-95, 142 (alleging that RTR was "constantly" searching for different carriers to lower costs, including switching to local and "last mile" carriers, RTR "was attempting to lower shipping costs by setting up physical drop boxes for customers to use," and company "implemented several strategies to mitigate rising transportation costs" including "reducing [its] dependence on national carriers and moving towards regional carriers, local couriers"); Answer ¶ 9 ("at the time of the IPO, RTR was investing in automation and other process improvements to become more efficient in fulfilling orders to offset increasing shipping and other costs and diversifying its shipping carrier network beyond FedEx and UPS"), ¶ 91 ("RTR diversified its carrier network beyond FedEx and UPS"), ¶ 95 ("prior to the IPO, RTR expanded its network of physical drop-off points, mobile trucks, and drop-off boxes, where customers could return rented clothing"); Prospectus at 38 (ECF 71-20) (RTR was offering multiple physical drop-off points for returns in several cities throughout the U.S.), 95 (RTR "[l]aunched new features such as cross-ship and expanded our drop-off box network and inbound customer return options, providing subscribers with more flexibility and immediacy in their swapping experience and removing friction from the experience in order to increase retention of subscribers"), 168 ("Convenient places to return your rental are an important part of [RTR's] customer experience"; "We have invested in an inbound network that allows our customers to select from national returns logistics providers and Rent the Runway designed and managed return methods including physical drop-off points, mobile trucks and RTR drop-off boxes strategically positioned in retail stores or corporate offices"); *see also* 3Q21 Earnings Release at 6 (quarter ending 10/31/21) (ECF 71-24) (3Q21 "business highlight" included RTR's "[l]aunch[] [of] at-home pickup in five major metros resulting in lower shipping costs and an easier way for customers to return orders; over one-third of customers in initial markets have adopted the offering").

RTR did not make any representations regarding the rates charged by its shipping vendors or make any assurances that such rates were not subject to change. In fact, RTR disclosed that:

- Fulfillment expenses primarily consisted of shipping costs and labor costs, and included other components. Prospectus at 98 ("Fulfillment expenses consist of all variable costs to receive, process and fulfill customer orders").

- At the time of the IPO, fulfillment expenses were rising and were expected to continue increasing. Prospectus at 98 ("[w]e expect fulfillment expense to increase in absolute dollars in future periods to support our growth, especially due to competitive pressures in the labor market which could lead to higher wage rates, and as costs to ship and process orders to/from customers will increase as order volume increases"; 107 (throughout Q1 and Q2 2021, "operating and fulfillment expenses have increased to support additional customer demand"); 2021.10.22 S-1/A (ECF 71-19) at 93 (anticipating "shipping cost headwinds due to macro global transportation network inefficiencies over the next several quarters"); *see also* 2021.08.20 Analyst Presentation (ECF 71-11) at 24 (key "[d]rivers" of fulfillment costs were "[s]hipping rate headwinds beginning in Q3'21").

When the third quarter of 2021 (the quarter during which the amended contracts went into effect) results were finalized, they were disclosed, and RTR reported $19.2 million in fulfillment expenses, which include shipping costs. CAC ¶ 140; 3Q21 Earnings Release at 11 (ECF 71-24). Notably, the results were squarely in line with the analyst forecasts that had been issued shortly after the IPO.[6]

---

[6]  *See, e.g.*, Ex. K at 31; 34 [2021.11.21 KeyBanc Report, "RENT: AppaRRRel in the Cloud, Initiate OW"] (estimating 3Q21 fulfillment expenses of $19.2 million; acknowledging that "Rent the Runway is focusing on carrier diversification and transportation technology," that "RTR partners with a wide variety of national, regional, and local last-mile service providers," that "RTR's transportation management system allows the Company to rate shop across these providers and opt into the best shipping method based upon cost and capacity," that "RTR is building an extensive outbound carrier network with many last-mile partners … and relies on UPS for reverse logistics"); Ex. L at 15; 45 [2021.11.22 JMP Report, "Initiating Coverage at MO as RTR Democratizes Fashion Via Its 'Closet In The Cloud'"] (estimating 3Q21 fulfillment costs at $19.2 million; expecting EBITDA and cash flow margins to improve "over time" as RTR "moves  to  bulk  shipping rates, diversifies its transportation network, adds automation and

# ARGUMENT

## A.    Legal Standards

A defense for failure to state a claim "may be made ... by motion for judgment on the pleadings." *Santos v. Dist. Council*, 619 F.2d 963, 967 n.4 (2d Cir. 1980); *see also Keita v. Am. Sec. Ins. Co.*, 2021 WL 5865734, at *1 (E.D.N.Y. Dec. 10, 2021) ("Where, as here, a Rule 12(b)(6) motion to dismiss is timely made and denied" in part, "a defendant may, after close of the pleadings, again seek dismissal through Rule 12(c).").

"To survive a Rule 12(c) motion, plaintiffs' complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "In other words, the plausibility standard requires factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged." *Lian v. Tuya Inc.*, 2025 WL 733253, at *5 (S.D.N.Y. Mar. 7, 2025) (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018)).

In deciding a Rule 12(c) motion, a court "employ[s] the same standard applicable to dismissals pursuant to [Rule] 12(b)(6)," *Paterson*, 594 F.3d at 160, but "rel[ies] on the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case." *Babkiewicz*, 582 F.3d at 419; *accord, e.g.*, *Keita*, 2021 WL 5865734, at *1; *Zagerson v. N.Y.C. Dep't of Educ.*, No. 1:20-cv-11055, ECF 28 (S.D.N.Y. May 14, 2021) (taking judicial notice of exhibits appended to defendant's

---

increases throughput"). These reports may be judicially noticed for the existence of their contents. *See, e.g.*, *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*, 28 F.4th 343, 352 (2d Cir. 2022) (affirming dismissal where court took judicial notice of defendants' analyst reports that were directly relevant to plaintiffs' arguments supported by alternative reports on identical issues); *In re FuBo TV Inc. Sec. Litig.*, 2024 WL 1330001, at *4 (S.D.N.Y. Mar. 28, 2024) (taking judicial notice of analyst report for the fact of its publication).

answer in 12(c) motion analysis). Courts may consider extrinsic documents which are "integral" to the complaint. *L-7 Designs*, 647 F.3d at 422 (finding documents attached to answer integral in 12(c) motion analysis). "If a document integral to the complaint contradicts that complaint … the court need not accept the complaint's allegations as true." *Osman*, 2023 WL 5232622, at *3; *see also Zappin v. Cooper*, 2024 WL 3084015, at *2 n.1 (2d Cir. June 21, 2024) (a court "need not credit [plaintiff's] allegations that are plainly contradicted by materials incorporated into the complaint or appropriately judicially noticed"). Accordingly, a complaint can survive a 12(c) motion only if its non-contradicted and non-conclusory allegations state a plausible claim. *L-7 Designs*, 647 F.3d at 422.

**B.      The Shipping Agreements Are Integral To Plaintiffs' Shipping Cost Allegations And Must Be Considered By The Court At This Stage**

The shipping agreements are integral to the CAC and properly considered at this stage.

A document is "integral" "where the complaint relies heavily upon [the document's] terms and effect," *Int'l Audiotext Network, Inc.*, 62 F.3d at 72, or where "it forms the factual basis" of a complaint's allegations. *See Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 147-48 (S.D.N.Y. 2022) (document integral where it "formed the factual basis for most of the allegations in the Amended Complaint"); *see also Washington Cap. Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005) (agreements were "integral to the [complaint]" as they were "necessary components of [plaintiff's] case"). In particular, an agreement between a defendant and a nonparty is integral where the complaint "relies heavily upon its terms and effect," even though the complaint "does not incorporate the [a]greement." *Int'l Audiotext Network, Inc.*, 62 F.3d at 72 (finding agreement between defendant and nonparty integral); *see also Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 305-06 (2d Cir. 2021) (confirming "courts may consider all documents that qualify as part of the non-movant's pleading" including documents "integral to the

pleading" in a 12(c) analysis).[7]

The shipping agreements between RTR and FedEx and UPS are integral to Plaintiffs' complaint. Plaintiffs plainly "rel[y] heavily" (*Int'l Audiotext Network, Inc.*, 62 F.3d at 72) on the alleged timing and terms of the shipping agreements. *See* CAC ¶ 9 (alleging RTR "fac[ed] runaway shipping costs" at time of IPO), ¶ 10 (alleging various price increases and a "switch back to … UPS" "after one year of contracting with FedEx"), ¶ 91 (alleging RTR "switched carriers from UPS to FedEx to save money"), ¶ 92 (alleging "significant cost increases after the first year of contracting with FedEx" that "forced [RTR] to switch back to … UPS"), ¶ 93 (alleging "FedEx had doubled the Company's shipping rates" which led to "switch back[] to UPS"), ¶ 94 (alleging "change back to UPS occurred in August 2021" and that RTR disclosed it "was in the process of transitioning shipping vendors at the time of the IPO"), ¶¶ 128-131 (relying on alleged challenged statements related to shipping costs), ¶ 142 (relying on alleged disclosures of "rising transportation costs"), ¶¶ 140, 142, 145, 153 (alleging increased fulfillment expenses). As the shipping agreements underlie the alleged "factual basis" of Plaintiffs' claims as to shipping costs, they are integral to the CAC and to Plaintiffs' sole remaining claims. *See, e.g.*, *HDtracks.com, LLC v. 7digital Grp. PLC*, 2019 WL 6170838, at *3 n.2 (S.D.N.Y. Nov. 19, 2019) (plaintiff's claim that it "would be improper for

---

[7] Consistent with this extensive case law, a court considering integral documents need not "convert[]" a Fed. R. Civ. P. 12 motion "to one for summary judgment." *Int'l Audiotext Network, Inc.*, 62 F.3d at 72 (declining to convert Rule 12(c) motion to summary judgment where document was integral to the complaint); *see also Gayle v. Pfizer Inc.*, 452 F. Supp. 3d 78, 91 (S.D.N.Y. 2020) (finding "conversion to summary judgment [wa]s not warranted" on 12(c) analysis), *aff'd*, 847 F. App'x 79 (2d Cir. 2021). Even if the shipping agreements were not integral, which they are, "a moving defendant still may rely on that extrinsic matter in [a Rule 12 motion], and the Court need not subject that defendant, and the Court system, to the additional expense and burden of considering that same matter later on a motion for summary judgment." *In re Lyondell Chem. Co.*, 491 B.R. 41, 50 n.48 (Bankr. S.D.N.Y. 2013), *aff'd*, 505 B.R. 409 (S.D.N.Y. 2014). Indeed, courts have repeatedly considered documents in deciding a 12(c) motion without converting the motion into one for summary judgment. *See, e.g.*, *Allbirds*, 598 F. Supp. 3d at 147-48; *Dynamicsoft*, 373 F. Supp. 2d at 365; *Lively*, 6 F.4th at 305-06.

the Court to consider [agreements attached to defendant's Rule 12 motion] because [plaintiff] did not rely on the terms of the agreements" was "without merit" where complaint included "allegations regarding the terms" of those agreements); *Int'l Audiotext Network, Inc.*, 62 F.3d at 72; *Allbirds*, 598 F.Supp.3d at 147-48; *Dynamicsoft*, 373 F. Supp. 2d at 365.[8]

It is "a plaintiff's *reliance* on the terms and effect of a document," not solely "notice or possession" of it, that renders a document integral. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)) (emphasis in original). Plaintiffs cannot disclaim reliance on the terms and effects of the shipping agreements when they make express allegations about what the terms were, such as the alleged "doubling" of rates. *See, e.g.*, *HDtracks.com*, 2019 WL 6170838 at *3 n.2. Nor can Plaintiffs viably request that the Court simply ignore the shipping agreements at this stage and defer their consideration to a later time. The assessment of whether the complaint adequately pleads a claim requires that integral documents such as the shipping agreements be considered, and allegations that are "contradict[ed]" by the agreements will not be accepted as true in making this assessment. *See, e.g.*, *Osman*, 2023 WL 5232622, at *3; *see also Int'l Audiotext Network, Inc.*, 62 F.3d at 72 (in considering an extrinsic but integral agreement on a motion pursuant to Rule 12, a court may "consider its terms in deciding whether [a plaintiff] can prove any set of facts that would entitle it to relief" and "[is] not constrained to accept the allegations of the complaint in respect of the construction of the [a]greement"). The question before the Court

---

[8] *See also, e.g.*, *Bohmer v. N.Y.*, 684 F. Supp. 2d 357, 360 (S.D.N.Y. 2010) (considering exhibits attached to defendants' motion, even though the "documents were not attached to the Complaint or explicitly incorporated by reference," as they were "integral to Plaintiffs claims"); *Pesserillo v. Nat'l Grid*, 78 F. Supp. 3d 551, 555 (E.D.N.Y. 2015) (agreement exhibit submitted by defendant was "integral to plaintiff's ability to pursue his cause of action"); *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 131 (2d Cir. 2001) (considering extrinsic agreements where plaintiff's "complaint rest[ed]" on the unstated belief that the Consulting Agreements were voided by the administrative decisions" and lack of mention of the agreements did "not make them any less integral").

does not involve a weighing of the evidence – the question is whether the CAC adequately pleads a plausible claim, taking into consideration the pleadings and documents attached thereto, including the shipping agreements which are integral to the claims.  The answer, for the reasons set forth below, is no.

### C.     Plaintiffs Fail Adequately To Plead An Actionable Misstatement Or Omission

As this Court has previously held, to state a claim under Section 11 of the Securities Act, Plaintiffs must plead "'(1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal disclosure obligation; or (3) a material omission of information that is necessary to prevent existing disclosures from being misleading.'"  MTD Decision at 18 (quoting *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 715-16 (2d Cir. 2011)).  To be material, "a statement must, in the view of a reasonable investor, have 'significantly altered the total mix of information made available.'"  *Id.* at 19 (quoting *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019)).  Plaintiffs' 12(a)(2) claim is based on the same underlying allegations and involves "parallel elements" (with additional requirements that it is "based on a prospectus and the statutory seller requirement is satisfied").  *Id.* at 47 (citation omitted).

To survive a Rule 12(c) motion, "the plausibility standard requires factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged."  *Tuya*, 2025 WL 733253, at *5; *see also Paterson*, 594 F.3d at 160.  A complaint can survive a 12(c) motion only if its non-contradicted and non-conclusory allegations state a plausible claim.  *See L-7 Designs*, 647 F.3d at 430.  In light of the pleadings and the documents attached and/or integral thereto, the CAC fails to plead a claim as to the two sole remaining challenged statements concerning shipping costs and must be dismissed.  *See, e.g.*, *Pizza on 23rd Corp. v. Liberty Mut. Ins. Co.*, 723 F. Supp. 3d 307, 309 n.2 (S.D.N.Y. 2024) (granting defendant's 12(c)

motion where insurance policy incorporated by reference contradicted allegations); *Int'l Audiotext Network, Inc.*, 62 F.3d at 72 (affirming dismissal of complaint after considering the terms of an agreement which was not incorporated into the complaint but was "integral" to it).

**FedEx rates did not double.**  The Court's prior decisions as to Plaintiffs' shipping cost statements relied on Plaintiffs' allegations regarding FE-4, as to which the Court found that, "as alleged, the failure to disclose the doubling in FedEx's shipping prices, which then precipitated a switch back to UPS, [wa]s plausibly material to any potential investor such that it was required to be disclosed," as a "two-fold rate hike" resulting in a "100 percent increase of a key cost driver for RTR would be plausibly material to a reasonable investor given the statements in the Offering Documents."  MTD Decision at 34.  Indeed, the Court noted "[t]hat this doubling of shipping rates occurred prior to the IPO Roadshow and the issuance of the Offering Documents, but was not disclosed, is the nail in the coffin."  *Id.* at 35; *see also* Reconsideration Decision at 7 (finding "reconsideration of the [MTD] Order's holding with respect to RTR's statements regarding shipping costs [wa]s not warranted" as the "CAC alleged[d] … in the months leading up to the IPO, FedEx doubled its shipping rates").

But the shipping agreements between RTR and FedEx, which the Court now has before it and must be considered at this stage, show that FedEx did not "double" its rates for RTR "just before the IPO."  RTR's original FedEx agreement executed in August 2020 ███████████  ██████████  FedEx's standard list rates—which are published online by FedEx each year[9]—as

---

[9] *See* Ex. M (copy of FedEx's 2020 standard list rates); Ex. N (copy of FedEx's 2021 standard list rates).  For the Court's convenience, Defendants have attached copies of the 2020 and 2021 FedEx standard list rates as exhibits to the Declaration, which are available at: https://www.fedex.com/content/dam/fedex/us-united-states/services/FedEx_Standard_List_Rates_2020.xlsx; https://www.fedex.com/content/dam/fedex/us-united-

-14-

follows:



For each shipment, ███████████████████████████████████████████

████████████████████████████████████████[13] RTR's

amended FedEx agreements from August 2021 ████████████████████████[14]

A side-by-side comparison of the 2020 and 2021 FedEx agreement ████████████

███████████████████████████ and accordingly that the applicable rates for RTR did not

double.[15] *See* Appendix.  For example, for a FedEx Priority Overnight Pak, ████████████

██████████████ in 2020 and ██████ in 2021, and ████████████████████████ in

2020 and ██████ in 2021.[16] For a FedEx Express Saver Pak, ██████████████████████

---

states/services/FedEx_Standard_List_Rates_2021.xlsx.  As information made publicly available by FedEx, these documents are appropriate for judicial notice.  *See, e.g., Allbirds*, 598 F.Supp.3d at 148 (taking judicial of document found on website); *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006) ("a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'").

[10] *See* Ex. B at 4-6 (████████████████████████████████████████); *id.* at 13-14 (████████████████████████████████████
███████████).

[11] *See* Ex. B at 7, 15, 17 (providing ████████████████████████████████████████).

[12] *See* Ex. B at 7-9 (████████████████████████████); *id.* at 18-19 (████████████
████████).

[13] *See* Ex. B at 7-8.

[14] *See* Ex. H at 3-5 (amended ████████████████████████████████████), *id.* at 6-7 (amended ████████████), *Ex. I at 3-5 (amended* ████████████████████████████████), *id.* at 6-8 (amended ████████████████████████████████
███████).

[15] Nor did the underlying FedEx standard rates double from 2020 to 2021, as is easily ascertainable from the face of those public documents.  *See* Exs. M and N.

[16] *See* Ex. B at 5, 8; Ex. H at 4, 6.

██████ in 2020 and █████ in 2021, and ████████████████████████████ in 2020 and ████ in 2021.[17]  And for a Home Delivery Domestic Single Piece, ████████████████████

██████ in 2020 and █████ in 2021, and ████████████████████████ in 2020 and ████ in 2021.[18]

Indeed, as even just a few examples show, the applicable 2021 rates ████████████

███████████████████████████████ not 100% increases across the board from the

applicable 2020 rates.  For example:

**FedEx Express 2-Day, Zone 2, 1-pound Package:**

- ████████████████████████████████████████

  o 2020: The FedEx standard list rate was $19.11 ████████████████████████
  ███████████████████ [19]

  o 2021: The FedEx standard list rate was $20.04 ████████████████████████
  ███████████████████ [20]

- ████████████████████████████████████

  o 2020: The FedEx standard list rate was $19.11 ████████████████████
  ████████████████ [21]

  o 2021: The FedEx standard list rate was $20.04 ████████████████████
  ████████████████ [22]

- Change in ████████ rate:  In both 2020 and 2021, ████████████████
  ████████████████████████████ Accordingly, █████████████████ The applicable
  ████ rate to be paid by RTR █████████████████████████

---

[17] *See* Ex. B at 6, 8; Ex. H at 5, 7.

[18] *See* Ex. B at 14, 19; Ex. I at 4, 7.

[19] *See* Ex. B at 6-7; Ex. M at 20 (FedEx standard list rate for this category). ████████████
████████████████████████████████████████ Ex. B at 7.

[20] *See* Ex. H at 5-6; Ex. N at 20 (FedEx standard list rate for this category).

[21] *See* Ex. B at 8; Ex. M at 20.

[22] *See* Ex. H at 6; Ex. N at 20.

██████████████████████████████████

**FedEx Express Standard Overnight, Zone 2, 1-pound Package:**

- ████████████████████████████████████

    o <u>2020</u>: The FedEx standard list rate was $28.24 ██████████████████████████ [23]

    o <u>2021</u>: The FedEx standard list rate was $29.05 ██████████████████████████ [24]

- ████████████████████████████████████

    o <u>2020</u>: The FedEx standard list rate was $28.24 ███████████████████████ [25]

    o <u>2021</u>: The FedEx standard list rate was $29.05 ███████████████████████ [26]

- <u>Change in</u> ████ <u>rate</u>: In both 2020 and 2021, █████████████████ Accordingly, ████████████████ The applicable rate to be paid by RTR ████████████████████████

As another example, for a ground shipment rate:

**FedEx Ground Domestic Single Piece RM, Zone 2, 1-pound Package:**

- █████████████████████████████████

    o <u>2020</u>: The FedEx standard list rate was $8.23 ███████████████████████ [27]

    o <u>2021</u>: The FedEx standard list rate was $8.76 █████████████████

---

[23] *See* Ex. B at 6-7; Ex. M at 11 (FedEx standard list rate for this category).

[24] *See* Ex. H at 4, 6; Ex. N at 11 (FedEx standard list rate for this category).

[25] *See* Ex. B at 8; Ex. M at 11.

[26] *See* Ex. H at 6; Ex. N at 11.

[27] *See* Ex. B at 14; Ex. M at 38 (FedEx standard list rate for this category).



- █████████████████████████████████████████[28]

- ████████████████████████████████████████████████

  - o  2020:  The FedEx standard list rate was $8.23 ███████████████
    ████████████████████[29]

  - o  2021: The FedEx standard list rate was $8.76 ████████████████
    ██████████████████[30]

- Change in ███████ rate:  In both 2020 and 2021, █████████████████
  █████████████████████████████ Accordingly, ████████████████████
  █████████████████████████████ The applicable
  rate to be paid by RTR █████████████████████████████████

Moreover, RTR's disclosed 3Q21 fulfillment costs of $19.2 million, *see* CAC ¶¶ 139-140, aligned with prior analyst estimates and expectations.  *See* n.6 *supra*.  As such, there can be no "reasonable expectation that discovery will reveal evidence" that FedEx doubled its rates.  *See Tuya*, 2025 WL 733253, at *5.[31]  And as no doubling occurred, Plaintiffs' alleged reasons for the supposed doubling are irrelevant.  *See* CAC ¶ 93.

   ***RTR was not "forced" to "switch" back to "prohibitively expensive" UPS.***  The Court's prior decision also relied on the allegation that the FedEx rates' doubling "precipitated a switch

---

[28] *See* Ex. I at 4; Ex. N at 38 (FedEx standard list rate for this category).

[29] *See* Ex. B at 19; Ex. M at 38.

[30] *See* Ex. I at 7; Ex. N at 38.

[31] FE-4's purported statements about the terms and effects of the shipping agreements cannot save Plaintiffs' remaining claims, given the *actual terms* of those contracts.  *See, e.g.*, *In re Coty Inc. Sec. Litig.*, 2016 WL 1271065, at *10 (S.D.N.Y. Mar. 29, 2016) (confidential witness allegations about timing of product line termination that contradicted reports incorporated into the complaint "failed to allege a plausible inference" that statements at issue were rendered false or misleading by the termination); *Kasilingam v. Tilray, Inc.*, 2021 WL 4429788, at *10 (S.D.N.Y. Sept. 27, 2021) (finding insufficient a confidential witness's "characterization" which "merely reflect[ed] [their] own 'insufficiently particular' perception"); *Janbay v. Canadian Solar, Inc.*, 2013 WL 1287326, at *8 (S.D.N.Y. Mar. 28, 2013) (finding insufficient a confidential witness's "second-hand" descriptions).

back to UPS" in finding, accepting it as true at the Rule 12(b)(6) stage, that it was "plausibly material to any potential investor such that it was required to be disclosed."  MTD Decision at 34; *see also* Reconsideration Decision at 7 (focusing again on the CAC's allegation that the alleged doubling of the FedEx rates "forced RTR to switch back to … UPS," which "occurred unbeknownst to investors").  But the shipping agreements and notice show that RTR entered into a new contract with UPS *prior* to FedEx's notice that it would terminate the 2020 Agreement and its pricing.  *See* Exs. B, D, F; CAC ¶¶ 129, 131.  And the agreements with both vendors existed simultaneously.

Similarly, the Court previously relied on the allegation that RTR was "forced to switch back to the already prohibitively expensive UPS" after the purported "doubling" of the FedEx rate to draw an inference that UPS used the FedEx increases to drive a harder bargain.  MTD Decision at 32, 35; *see also* Reconsideration Decision at 7.  But the timeline of the shipping agreements, and the fact that UPS's rates ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ███████████████████████████████████████ show that there is no factual basis for such an inference.  *See* Exs. D at 3; J at 9; *see also In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) (court need not "accept as truth" allegations "that are contradicted … by documents upon which [the] pleadings rely").  Again, there can be no "reasonable expectation that discovery will reveal evidence" supporting the CAC's allegations. *See Tuya*, 2025 WL 733253, at *5.[32]

---

[32] To the extent Plaintiffs may seek to make new allegations through their briefing in opposition to Defendants' 12(c) motion, that is impermissible.  *See, e.g.*, *Livent*, 151 F. Supp. 2d at 432 ("The complaint cannot, of course, be amended by [] briefs in opposition."); *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this

***The shipping agreements and undisputed facts show that the two remaining challenged shipping cost statements were not false or misleading.***

<u>*In the first challenged statement*</u>, RTR stated that: "We currently rely on several third-party national and regional shipping vendors for our outbound and inbound logistics. A substantial majority of our inbound shipments from customers are currently returned through a single vendor— we have from time to time transitioned, and are currently in the process of transitioning, inbound shipments from this vendor to multiple other vendors, and we cannot predict how this transition may impact our costs and our customer sentiment and satisfaction." Prospectus at 38; CAC ¶ 128. There is no dispute that, at the time of the IPO, RTR was "in the process of transitioning" from having the "substantial majority of its inbound shipments" returned through a "single vendor" to "multiple other vendors," Prospectus at 38; CAC ¶ 128, such as by diversifying beyond FedEx and UPS, *see* CAC ¶¶ 9, 91; Answer ¶¶ 9, 91; *see also supra* at 6-7.

The pleadings and shipping agreements likewise show that RTR could not "predict how [that vendor] transition may impact [RTR's] costs and customer sentiment and satisfaction," Prospectus at 38; CAC ¶ 128, including because: (i) the FedEx and UPS contracts ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████ (ii) they became effective in ████████

---

circuit that parties cannot amend their pleadings through issues raised solely in their briefs."), *aff'd*, 157 F. App'x 398 (2d Cir. 2005); *Henry v. Dow Jones*, 2009 WL 210680, at *4 n.5 (S.D.N.Y. Jan. 28, 2009) (declining to consider claims raised by plaintiff for first time in 12(c) opposition brief). This Court has rejected Plaintiffs' past attempts to raise new arguments in their briefing. *See* MTD Decision at n.14 ("the Court reviews the CAC only under the theories presented and alleged in the CAC"). In any event, as set forth below, the documents integral to Plaintiffs' purported claims show that the two sole remaining statements at issue were not false or misleading as to a material fact.

during the course of RTR's third quarter (August to October) of RTR's fiscal year 2021, *see* Ex. G at 1; Ex. H at 2; Ex. I at 2, after the results for the six months ended July 2021 were disclosed in the Offering Documents, which were filed before RTR's financial results for the third quarter were finalized; (iii) ███████████████████████████████████████████ ███ (including both through modifications to FedEx's and UPS's published base rates ████ ██████████████████████████████████████████████████ ██████), *see* Ex. F; Ex. B at 2; Ex. D at 2, and (iv) at the time of the IPO, RTR had been diversifying and was continuing to diversify to multiple additional vendors and taking other measures to address shipping costs (for example, expanding its network of options for customers to return clothing), *see* CAC ¶¶ 9, 91, 94, 95, 142; Answer ¶¶ 9, 91, 95; Prospectus at 38, 95, 168. The CAC provides no factual allegation to the contrary.

 *In the second challenged statement*, RTR noted that: "Our shipping vendors have faced and may continue to face increased volumes which, in turn, could cause a decrease in their service levels or result in an increase of their prices.  Increases in shipping costs or other significant shipping difficulties or disruptions or any failure by our brand partners or third-party carriers to deliver high-quality products to us or to our customers, as applicable, in a timely manner or to otherwise adequately serve our customers could damage our reputation and brand and may substantially harm our business."  Prospectus at 38; CAC ¶ 130.  The CAC provides no factual allegation that, at the time of the IPO (or, indeed, thereafter), shipping increases or other shipping issues had "damage[d] [RTR's] reputation and brand" or "substantially harm[ed] [RTR's] business."  CAC ¶ 130.  Further, as to both statements, a reasonable investor would not have been misled into believing that RTR was "completely disclaim[ing] any input price volatility at the time" of the IPO; rather a reasonable investor would have understood that "fluctuating input costs are a part of everyday life for

businesses." *Waswick v. Torrid Holdings, Inc.*, 2023 WL 9197563, at *7 (C.D. Cal. Dec. 1, 2023).[33]

RTR also noted that: "[O]ur business relies on the successful management of reverse logistics needed to ingest, clean, and restock returned items quickly and efficiently in order to offer them for rental or resale to other customers.  If we are not able to negotiate acceptable pricing and other terms with these vendors or they experience performance problems or other difficulties, our operating results and customers' experience could be negatively impacted."  Prospectus at 38; CAC ¶ 130.  The pleadings and shipping agreements show that, at the time of the IPO, (i) RTR had been able to negotiate pricing – which was *not* "double" the rates RTR previously had – and other terms with FedEx and UPS which were acceptable to RTR, and (ii) engaged in diversification efforts for shipping and other delivery methods.  *See supra* at 5-8.  Again, the CAC contains no factual, creditable allegations otherwise.

Accordingly, the CAC does not adequately allege a plausible claim that the two remaining challenged statements, concerning shipping costs, were materially false or misleading.

## CONCLUSION

For the above reasons, Defendants' motion for judgment on the pleadings should be granted.

---

[33] Indeed, the very first analyst reports issued following the IPO, in November 2021, took into account carrier rate increases, and analysts' forecasts for RTR's 3Q21 (the quarter during which the amended contracts went into effect) were in line with what RTR ultimately reported.  *See* n.6 *supra*; CAC ¶¶ 139-140.

Dated:    New York, New York
          November 23, 2025

Respectfully submitted,

**FRESHFIELDS US LLP**

/s/ *Agnès Dunogué*
Mary Eaton
Agnès Dunogué
Meredith Kotler
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
Telephone: (212) 277-4000
mary.eaton@freshfields.com
agnes.dunogue@freshfields.com
meredith.kotler@freshfields.com

*Counsel for Defendants Rent the Runway, Inc., Jennifer Y. Hyman, Scarlett O'Sullivan, Tim Bixby, Jennifer Fleiss, Scott Friend, Melanie Harris, Beth Kaplan, Dan Nova, Gwyneth Paltrow, Carley Roney, Dan Rosensweig, and Mike Roth*

**WILLKIE FARR & GALLAGHER LLP**

/s/ *Todd G. Cosenza*
Todd G. Cosenza
Charles D. Cording
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
tcosenza@willkie.com
ccording@willkie.com

*Counsel for Defendants Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Piper Sandler & Co., Wells Fargo Securities, LLC, JMP Securities LLC (n/k/a Citizens JMP Securities, LLC), KeyBanc Capital Markets Inc., and Telsey Advisory Group LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to this Court's Individual Practices and Rules, the above-named counsel hereby certifies that this memorandum complies with Section III.F, as it is limited to no more than 25 pages and meets all formatting requirements.

# Appendix to Memorandum of Law in Support of Defendants' Motion for Judgment on the Pleadings (Filed Under Seal)

### Comparison of  2020 and 2021 FedEx Agreements (Exs. B, H, I)[1]

#### Express

███████████████████

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| FedEx First Overnight Envelope – All Zones | | |
| FedEx First Overnight – All Zones | | |
| FedEx Priority Overnight Envelope – All Zones | | |
| FedEx Priority Overnight Pak – All Zones | | |
| FedEx Priority Overnight – All Zones | | |
| FedEx Standard Overnight Envelope – All Zones | | |
| FedEx Standard Overnight Pak – All Zones | | |
| FedEx Standard Overnight – All Zones | | |
| FedEx 2Day A.M. Envelope – All Zones | | |
| FedEx 2Day A.M. Pak – All Zones | | |
| FedEx 2Day A.M. – All Zones | | |
| FedEx 2Day Envelope – All Zones | | |
| FedEx 2Day Pak – Zones 2-3 | | |
| FedEx 2Day Pak – Zone 4 | | |
| FedEx 2Day Pak – Zone 5 | | |
| FedEx 2Day Pak – Zone 6 | | |
| FedEx 2Day Pak – Zone 7 | | |
| FedEx 2Day Pak – Zone 8 | | |
| FedEx 2Day Pak – Zones 9-16 | | |
| FedEx 2Day – Zones 2-3 | | |

---

[1] The ███████████ for Express and Ground, are taken directly from the 2020 and 2021 FedEx Agreements and presented in side-by-side table form for the Court's convenience.

Note that the April 2021 amendment to the FedEx 2020 Agreement (Ex. C) provided ██████ ████████████████████████████████████████████████████

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| FedEx 2Day – Zone 4 | | |
| FedEx 2Day – Zone 5 | | |
| FedEx 2Day – Zone 6 | | |
| FedEx 2Day – Zone 7 | | |
| FedEx 2Day – Zone 8 | | |
| FedEx 2Day – Zones 9-16 | | |
| FedEx Express Saver Envelope – All Zones | | |
| FedEx Express Saver Pak – All Zones | | |
| FedEx Express Saver – All Zones | | |
| FedEx 1Day Freight, FedEx 2Day Freight, FedEx 3Day Freight – All Zones | | |

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| FedEx Priority Overnight Envelope | | |
| FedEx Priority Overnight Pak | | |
| FedEx Priority Overnight | | |
| FedEx Standard Overnight Envelope | | |
| FedEx Standard Overnight Pak | | |
| FedEx Standard Overnight | | |
| FedEx 2Day Envelope | | |
| FedEx 2Day Pak | | |
| FedEx 2Day | | |
| FedEx Express Saver Envelope | | |
| FedEx Express Saver Pak | | |
| FedEx Express Saver | | |
| FedEx 1Day Freight | | |
| FedEx 2Day Freight | | |
| FedEx 3Day Freight | | |
| FedEx 2Day A.M. Envelope | | |
| FedEx 2Day A.M. Pak | | |
| FedEx 2Day A.M. | | |

[2] The                                                                      At the conclusion of the grace period, RTR's                                                  Ex. B at 7.

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
|  | ████████████████████████████ |  |

████████████████████████

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| FedEx First Overnight Envelope |  |  |
| FedEx First Overnight |  |  |
| FedEx Priority Overnight Envelope |  |  |
| FedEx Priority Overnight Pak |  |  |
| FedEx Priority Overnight |  |  |
| FedEx Standard Overnight Envelope |  |  |
| FedEx Standard Overnight Pak |  |  |
| FedEx Standard Overnight |  |  |
| FedEx 2Day A.M. Envelope |  |  |
| FedEx 2Day A.M. Pak |  |  |
| FedEx 2Day A.M. |  |  |
| FedEx 2Day Envelope |  |  |
| FedEx 2Day Pak |  |  |
| FedEx 2Day |  |  |
| FedEx Express Saver Envelope |  |  |
| FedEx Express Saver Pak |  |  |
| FedEx Express Saver |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 1Day Freight |  |  |
| FedEx 2Day Freight |  |  |
| FedEx 2Day Freight |  |  |
| FedEx 2Day Freight |  |  |
| FedEx 2Day Freight |  |  |
| FedEx 2Day Freight |  |  |
| FedEx 2Day Freight |  |  |
| FedEx 2Day Freight |  |  |
| FedEx 2Day Freight |  |  |

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| FedEx 2Day Freight | | |
| FedEx 2Day Freight | | |
| FedEx 2Day Freight | | |
| FedEx 3Day Freight | | |
| FedEx 3Day Freight | | |
| FedEx 3Day Freight | | |
| FedEx 3Day Freight | | |
| FedEx 3Day Freight | | |
| FedEx 3Day Freight | | |
| FedEx 3Day Freight | | |

**Ground (1.0 – 10.0 lb(s))**

█████████████████

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| Ground Domestic Single Piece (OB, IB, RB, 3P) – Zones 2-8 | ████ | ████ |
| Ground Domestic Single Piece RM (OB, 3P) – Zones 2 | | |
| Ground Domestic Single Piece RM (OB, 3P) – Zones 3 | | |
| Ground Domestic Single Piece RM (OB, 3P) – Zones 4 | | |
| Ground Domestic Single Piece RM (OB, 3P) – Zones 5-6 | | |
| Ground Domestic Single Piece RM (OB, 3P) – Zones 7 | | |
| Ground Domestic Single Piece RM (OB, 3P) – Zones 8 | | |
| Home Delivery Domestic Single Piece (OB, 3P) – Zones 2-8 | | |
| Ground Domestic Single Piece (OB, RB, 3P) – Zones 9, 17, 23, 25, 92, 96 | | |

███████████

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| Ground Domestic Single Piece (OB, IB, RB, 3P)  Home Delivery Domestic Single Piece (OB, 3P) | ████ | ████ |

███████████████████

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| Ground Domestic Single Piece (OB, 3P, RB) | ████ | ████ |

| Category | FedEx 2020 Agreement | FedEx 2021 Agreement |
|---|---|---|
| Ground Domestic Single Piece (OB, 3P, RB) | | |
| Ground Domestic Single Piece (OB, 3P, RB) | | |
| Ground Domestic Single Piece (OB, 3P, RB) | | |
| Ground Domestic Single Piece (IB) | | |
| Ground Domestic Single Piece (IB) | | |
| Ground Domestic Single Piece (IB) | | |
| Ground Domestic Single Piece (IB) | | |
| Ground Domestic Single Piece RM (OB) | | |
| Ground Domestic Single Piece RM (OB) | | |
| Ground Domestic Single Piece RM (OB) | | |
| Ground Domestic Single Piece RM (OB) | | |
| Ground Domestic Single Piece RM (OB) | | |
| Ground Domestic Single Piece RM (OB) | | |
| Ground Domestic Single Piece RM (OB) | | |
| Ground Domestic Single Piece RM (3P) | | |
| Ground Domestic Single Piece RM (3P) | | |
| Ground Domestic Single Piece RM (3P) | | |
| Ground Domestic Single Piece RM (3P) | | |
| Ground Domestic Single Piece RM (3P) | | |
| Ground Domestic Single Piece RM (3P) | | |
| Ground Domestic Single Piece RM (3P) | | |
| Home Delivery Domestic Single Piece (OB, 3P) | | |