**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJAT SHARMA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RENT THE RUNWAY, INC., JENNIFER Y. HYMAN, SCARLETT O'SULLIVAN, TIM BIXBY, JENNIFER FLEISS, SCOTT FRIEND, MELANIE HARRIS, BETH KAPLAN, DAN NOVA, GWYNETH PALTROW, CARLEY RONEY, DAN ROSENSWEIG, MIKE ROTH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., and TELSEY ADVISORY GROUP LLC,<br><br>Defendants, | Case No. 22-cv-06935-OEM-SDE |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW**
**IN OPPOSITION TO DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................................... ii

I.    PRELIMINARY STATEMENT ................................................................................... 1

II.   BACKGROUND FACTS: PLAINTIFFS' CLAIMS AS TO RTR'S SHIPPING
      COSTS HAVE BEEN UPHELD TWICE .................................................................... 2

III.  DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE
      DENIED ........................................................................................................................ 5

      A.    Legal Standard for Judgment on the Pleadings ................................................. 5

      B.    Defendants' Shipping Agreements Are Not Integral to the Complaint and
            Should Not be Relied Upon ............................................................................... 7

            1.    Plaintiffs Did Not Have Actual Notice of the Information in RTR's
                  Shipping Agreements ............................................................................ 9

            2.    Plaintiffs Did Not Heavily Rely on RTR's Shipping Agreements in
                  Drafting Their Complaint ................................................................... 10

      C.    RTR's Shipping Agreements Should Not be Relied Upon for the Truth of the
            Matters Asserted .............................................................................................. 11

      D.    The Motion is Inappropriate Because It Does Not Advance New Arguments ..... 13

      E.    Plaintiffs' Allegations Are Sufficient to Demonstrate that Defendants Made
            Material Misstatements and Omissions in the Offering Documents .................... 14

            1.    Plaintiffs' Shipping Costs and Carrier Transition Allegations Were
                  Sufficiently Pled Under Rule 8 .......................................................... 15

            2.    Plaintiffs' UPS Cost Prohibitive Pricing Allegation Was Also
                  Sufficiently Pled Under Rule 8 .......................................................... 20

IV.   IN THE ALTERNATIVE, AMENDMENT WOULD CURE ANY PERCEIVED
      DEFICIENCIES .......................................................................................................... 22

V.    CONCLUSION ............................................................................................................ 23

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012).................................................................................2, 15, 16, 18

*Arista Recs., LLC v. Doe 3*,
  604 F.3d 110 (2d Cir. 2010)........................................................................................1, 15, 18

*B&R Supermarket v. Visa, Inc.*,
  2018 WL 4921661 (E.D.N.Y. July 20, 2018), *report and recommendation
  adopted sub nom.*, 2018 WL 4445150 (E.D.N.Y. Sept. 18, 2018) .............................................6

*Bank of N.Y. v. First Millennium, Inc.*,
  607 F.3d 905 (2d Cir. 2010)........................................................................................1, 3, 13, 15

*Bensch v. Est. of Umar*,
  2 F.4th 70 (2d Cir. 2021) ...........................................................................................................19

*Boykin v. KeyCorp*,
  521 F.3d 202 (2d Cir. 2008)...........................................................................................18, 19, 20

*Chambers v. Time Warner, Inc.*,
  282 F.3d 147 (2d Cir. 2002)..........................................................................................................7

*Feltzin v. Stone Equities, LLC*,
  2018 WL 1115135 (E.D.N.Y. Feb. 8, 2018)................................................................................12

*Foman v. Davis*,
  371 U.S. 178 (1962)....................................................................................................................23

*Garcia v. City of Mount Vernon*,
  2009 WL 10739938 (S.D.N.Y. May 7, 2009) .......................................................................7, 8, 11

*Hayden v. Paterson*,
  594 F.3d 150 (2d Cir. 2010).........................................................................................................12

*Iacobi v. Felix*,
  2022 WL 21781617 (E.D.N.Y. Sept. 9, 2022) ...............................................................................6

*Johnson v. City of N.Y.*,
  2018 WL 1597393 (E.D.N.Y. Mar. 31, 2018)..............................................................................18

*Krausz v. Equifax Info. Servs., LLC*,
  2023 WL 1993886 (S.D.N.Y. Feb. 4, 2023).................................................................................8

*Liang v. City of N.Y.*,
    2013 WL 5366394 (E.D.N.Y. Sept. 24, 2013), *aff'd sub nom,* 764 F. App'x
    103 (2d Cir. 2019)......................................................................................................11, 12

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
    6 F.4th 293 (2d Cir. 2021) ........................................................................ *passim*

*Mack v. Morse*,
    2021 WL 1146125 (N.D.N.Y. Mar. 25, 2021) .............................................................8, 9, 10

*Martine's Serv. Ctr., Inc. v. Town of Wallkill*,
    554 F. App'x 32 (2d Cir. 2014) ........................................................................................5

*McBeth v. Gabrielli Truck Sales, Ltd.*,
    731 F.Supp. 2d 316 (E.D.N.Y. 2010) ...............................................................................23

*McLennon v. City of N.Y.*,
    171 F. Supp. 3d 69 (E.D.N.Y. 2016) ........................................................... *passim*

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
    709 F.3d 109 (2d Cir. 2013)...........................................................................................14

*Perdum v. Forest City Ratner Cos.*,
    2014 WL 12829216 (E.D.N.Y. May 30, 2014) ..................................................................6

*Rivera v. Schweiker*,
    717 F.2d 719 (2d Cir. 1983)............................................................................................6

*Roberts v. Babkiewicz*,
    582 F.3d 418 (2d Cir. 2009)..........................................................................................11

*Roth v. Jennings*,
    489 F.3d 499 (2d Cir. 2007)..........................................................................................11

*Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*,
    748 F.2d 774 (2d Cir. 1984),..........................................................................................23

*Samsung C&T Am., Inc. v. Tommy Bahama Grp., Inc.*,
    2022 WL 624555 (S.D.N.Y. Mar. 3, 2022) ..................................................................8, 10

*Scott v. Gen. Motors Co.*,
    46 F. Supp. 3d 387 (S.D.N.Y. 2014), *aff'd,* 605 F. App'x 52 (2d Cir. 2015)........................14

*Staveley v. St. Charles Hosp.*,
    173 F.R.D. 49 (E.D.N.Y. 1997)....................................................................................5, 6, 7

*In re Tops Holding II Corp.*,
    646 B.R. 617 (S.D.N.Y. 2022)...............................................................................15, 16, 18

iii

*Walker v. Sankhi*,
    494 F. App'x 140 (2d Cir. 2012)........................................................................................5

*Weiner v. Clark*,
    2023 WL 5002617 (E.D.N.Y. Aug. 4, 2023)...................................................................6

*Williams v. City of N.Y.*,
    2015 WL 4461716 (S.D.N.Y. July 21, 2015) ..................................................................8

**Rules**

Federal Rule of Civil Procedure 8 ........................................................................... *passim*

Lead Plaintiffs, Delaware Public Employees' Retirement System and Denver Employees Retirement Plan ("Plaintiffs"), respectfully submit this memorandum of law in opposition to Defendants' Motion for Judgment on the Pleadings (the "Motion" or "Mot. Br.").

## I.    PRELIMINARY STATEMENT

Rent the Runway ("RTR" or the "Company"), the Individual Defendants, and the Underwriter Defendants (collectively, "Defendants") attempt for a third time to dismiss Plaintiffs' core allegations from the Corrected Amended Class Action Complaint (ECF No. 61) (the "Complaint" or "Compl.").[1] Once again, these arguments fail.

The Court, in its Motion to Dismiss Order (ECF No. 77) ("MTD Order") and its Motion for Reconsideration Order (ECF No. 100) ("Reconsideration Order"), has twice acknowledged the deficiencies in Defendants' repeated arguments and upheld Plaintiffs' shipping costs allegations as plausibly pled within the requirements of Federal Rules of Civil Procedure Rule 8 ("Rule 8"). *See* MTD Order at 34–36; Reconsideration Order at 7–11. Defendants now attempt to resurrect their defeated arguments by attaching *some* of RTR's UPS and FedEx shipping agreements to their Motion, claiming that they are integral to the Complaint and dispositive of whether Plaintiffs have offered plausible shipping costs allegations. *See* Mot. Br. at 10–19. This third attempt to dismiss the Complaint fails both procedurally and factually.

***First***, the shipping agreements should not be considered, as they are not integral to the Complaint. Plaintiffs never maintained actual notice of, or heavily relied on, the express terms of RTR's shipping agreements in drafting the Complaint. Plaintiffs pled that the FedEx shipping

---

[1] Citations to "¶" or "¶¶" are to paragraphs in Plaintiffs' Corrected Amended Class Action Complaint for Violations of the Federal Securities Law, dated September 5, 2023 (ECF No. 61). Unless otherwise noted, emphasis is added and internal citations and quotation marks are omitted throughout, and all capitalized and defined terms used herein have the meaning ascribed in the Complaint.

costs, carrier transition, and UPS cost prohibitive pricing allegations "upon information and belief" drawn from Lead Counsel's investigation, *see Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), and with enough factual information for Plaintiffs to provide a viable basis for Defendants' Securities Act violations, *see Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012).

***Second***, even if the Court were to consider the shipping agreements "integral," and despite not having an opportunity to take discovery on various gaps in Defendants' unilateral evidentiary record, Plaintiffs can plausibly demonstrate that ███████████████████ that RTR was subject to undisclosed materially increased shipping costs from FedEx and prohibitively expensive costs from UPS at the time of the IPO, *i.e.*, exactly as the Complaint alleges. Under Rule 8, Plaintiffs' allegations, in their current state, are sufficient to overcome the Motion. In fact, the Motion has backfired on Defendants because it provides evidentiary support for Plaintiffs' claims despite not providing all the potentially relevant materials necessary to fully adjudicate the matter. In other words, Plaintiffs are in a better position now than they were prior to the filing of the Motion.

Accordingly, the Motion should be denied, and this case should finally move forward to its merits after more than three years in the pleadings stage.

## II.   BACKGROUND FACTS: PLAINTIFFS' CLAIMS AS TO RTR'S SHIPPING COSTS HAVE BEEN UPHELD TWICE

Plaintiffs' case is primarily based on two false and misleading statements and related omissions—statements that have twice been upheld by the Court:

(a) ***A substantial majority of our inbound shipments from customers are currently returned through a single vendor—we have from time to time transitioned, and are currently in the process of transitioning, inbound shipments from this vendor to multiple other vendors, and we cannot predict how this transition may impact our costs and our customer sentiment and satisfaction***; and

2

(b) ***Shipping and logistics are a critical part of our business and our supply chain and any changes or interruptions in shipping or logistics operations could adversely affect our operating results….[O]ur business relies on the successful management of reverse logistics needed to ingest***, clean, and restock returned items quickly and efficiently in order to offer them for rental or resale to other customers. ***If we are not able to negotiate acceptable pricing and other terms with these vendors or they experience performance problems or other difficulties, our operating results and customers' experience could be negatively impacted….Increases in shipping costs*** or other significant shipping difficulties or disruptions or any failure by our brand partners or third-party carriers to deliver high-quality products to us or to our customers, as applicable, in a timely manner or to otherwise adequately serve our customers ***could damage our reputation and brand and may substantially harm our business***.

Compl. at ¶¶ 128, 130. As previously alleged, these statements were false and misleading when made because they failed to disclose the materially adverse reasons for the carrier transition and its resulting adverse effects on the business. *See id.* at ¶¶ 129, 131. Contrary to the hypothetical statements, RTR knew at the time of the IPO that carrier pricing and shipping costs were already harming the Company, since RTR was forced to switch back to cost prohibitive UPS after FedEx materially increased RTR's shipping costs. *See id.* at ¶¶ 89–93. RTR's post-IPO admissions substantiated the false and misleading nature of the Company's shipping costs by conceding that ballooning transportation and shipping costs jeopardized the Company. *See id.* at ¶¶ 139–140, 142–43, 145, 149, 153. As a result, RTR was ultimately forced to announce a restructuring plan that saw the company "reduce [its] corporate headcount by about 24%." *Id.* at ¶ 154.

The Court has already sustained Plaintiffs' shipping costs allegations on two occasions. ***First***, the Court denied Defendants' Motion to Dismiss (ECF No. 70) ("MTD"). *See* MTD Order at 36. In the MTD Order, the Court underscored that "the failure to disclose the doubling in FedEx's shipping prices, which then precipitated a switch back to UPS, is plausibly material to any potential investor such that it was required to be disclosed." *Id.* at 34. Furthermore, the Court

3

found "[t]hat this doubling of shipping rates occurred prior to the IPO Roadshow and the issuance of the Offering Documents, but was not disclosed, is the nail in the coffin." *Id.* at 35.

**Second**, in ruling on Defendants' Motion for Reconsideration (ECF No. 83), the Court once found that "reconsideration of the Order's holding with respect to RTR's statements regarding shipping costs is not warranted." Reconsideration Order at 7. The Court determined that "[d]rawing all inferences in Plaintiffs' favor as the non-moving party, Plaintiffs have sufficiently pleaded factual matter that give rise to the plausible inference that it stated claims on which relief can be granted." *Id.* Moreover, the Court found that "news of the uptick in shipping prices prior the [RTR] IPO" and "the Order's reliance on and the reasonable inferences drawn from FE-4's factual allegations" were nonissues. *See id.* at 8–10. Finally, the Court emphasized that "once RTR chose to speak by providing a reason for the increase in shipping costs, it assumed a duty to be both accurate and complete." *Id.* at 10. Thus, once Defendants disclosed that RTR was "in the process of transitioning" from one shipping vendor to another, it was required to disclose the materially adverse reasons for that transition. Similarly, once Defendants chose to speak about the ability to "negotiate acceptable pricing" for shipping on hypothetical "[i]ncreases in shipping costs," Defendants were required to disclose RTR's failure to negotiate acceptable pricing and the increases in shipping costs the Company faced at the time of the IPO.

Nevertheless, Defendants have now moved a third time to dismiss these claims. The Motion relies heavily on the shipping agreements attached to RTR's Answer (ECF No. 61), self-servingly claiming that these agreements are the entire universe of facts necessary to resolve this dispute. Mot. Br. at 2. Not only are these agreements not integral to the Complaint, but they do not address outstanding issues—primarily, the materiality of shipping cost changes occurring at the time of the IPO on RTR's businesses. These are issues that require discovery to resolve. Magistrate

4

Judge Eichenholtz has already acknowledged the need for discovery and ordered discovery to proceed in part. In his Order, he noted that "[a] stay under the PSLRA would not serve its statutory purpose to prevent burdensome discovery in meritless litigation, as the legal sufficiency of Plaintiffs' Complaint has already been tested by adjudication of the motion to dismiss and subsequent motion for reconsideration." Order at 4 (ECF No. 127) ("PSLRA Discovery Order"). In particular, the PSLRA Discovery Order has ordered discovery into many of the shipping contracts and related communications Defendants ***have not*** attached to their Answers or Motion. *Id.* at 5.

Magistrate Judge Eichenholtz also questioned the sufficiency of the Motion in stating that "Defendants have not shown that their 12(c) motion advances new arguments that could not have been made in their prior motion." *Id.* The Court should do the same.

## III.    DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS SHOULD BE DENIED

### A.    Legal Standard for Judgment on the Pleadings

A motion for "judgment on the pleadings is appropriate where material facts are undisputed and a judgment on the merits is possible merely by considering the contents of the pleadings." *Staveley v. St. Charles Hosp.*, 173 F.R.D. 49, 50 (E.D.N.Y. 1997). Since Rule 12(c) motions are held to the same standard as motions to dismiss, "a court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the non-movant." *Walker v. Sankhi*, 494 F. App'x 140, 142 (2d Cir. 2012).

A court must assess a plaintiff's complaint using a plausibility standard: "the complaint 'must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Walker*, 494 F. App'x at 142 (quoting *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010)). A plaintiff's complaint satisfies this plausibility standard when the

plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Martine's Serv. Ctr., Inc. v. Town of Wallkill*, 554 F. App'x 32, 34 (2d Cir. 2014). A court, in reviewing a complaint on a Rule 12(c) motion, must only "assess the legal feasibility of the complaint" and not "assess the weight of the evidence that might be offered on either side." *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 304 (2d Cir. 2021). Furthermore, "[u]nless it appears ***beyond doubt*** that the plaintiff can prove no set of facts in support of his or her claim which would entitle the plaintiff to relief, the court cannot grant a defendant's motion for judgment on the pleadings." *Staveley*, 173 F.R.D. at 51.

A Rule 12(c) motion is only appropriate as "a means of disposing of cases when the material facts are not in dispute." *Rivera v. Schweiker*, 717 F.2d 719, 722 n.1 (2d Cir. 1983). "A Rule 12(c) motion will not be granted ***unless the movant clearly establishes that no material issue of fact remains to be resolved*** and that he is entitled to judgment as a matter of law." *Id.*; *see also Perdum v. Forest City Ratner Cos.*, 2014 WL 12829216, at *3–4 (E.D.N.Y. May 30, 2014). Where "there are issues of fact which if proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial," a Rule 12(c) motion is inappropriate. *Lively*, 6 F.4th at 301 (quoting *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019)); *see also Weiner v. Clark*, 2023 WL 5002617, at *2 (E.D.N.Y. Aug. 4, 2023); *Iacobi v. Felix*, 2022 WL 21781617, at *2 (E.D.N.Y. Sept. 9, 2022) (holding that it is improper for a court to "weigh disputed factual allegations"). A Rule 12(c) motion is also inappropriate where the movant relies on the exact same arguments furnished for their Rule 12(b)(6) motion to dismiss. *See B&R Supermarket v. Visa, Inc.*, 2018 WL 4921661, at *3 (E.D.N.Y. July 20, 2018), *report and recommendation adopted sub nom.*, 2018 WL 4445150 (E.D.N.Y. Sept. 18, 2018).

6

**B.**    **Defendants' Shipping Agreements Are Not Integral to the Complaint and Should Not be Relied Upon**

As an initial matter, Defendants cannot rely on the shipping agreements attached to RTR's Answer and the Motion to dismiss the Complaint. On a Rule 12(c) motion, a court may only "consider extrinsic material that the complaint 'incorporate[s] by reference,' that is 'integral' to the complaint, or of which courts can take judicial notice." *Lively*, 6 F.4th at 305. "And where a court does draw from such extrinsic material, it must construe all reasonable inferences in the non-movant's favor." *Id.* at 305–06. If the extrinsic material offered is alleged to be "integral" to the complaint, the movant maintains the burden of demonstrating that "the complaint relies ***heavily*** upon [the material's] terms and effect." *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis added); *see also Lively*, 6 F.4th at 305 (finding that documents provided on Rule 12(c) motion "were neither incorporated by reference in nor integral to the complaint"); *Garcia v. City of Mount Vernon*, 2009 WL 10739938, at *3 (S.D.N.Y. May 7, 2009) (holding that deposition transcript was not relied upon in drafting complaint and thus not integral). Otherwise, the court must convert the movant's Rule 12(c) motion into a motion for summary judgment. *See, e.g.*, *Lively*, 6 F.4th at 306; *Staveley*, 173 F.R.D. at 51; *Pizza*, 723 F. Supp. 3d at 311.

The Court should not decide the Motion in Defendants' favor based on the shipping agreements because they are not integral to the Complaint. For extrinsic material to be integral to a complaint, it must have been heavily relied upon; specifically, the "terms and effect of [the] document." *See Chambers*, 282 F.3d at 153. "A document is integral to the complaint where the plaintiff (1) has 'actual notice' of the document and its information and (2) has relied upon the[ ] documents in framing the complaint." *McLennon v. City of N.Y.*, 171 F. Supp. 3d 69, 89 (E.D.N.Y. 2016). Actual notice of a document and its information is required because "the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the

7

material may be considered." *Chambers*, 282 F.3d at 153 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

"[A] document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing his complaint." *Williams v. City of N.Y.*, 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015). Where there is no indication of reliance, a Court cannot find that a plaintiff heavily relied on extrinsic material, even if the extrinsic material and complaint share factual similarities. *See Garcia*, 2009 WL 10739938, at *3; *see also Lively*, 6 F.4th at 305. Furthermore, a plaintiff's reference to the extrinsic material is not heavy reliance. *See Samsung C&T Am., Inc. v. Tommy Bahama Grp., Inc.*, 2022 WL 624555, at *7 (S.D.N.Y. Mar. 3, 2022); *Mack v. Morse*, 2021 WL 1146125, at *4 (N.D.N.Y. Mar. 25, 2021) (citing *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989)). Even a plaintiff's "notice or possession [of the extrinsic material] is not enough." *Krausz v. Equifax Info. Servs., LLC*, 2023 WL 1993886, at *2 (S.D.N.Y. Feb. 4, 2023).

RTR' shipping agreements are not integral to the Complaint because Plaintiffs did not have actual notice of the information in the UPS, FedEx, or other carrier shipping agreements and had no access to any of the shipping agreements with UPS, FedEx, or other carriers. At the time of drafting, Plaintiffs could only rely on knowledge available to the public or provided through Lead Counsel's investigation. Thus, while RTR's shipping agreements are germane to the Complaint, their relevance or reference do not make them integral, nor does it permit Defendants to attach the agreements to the Motion or Answer. Thus, the Court should decline to assess the agreements when deciding the Motion. *See McLennon*, 171 F. Supp. 3d at 89.

8

### 1.    Plaintiffs Did Not Have Actual Notice of the Information in RTR's Shipping Agreements

For Plaintiffs to acquire actual notice of RTR's shipping agreements, they must have had both knowledge of the agreements and the information establishing those agreements. *See McLennon*, 171 F. Supp. 3d at 89. Although FE-1's and FE-4's statements informed Plaintiffs about the existence of RTR's shipping agreements with UPS and FedEx and the materially adverse impact they had on shipping costs, *see* Compl. at ¶¶ 89–93, neither FE-1, FE-4, nor Lead Counsel's investigation furnished Plaintiffs with the terms or contents of the agreements, which Defendants continue to file under seal. Plaintiffs' lack of knowledge regarding the terms and contents of RTR's shipping agreements is evident from the Complaint, which acknowledged RTR's shipping agreements but did not identify any particular figures within the agreements to establish the allegations. *See* Compl. at ¶¶ 89–93; *see also, e.g.*, *Mack*, 2021 WL 1146125, at *4. Since Plaintiffs were without the terms and contents of RTR's shipping agreements in drafting the Complaint, Plaintiffs had no actual notice of the agreements. *See McLennon*, 171 F. Supp. 3d at 89.

The absence of actual notice remains true even after Defendants' disclosure of RTR's shipping agreements under seal. Defendants claim that they have provided the Court with the entirety of RTR's shipping agreements relevant to the Complaint. *See* Mot. Br. at 10–12. However,



*See* Motion Exhibit ("Ex.") A ( ) Defendants' assurance that the attached agreements represented all "integral" agreements is therefore incorrect.

9

Furthermore, Defendants conceded that they were in the process of "diversifying [RTR's] carrier network beyond FedEx and UPS," but chose not to disclose any of the shipping agreements with those other carriers. *See* Mot. Br. at 6. Indeed, recognizing the importance of these agreements with other carriers, Magistrate Judge Eichenholtz has recently ordered their production and related information. *See* PSLRA Discovery Order at 5. Defendants' failure to produce ████████ ████████ and other carrier shipping agreements, along with related discovery, prevents Plaintiffs from acquiring actual notice of the information in ***all*** RTR shipping agreements necessary to rebut the Complaint's allegations on the merits. *See McLennon*, 171 F. Supp. 3d at 89.

### 2.    Plaintiffs Did Not Heavily Rely on RTR's Shipping Agreements in Drafting Their Complaint

Plaintiffs did not heavily rely on RTR's shipping agreements in drafting the Complaint. Plaintiffs' relied, in part, on FE testimony that "FedEx had doubled the Company's shipping rates" and "[d]ue to significant cost increases after the first year of contracting with FedEx, as well as reliability issues, Rent the Runway was forced to switch back to using the prohibitively expensive UPS for shipping" to allege that, at the time of the IPO, the Company was transitioning shipping carriers for material adverse reasons and was experiencing materially adverse shipping price increases, contrary to the Offering Materials' statements. Compl. at ¶¶ 92–93. Plaintiffs' allegations do not contain any precise terms or figures that constituted the exact rates and discounts of RTR's shipping agreements. *See id.* Nowhere in the Complaint do Plaintiffs detail the specific "terms or effect" of RTR's shipping agreements, since these details were unknown to Plaintiffs. *See Mack*, 2021 WL 1146125, at *5; *Tommy Bahama*, 2022 WL 624555, at *7. Nor were Plaintiffs required to do so under Rule 8 and pre-discovery. In sum, Plaintiffs' "cursory reference[s]" to the shipping agreements are insufficient grounds for Defendants to attach the agreements and argue

10

that they are integral. *See Mack*, 2021 WL 1146125, at \*4 (rejecting defendants' attachment of documents when plaintiff's complaint "contain[ed] a cursory reference to a police investigation" but did not "even allude to the existence of any of the documents [d]efendants s[ought] to introduce, let alone mention their contents"); *Tommy Bahama*, 2022 WL 624555, at \*7 (holding that reference to a termination notice likely did not render termination notice integral where termination notice was not clearly shown to have been heavily relied upon in counterclaims).

Comparisons between the Complaint and RTR's shipping agreements further corroborate that Plaintiffs did not heavily rely on those agreements' terms or effect, as apart from Plaintiffs' allegation that FedEx decreased RTR's discounts, effectively increasing RTR's shipping costs, and that RTR switched to cost prohibitive UPS, there are no other direct facts taken from the agreements.[2] *See Garcia*, 2009 WL 10739938, at \*3. RTR's shipping agreements, consequently, were not heavily relied upon by Plaintiffs in drafting the Complaint, deeming the agreements not integral. *See McLennon*, 171 F. Supp. 3d at 89.

###    C.    RTR's Shipping Agreements Should Not be Relied Upon for the Truth of the Matters Asserted

If the Court were to consider the RTR's shipping agreements, the Court should not rely upon the agreements for the truth of the matters asserted. In adjudicating a Rule 12(c) motion, a court may rely on extrinsic material for which "courts can take judicial notice." *See Lively*, 6 F.4th at 305. Courts are deemed able to take judicial notice of extrinsic materials that form "the factual background of the case," *Roberts v. Babkiewicz*, 582 F.3d 418, 419 (2d Cir. 2009), but "only to

_____

[2] ████████████████████████████████████████████

establish their existence and legal effect, or to determine what statements [they] contained…***not for the truth of the matters asserted***." *Liang v. City of N.Y.*, 2013 WL 5366394, at \*5 (E.D.N.Y. Sept. 24, 2013), *aff'd sub nom., Liang v. Zee,* 764 F. App'x 103 (2d Cir. 2019) (alterations in original) (emphasis added); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (alteration and emphasis in original) ("If the court takes judicial notice, it does so in order to determine *what* statements [they] contained—but *again not for the truth of the matters asserted*."). Furthermore, the court must continue to "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiffs'] favor." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (alteration in original).

Accepting RTR's shipping agreements for the truth of the matters asserted would violate Plaintiffs' rights as non-movants. Treating the RTR shipping agreements' terms and contents as true would contravene the requirement to regard all factual allegations in the Complaint as true. *See Hayden*, 594 F.3d at 160; *see also Lively*, 6 F.4th at 305 (holding that district court erred to the extent that it accepted allegations in exhibit to be true); *Feltzin v. Stone Equities, LLC*, 2018 WL 1115135, at \*12 (E.D.N.Y. Feb. 8, 2018) (finding that court could "not take judicial notice of a document for the truth of the matters asserted in another litigation" since court was "bound to accept as true all well-pleaded allegations in Plaintiff's Complaint…."), *report and recommendation adopted,* 2018 WL 1114682 (E.D.N.Y. Feb. 26, 2018). Moreover, accepting RTR's shipping agreements for the truth of the matters asserted would breach the Court's obligation to limit its review of judicially noticed materials to "their existence and legal effect" and the "statements [they] contained." *See Liang*, 2013 WL 5366394, at \*5 (holding that court could consider complaint reports and arrest reports for defendant's motion but could not accept the reports for truth of the matters asserted). If the Court were to accept the terms and contents of

12

RTR's shipping agreements as true, Plaintiffs would be prejudiced, especially since very little discovery has occurred to allow Plaintiffs to offer documents in rebuttal that would undermine RTR Defendants' claims.

**D.        The Motion is Inappropriate Because It Does Not Advance New Arguments**

The Motion is inappropriate and should be denied because issues of fact remain and Defendants have offered no new, distinct arguments separate from their MTD and Motion for Reconsideration. Multiple factual issues remain in dispute and prevent judgment as a matter of law, despite Defendants' contentions that there are no unresolved issues of material fact. *See* Mot. Br. at 14–19. Plaintiffs' remaining shipping costs allegations present many material issues of fact, including: (1) whether FedEx attempted to and did materially increase RTR's shipping rates in ███████████████████████████████████████ (2) whether the transition in shipping carriers was caused by and resulted in undisclosed material shipping cost increases; and (3) whether RTR's shipping agreements with UPS resulted in material cost increases.

***First***, although Defendants provided Plaintiffs with their UPS and FedEx shipping agreements, the agreements are not dispositive of whether rates materially increased. Defendants fixate on the "doubling" language provided by FE-4 and claim that the entirety of Plaintiff's argument rests on the fact that rates doubled. *See id.* at 14–18. Not so. The question raised in this litigation is whether the increase in shipping cost and reasons for and effect of the carrier transition were material and required further disclosure in the Offering Documents when Defendants chose to speak about shipping costs and the transition. ████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ████████████████ *See infra* Section E.1. Therefore, a dispute as to a material issue of fact remains and requires Plaintiffs to be granted access to further discovery before resolution.

13

*Second*, RTR's shipping agreements are not dispositive of whether RTR was forced to suddenly switch to other carriers.

*See* Mot. Br. at 19. However, Defendants selectively disclosed RTR's shipping agreements without also producing documents and communications that supplemented those agreements.

*See* Ex. C

; Ex. D (). Judge Eichenholtz, in his order lifting the PSLRA stay of discovery, noted that additional discovery is needed to fully assess this factual issue, *see* PSLRA Discovery Order at 4–5, and the Court should find the same, *see Lively*, 6 F.4th at 304.

*Third*, the disclosed RTR shipping agreements do not settle whether UPS's shipping rates caused a material increase in shipping rates.

*See* Ex. A (

, there remains an additional question of material fact regarding UPS's pricing that the Court cannot decide on a motion for judgment on the pleadings. *See Lively*, 6 F.4th at 304.

**E.    Plaintiffs' Allegations Are Sufficient to Demonstrate that Defendants Made Material Misstatements and Omissions in the Offering Documents**

Under Rule 8's plausibility pleading standard, a plaintiff need only "plausibly allege that [the registrant] omitted material information that it was required to disclose or made material misstatements in its offering documents, [to] meet the relatively minimal burden of stating a claim…, under which, should plaintiffs' claims be substantiated, [a defendant's] liability as an

14

issuer is absolute." *Scott v. Gen. Motors Co.*, 46 F. Supp. 3d 387, 397 (S.D.N.Y. 2014), *aff'd,* 605 F. App'x 52 (2d Cir. 2015) (quoting *Litwin v. Blackstone Grp., L.P.,* 634 F.3d 706, 718 (2d Cir. 2011)); *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) ("Because claims under §§ 11 & 12(a)(2) of the [Securities] Act need not include allegations of fraud, this is an ordinary notice pleading case, subject only to the short and plain statement requirements of Federal Rule of Civil Procedure 8(a)."). More specifically, "while a plaintiff need not prove its factual allegations … to unlock the door to discovery and continued litigation, the complaint's allegations must at least raise a reasonable expectation that discovery will reveal liability, including in the inferences that it asks the court to make." *In re Tops Holding II Corp.*, 646 B.R. 617, 646 (S.D.N.Y. 2022).

In the Motion, Defendants hold Plaintiffs to a standard above and beyond Rule 8. *See* Mot. Br. at 14–19. Defendants argue that, because Plaintiffs failed to prove the exact allegations of the Complaint and because all the rates did not ***exactly*** double, Plaintiffs' claims must be dismissed. *See id.* at 14–15, 18–19; Compl. at ¶¶ 91–94. This is far beyond what Plaintiffs were obligated to plead. For strict liability Securities Act claims, Plaintiffs need only plead a plausible interpretation of the circumstances and "facts alleged upon information and belief." *See Anderson*, 680 F.3d at 184; *Arista*, 604 F.3d at 120. For the reasons that follow, Plaintiffs have sufficiently done so.

### 1. Plaintiffs' Shipping Costs and Carrier Transition Allegations Were Sufficiently Pled Under Rule 8

Plaintiffs' shipping costs and UPS switch allegations are predicated, in part, on the statements of FE-4, who recalled that "FedEx had doubled the Company's shipping rates…which caused 'panic' for 30 days until the Company switched to UPS." Compl. at ¶ 93. ██████

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ *See*

15

Mot. Br. at 14–19. But these arguments hyperbolize Plaintiffs' pleading requirements under Rule 8.

*First*, courts have underscored that "because plausibility is a standard lower than probability, a given set of actions may well be ***subject to diverging interpretations***, each of which is plausible." *Anderson*, 680 F.3d at 184 (emphasis added). When a court is presented with "diverging interpretations" of a complaint's allegations, the court is not permitted to weigh those interpretations, as "[t]he choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court." *Id.* at 184–85; *In re Tops*, 646 B.R. at 646–47. "'[F]act-specific question[s] cannot be resolved on the pleadings.'" *Anderson*, 680 F.3d at 185 (quoting *Todd v. Exxon Corp.*, 275 F.3d 191, 203 (2d Cir. 2001)). Accordingly, a court is prohibited from rejecting a plaintiff's "complaint that states a plausible version of the events merely because the court finds a different version more plausible. Instead, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *In re Tops*, 646 B.R. at 647.

Plaintiffs adequately presented a plausible allegation, based not only upon FE-4's recollections but also RTR's post-IPO admissions, that RTR's shipping costs did significantly increase, ███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████

Notably, ██████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████



17

Finally,  it is highly likely that there are numerous documents and communications relating to negotiations between FedEx and RTR that will further support Plaintiffs' claims. The likelihood of undisclosed FedEx-RTR documents and communications further corroborates that Plaintiffs pled plausible allegations that the Court must avoid weighing against Defendants' interpretations. *See Anderson*, 680 F.3d at 185; *In re Tops*, 646 B.R. at 646–47.

**Second**, courts interpreting Rule 8's plausibility requirement have stated that a plaintiff may "plead[] facts alleged ***upon information and belief*** where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista*, 604 F.3d at 120 (internal citations omitted) (emphasis added); *see also Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008); *Johnson v. City of N.Y.*, 2018 WL 1597393, at *8 (E.D.N.Y. Mar. 31, 2018). Courts have "explicitly disavow[ed]

18

that Rule 8(a) requires any plaintiff…to plead 'specific facts'" when the facts are within the defendant's control or are based on facts that make culpability plausible. *Boykin*, 521 F.3d at 215. Instead, a plaintiff's complaint is adequate if it "contain[s] sufficient factual allegations to nudge [their] claims across the line from conceivable to plausible." *Bensch v. Est. of Umar*, 2 F.4th 70, 80 (2d Cir. 2021) (internal citations omitted).

Plaintiffs have offered facts "upon information and belief," predicated on FE-4's recollections and RTR's post-IPO admissions, that present plausible allegations of undisclosed material rising shipping rates and undisclosed adverse facts concerning the carrier transition, and do not bind Plaintiffs to proving that RTR's shipping costs "doubled." Defendants were, and still currently are, the only party that have access to the totality of RTR's documents and communications with FedEx, and other general documents and communications that may disclose negotiations between FedEx and RTR about increasing rates ███████████████ ████████████████████████████ Since Defendants are in sole "possession and control" of the pertinent documents and communications, Plaintiffs are permitted to rely on FE-4's statements, RTR's admissions, and Lead Counsel's pre-discovery investigation to substantiate the FedEx shipping costs and UPS switch allegations. *See, e.g.*, *Boykin*, 521 F.3d at 215. Plaintiffs are not obligated "to plead specific facts" concerning FedEx's shipping rates and switch to UPS, and are not bound to a literal and limited reading of rates "doubling," as Plaintiffs supplied all the information in their possession at the time of drafting. *See id.* (holding that plaintiff's allegation of disparate treatment under Fair Housing Act did not require specific factual information and only required "pleading on the basis of information and belief" since such specific facts were within defendant's possession and control). Therefore, information gathered from FE-4's statements, RTR's post-IPO admissions, and Lead Counsel's pre-discovery investigation are sufficient for

19

Plaintiffs to undoubtedly propel their shipping costs and carrier transition allegations to plausibility, even though a former employee stated that shipping rates "doubled." *See Bensch*, 2 F.4th at 80.

Ultimately, Plaintiffs have plausibly pled allegations within Rule 8's pleading standard that amount to violations of the Securities Act. Thus, the Court should deny the Motion.

### 2.    Plaintiffs' UPS Cost Prohibitive Pricing Allegation Was Also Sufficiently Pled Under Rule 8

Plaintiffs' UPS cost prohibitive pricing allegation derives, in part, from FE-1, who stated that "[RTR] switched carriers from UPS to FedEx to save money," "last mile couriers are 100% less reliable than FedEx and UPS but cheaper," and "[d]ue to significant cost increases after the first year of contracting with FedEx, as well as reliability issues, Rent the Runway was forced to switch back to using the prohibitively expensive UPS for shipping." Compl. at ¶¶ 91–92. Defendants try to hold Plaintiffs to a higher pleading standard, *see* Mot. Br. at 18–19, but under Rule 8, Plaintiffs' UPS cost prohibitive pricing allegation was plausibly pled. Here, Defendants chose to disclose the carrier transition but failed to disclose any of the adverse facts attendant to that transition.

As previously discussed, Plaintiffs did not have access to any shipping agreements at the time they drafted the Complaint, so Plaintiffs relied upon the information learned from FE-1 and Lead Counsel's investigation to plausibly plead that UPS's shipping costs were prohibitively expensive. *See, e.g.*, *Boykin*, 521 F.3d at 215. While Defendants have now produced some of the relevant agreements, neither Plaintiffs nor the Court can fully evaluate ███████████ ████████████████████████████ There may also be additional discovery documents and communications that support Plaintiffs' argument—documents that Judge Eichenholtz has ordered Defendants to produce. *See* PSLRA Discovery Order at 5 (ordering that Defendants

20

"produce all contracts, and all documents and communications regarding such contracts, with relevant local carriers that were in place in 2020 and 2021 prior to the IPO").



[3] *See* Ex. M (

21

████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████

## IV.    IN THE ALTERNATIVE, AMENDMENT WOULD CURE ANY PERCEIVED DEFICIENCIES

In the event sufficient doubt remains as to whether the Complaint states a claim under Rule 8 considering the shipping agreements Defendants' have provided to the Court, dismissal is not the appropriate response. Rather, if questions remain, then justice requires Plaintiffs be given leave to file an amended complaint. The law in this Circuit is clear; leave to amend "should be 'freely given,'" *McBeth v. Gabrielli Truck Sales, Ltd.*, 731 F.Supp. 2d 316, 319 (E.D.N.Y. 2010) (citing

22

*Foman v. Davis*, 371 U.S. 178, 182 (1962)), and this standard is interpreted liberally. *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 783 (2d Cir. 1984). Here, amending the Complaint would not be futile. Through amendment, Plaintiffs would be able to explain and illustrate, in greater detail than in Section E above, ██████████████████ ████████████████████████████████████████████████████ ████████████████ substantial support to Plaintiffs' allegations that the Offering Documents failed to disclose material increases in shipping costs and misrepresented RTR's carrier transition.

## V.       CONCLUSION

Defendants improperly attached some of RTR's non-integral shipping agreements to the Motion. Furthermore, the Motion is inappropriate given the material issues of fact present in this matter and the need for additional discovery. Nevertheless, even if the Court were to permit the Motion and consider RTR's shipping agreements, Defendants' exhibits actually show that Plaintiffs have alleged plausible shipping costs allegations.  Accordingly, Plaintiffs respectfully request that the Court deny the Motion in its entirety.

DATED: December 23, 2025

Respectfully submitted,

*/s/ Alfred L. Fatale III*

**LABATON KELLER SUCHAROW LLP**
Alfred L. Fatale III
Joseph Cotilletta
Jessica Goudreault
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
afatale@labaton.com
jcotilletta@labaton.com
jgoudreault@labaton.com

*Lead Counsel for Lead Plaintiffs and
the Class*

24

## CERTIFICATE OF COMPLIANCE

Pursuant to this Court's Individual Practices and Rules, the above-named counsel hereby certifies that this memorandum complies with Section III.F, as it is limited to no more than 25 pages and meets all formatting requirements.

## CERTIFICATE OF SERVICE

I, Alfred L. Fatale III, certify that on December 23, 2025, the foregoing document entitled

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**

**MOTION FOR JUDGMENT ON THE PLEADINGS** was served on the following counsel via

email:

FRESHFIELDS BRUCKHAUS DERINGER US LLP
Agnès Dunogué
Mary Eaton
Abhinaya Swaminathan
Caroline Sabatier
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
agnes.dunogue@freshfields.com
mary.eaton@freshfields.com
abhinaya.swaminathan@freshfields.com
caroline.sabatier@freshfields.com

WILLKIE FARR & GALLAGER LLP
Todd G. Cosenza
Charles D. Cording
787 Seventh Avenue
New York, New York 10019
tcosenza@willkie.com
ccording@willkie.com

*/s/ Alfred L. Fatale III*
Alfred L. Fatale III

26