**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RAJAT SHARMA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>RENT THE RUNWAY, INC., JENNIFER Y. HYMAN, SCARLETT O' SULLIVAN, TIM BIXBY, JENNIFER FLEISS, SCOTT FRIEND, MELANIE HARRIS, BETH KAPLAN, DAN NOVA, GWYNETH PALTROW, CARLEY RONEY, DAN ROSENSWEIG, MIKE ROTH, GOLDMAN SACHS & CO. LLC, MORGAN STANLEY & CO. LLC, BARCLAYS CAPITAL INC., CREDIT SUISSE SECURITIES (USA) LLC, PIPER SANDLER & CO., WELLS FARGO SECURITIES, LLC, JMP SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., and TELSEY ADVISORY GROUP LLC,<br><br>Defendants, | Case No. 22-cv-06935-OEM-SDE<br><br><br>**FILED UNDER SEAL** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS'**
**MOTION FOR JUDGMENT ON THE PLEADINGS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... iv

ARGUMENT ................................................................................................................ 2

    A.    Plaintiffs' Opposition Confirms That Defendants' Motion Should Be Granted ................................................................................................................2

        1.    Plaintiffs' Opposition Confirms That The Shipping Agreements And Defendants' Motion Must Be Considered By The Court ...................2

            (i)    Plaintiffs' Opposition Confirms That The Shipping Agreements Are Integral To Their Remaining Claims ....................2

            (ii)    Plaintiffs' Opposition's Contention That The Court Should Close Its Eyes To The Shipping Agreements – And Take As True Plaintiffs' Allegations Directly Contradicted By Them – Is Meritless ..........................................................................4

            (iii)    Plaintiffs' Opposition's Contention That The Motion Is Inappropriate Because It Does Not Make New Arguments Is Plainly Invalid ...........................................................................5

        2.    Plaintiffs' Opposition Confirms That Plaintiffs Fail Adequately To Plead An Actionable Misstatement Or Omission ......................................5

            (i)    Plaintiffs' Opposition Confirms That Plaintiffs Fail Adequately To Plead An Actionable Misstatement Or Omission As To Shipping Costs ........................................................6

            (ii)    Plaintiffs' Opposition Confirms That Plaintiffs Fail Adequately To Plead An Actionable Misstatement Or Omission As To Carrier Transition and UPS Costs .........................9

    B.    Plaintiffs' Opposition Confirms That Any Amendment Of Their Shipping Vendor Allegations Would Be Futile And Should Not Be Permitted ...................10

CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Agria Corp. Sec. Litig.*,
    672 F. Supp. 2d 520 (S.D.N.Y. 2009)............................................................................8

*Anderson News, L.L.C. v. Am. Media, Inc.*,
    680 F.3d 162 (2d Cir. 2012).........................................................................................6

*Arista Recs., LLC v. Doe 3*,
    604 F.3d 110 (2d Cir. 2010).........................................................................................6

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*,
    28 F.4th 343 (2d Cir. 2022) .........................................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).....................................................................................................6

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)....................................................................................1, 6, 9

*In re Britannia Bulk Holdings Inc. Sec. Litig.*,
    665 F. Supp. 2d 404 (S.D.N.Y. 2009).........................................................................7

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002).........................................................................................3

*Citizens United v. Schneiderman*,
    882 F.3d 374 (2d Cir. 2018).........................................................................................6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)...........................................................................................3

*Dwyer v. Allbirds, Inc.*,
    598 F. Supp. 3d 137 (S.D.N.Y. 2022)......................................................................1, 2

*Feltzin v. Stone Equities, LLC*,
    2018 WL 1115135 (E.D.N.Y. Feb. 8, 2018)...............................................................5

*Garcia v. City of Mount Vernon*,
    2009 WL 10739938 (S.D.N.Y. May 7, 2009) .............................................................4

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010).........................................................................................5

*HDtracks.com, LLC v. 7digital Grp. PLC*,
  2019 WL 6170838 (S.D.N.Y. Nov. 19, 2019)........................................................................3

*Henry v. Dow Jones*,
  2009 WL 210680 (S.D.N.Y. Jan. 28, 2009) ..........................................................................7

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
  936 F.2d 759 (2d Cir. 1991)...................................................................................................7

*Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*,
  62 F.3d 69 (2d Cir. 1995)....................................................................................................3, 4

*Koutsoudakis & Iakovou L. Grp. PLLC v. Osman*,
  2023 WL 5232622 (S.D.N.Y. Aug. 14, 2023)........................................................................4

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011)...................................................................................................5

*Lian v. Tuya Inc.*,
  2025 WL 733253 (S.D.N.Y. Mar. 7, 2025) ...........................................................................6

*Liang v. City of New York*,
  2013 WL 5366394 (E.D.N.Y. Sept. 24, 2013) ................................................................1, 4, 5

*Liu v. Intercept Pharms.*,
  2022 WL 2165621 (2d Cir. June 16, 2022) .........................................................................10

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
  6 F.4th 293 (2d Cir. 2021) .................................................................................................4, 5

*In re Livent, Inc. Noteholders Sec. Litig.*,
  151 F. Supp. 2d 371 (S.D.N.Y. 2001).........................................................................4, 6, 7, 9

*McKenna v. Smart Techs. Inc.*,
  2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012)...........................................................................9

*In re Morgan Stanley Info. Fund Sec. Litig.*,
  592 F.3d 347 (2d Cir. 2010)................................................................................................1, 8

*In re Playtika Holding Corp. Sec. Litig.*,
  2024 WL 1174329 (E.D.N.Y. Mar. 18, 2024 ........................................................................7

*Quality Health Plans of New York Inc. v. Ironshore Specialty Ins. Co.*,
  2023 WL 2970089 (E.D.N.Y. Feb. 27, 2023).........................................................................6

*Roth v. Jennings*,
  489 F.3d 499 (2d Cir. 2007 ...................................................................................................4

*Washington Cap. Ventures, LLC v. Dynamicsoft, Inc.*,
   373 F. Supp. 2d 360 (S.D.N.Y. 2005)..................................................................................2

*Waswick v. Torrid Holdings, Inc.*,
   2023 WL 9197563 (C.D. Cal. Dec. 1, 2023) .........................................................................8

*Williams v. City of New York*,
   2015 WL 4461716 (S.D.N.Y. July 21, 2015) ........................................................................4

*Zappin v. Cooper*,
   2024 WL 3084015 (2d Cir. June 21, 2024) .......................................................................1, 4

**Other Authorities**

Fed. R. Civ. P. 11 ........................................................................................................................3

Fed. R. Civ. P. 12 ................................................................................................... *passim*

**PRELIMINARY STATEMENT**

Plaintiffs acknowledge that their core allegations concerning shipping are "taken from" the contracts and that, when drafting the CAC, they were "informed . . . about the existence of RTR's shipping agreements and the [allegedly] materially adverse impact they had on shipping costs." Opp. at 9, 11.[1]  Accordingly, the agreements are integral to the CAC and should be considered by the Court at this stage.   *See, e.g.*, *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 147-48 (S.D.N.Y. 2022).  The Court need not accept as true Plaintiffs' allegations which are directly contradicted by the agreements themselves.  *See, e.g.*, *Zappin v. Cooper*, 2024 WL 3084015, at *2 n.1 (2d Cir. June 21, 2024).  Plaintiffs' contention that the Court may consider the agreements' "existence and legal effect" and the "statements [they] contained" but should ignore what they indicate as to RTR's FedEx and UPS rates (Opp. at 12-13) is meritless.  *See, e.g.*, *Liang v. City of New York*, 2013 WL 5366394, at *5 (E.D.N.Y. Sept. 24, 2013), *aff'd sub nom. Liang v. Zee*, 764 F. App'x 103 (2d Cir. 2019).

Plaintiffs concede that the agreements show that:  the FedEx rates did not "double" prior to the IPO; RTR entered into a new contract with UPS prior to FedEx's termination notice; and many of FedEx's rates were ▇▇▇▇▇ to UPS's and were only "▇▇▇▇▇▇▇▇▇▇▇▇ *at times*." Opp. at 13, 21.  Plaintiffs' conclusory assertion that the varying rate increases from the 2020 to 2021 FedEx agreements were "material" (*id.* at 13) is insufficient to plead a claim.  *See, e.g.*, *In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 366 (2d Cir. 2010).  Plaintiffs' speculation that, notwithstanding the timeline of the agreements, FedEx may have increased its rates before RTR entered into a new agreement with UPS in May 2021, is likewise insufficient. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).  Finally,

---

[1] Capitalized terms have the definitions set forth in Defendants' Motion unless otherwise noted.

Plaintiffs' new contention that they need the *September 2018* UPS Agreement (Opp. at 14) is misplaced, as Plaintiffs' claims are about the 2021 FedEx and UPS rates as compared to the 2020 FedEx rates. Accordingly, the CAC does not plead a plausible claim that the two statements at issue concerning shipping were false or misleading due to a misrepresentation or omission of material fact. Any amendment of the CAC would be futile and should be denied.

## ARGUMENT

**A.    Plaintiffs' Opposition Confirms That Defendants' Motion Should Be Granted**

    **1.    Plaintiffs' Opposition Confirms That The Shipping Agreements And Defendants' Motion Must Be Considered By The Court**

        **(i)    Plaintiffs' Opposition Confirms That The Shipping Agreements Are Integral To Their Remaining Claims**

The CAC's central theory of falsity with respect to the two remaining statements rests on the terms of the shipping agreements (*see* ¶¶ 129, 131 (alleging that "just before the IPO, FedEx doubled its shipping rates" forcing RTR to transition to the "prohibitively expensive UPS")). The Opposition acknowledges that Plaintiffs' core allegations that FedEx "increas[ed] RTR's shipping costs" and that RTR "switched to cost prohibitive UPS" are "taken from" the contracts. Opp. at 11; *see also id.* at 7-8 (recognizing "shipping agreements are germane to the Complaint"). Accordingly, Plaintiffs' remaining claims fundamentally rely on these allegations. *See* Motion at 10-12; *see also, e.g.*, MTD Decision at 3, 10 (referencing allegations that RTR had "contracts with carriers" (¶ 9), that "[a]fter one year of contracting with FedEx, RTR switched back to UPS . . . due to significant cost increases") (¶¶ 92-94). Thus, the agreements are integral to Plaintiffs' remaining claims. *See, e.g.*, *Allbirds*, 598 F. Supp. 3d at 148 (document "form[ed] the factual basis for most of" the relevant allegations and was therefore integral); *Washington Cap. Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005) (relevant agreements were "necessary components of [plaintiff's] case" and therefore integral).

Plaintiffs' contention that only a few paragraphs of the CAC refer to the agreements (Opp. at 10-11) ignores that those are *the only remaining allegations*.[2]  Further, Plaintiffs cannot dispute the CAC's reliance on the *agreements' terms and effects* by arguing that they relied only on *hearsay from former employees about the agreements* (Opp. at 10).  *See, e.g.*, Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading … an attorney … certifies that to the best of the person's knowledge, information, and belief … the factual contentions have evidentiary support").

Plaintiffs' contention that the shipping agreements should not be considered by the Court because Plaintiffs did not have "actual notice" of them in drafting the CAC (Opp. at 9-10) fails. The Opposition states that "FE-1's and FE-4's statements informed Plaintiffs about the existence of RTR's shipping agreements and the [allegedly] materially adverse impact they had on shipping costs," on which Plaintiffs relied in filing their CAC.  Opp. at 9; *see, e.g.*, *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (plaintiff did not "lack notice" of documents it "had knowledge of and upon which they relied in bringing suit").  In any event, it is "a plaintiff's *reliance* on the terms and effect of a document," not solely "notice or possession" of it, that renders a document integral.  *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (emphasis in original).  Further, an agreement may be considered "integral" even if a complaint "does not incorporate" it expressly.  *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995); *see also HDtracks.com*, 2019 WL 6170838, at *3 n.2.[3]

---

[2] In any event, the law does not require extensive reference to render agreements integral.  *See, e.g.*, *HDtracks.com, LLC v. 7digital Grp. PLC*, 2019 WL 6170838, at *3 n.2 (S.D.N.Y. Nov. 19, 2019) (agreements integral where complaint relied on them in "no less than three separate paragraphs").

[3] Plaintiffs' cited authorities (Opp. at 7-8) are not to the contrary.  Here, the risk of potential harm from a "lack of notice that the material may be considered" (*Chambers*, 282 F.3d at 153) is not present, as Plaintiffs acknowledge that the "shipping agreements are germane to the Complaint" and that they were "informed . . . about the[ir] existence." Opp. at 7-8.  Similarly, there is no

>   **(ii)**    **Plaintiffs' Opposition's Contention That The Court Should Close Its Eyes To The Shipping Agreements – And Take As True Plaintiffs' Allegations Directly Contradicted By Them – Is Meritless**

Plaintiffs do not contest that the shipping agreements set forth FedEx and UPS terms and rates applicable to RTR. The law of this Circuit is clear that the Court need not accept as true the CAC's allegations about the agreements' rates and timeline where they are directly contradicted by the agreements themselves. *See, e.g.*, *Cooper*, 2024 WL 3084015, at *2 n.1 (court "need not credit [plaintiff's] allegations that are plainly contradicted by materials incorporated into the complaint or appropriately judicially noticed"); *Koutsoudakis & Iakovou L. Grp. PLLC v. Osman*, 2023 WL 5232622, at *3 (S.D.N.Y. Aug. 14, 2023) (if integral document "contradicts [a] complaint . . . the court need not accept the complaint's allegations as true").[4] Plaintiffs do not and cannot distinguish these authorities.

Plaintiffs' contention that the integral shipping agreements should not be relied upon "for the truth of the matters asserted" fails.[5] Here, Defendants seek consideration of integral documents

---

dispute here "regarding the relevance of the document[s]." *Williams v. City of New York*, 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015); *Garcia v. City of Mount Vernon*, 2009 WL 10739938, at *3 (S.D.N.Y. May 7, 2009).

[4] *See also Int'l Audiotext*, 62 F.3d at 72 (court may "consider [integral agreement's] terms in deciding whether [a plaintiff] can prove any set of facts that would entitle it to relief" and "[is] not constrained to accept the allegations of the complaint in respect of the construction of the [a]greement"); *In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405 (S.D.N.Y. 2001) (court need not "accept as truth" allegations "that are contradicted . . . by documents upon which [the] pleadings rely").

[5] Plaintiffs' cited authorities are not to the contrary. To the extent they address extrinsic documents on which a plaintiff's allegations did not rely, those points are not relevant here. *See, e.g.*, *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 300 (2d Cir. 2021) (company's anti-sexual harassment policy and proffered evidence of harassment were not integral to former employee's age-based wrongful termination claim). The cases do not otherwise support Plaintiffs' contention that the Court should not consider the rates and terms set forth in the agreements. *See, e.g.*, *Liang*, 2013 WL 5366394, at *5 (granting 12(c) motion after considering defendants' exhibits that complaint "references and relies upon" and considering exhibits not referenced in complaint for "their existence and legal effect" and to "determine what statements [they] contained"); *Roth v.*

-4-

upon which Plaintiffs rely, not judicial notice of completely extraneous documents.  *See Lively*, 6 F.4th at 305 (court may consider on 12(c) motion "extrinsic material . . . that is 'integral' to the complaint, *or* of which courts can take judicial notice").  Regardless, a court may take judicial notice of materials to establish "their existence and legal effect" or to "determine what statements [they] contained."  *Liang*, 2013 WL 5366394, at *5.  Defendants rely on the agreements for their existence and what statements they contained as to rates and other terms.  *Id.*; Motion at 11-12.  This is precisely within what this Court can consider, even if the Court were to take "judicial notice" of the agreements rather than to consider them as integral to the CAC.

### (iii)    Plaintiffs' Opposition's Contention That The Motion Is Inappropriate Because It Does Not Make New Arguments Is Plainly Invalid

To the extent Plaintiffs argue that Defendants' Motion is "inappropriate because it does not advance new arguments," Defendants' Motion is the first time that the integrality of the shipping agreements and their effect on Plaintiffs' claims has been argued.  *See* Opp. at Section III(D).  RTR first appended the agreements to its Answer (ECF 106; ECF 117), which was filed after the Motion to Dismiss and Motion for Reconsideration were decided.  *See* ECF 69-71; 83; *see also L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011) (extrinsic documents attached to defendant's answer were "integral" to complaint in 12(c) motion analysis).

### 2.    Plaintiffs' Opposition Confirms That Plaintiffs Fail Adequately To Plead An Actionable Misstatement Or Omission

"To survive a Rule 12(c) motion, plaintiffs' complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hayden v. Paterson*,

---

*Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (taking judicial notice of "public records [] integral to a fraud complaint [but] not attached to it" to "determine what statements they contained"); *Feltzin v. Stone Equities, LLC*, 2018 WL 1115135, at *12 (E.D.N.Y. Feb. 8, 2018) (addressing how to consider another complaint, not a related agreement ), *report and recommendation adopted*, 2018 WL 1114682 (E.D.N.Y. Feb. 26, 2018).

594 F.3d 150, 160 (2d Cir. 2010). A court need *not* accept as true allegations made by a plaintiff "upon information and belief" where, as here, this "belief" about an agreement is directly contradicted by its actual terms. *See supra* at Section A(1)(ii). Because the integral agreements contradict the allegations, the CAC does not meet the "plausibility standard" which "requires 'factual allegations sufficient to raise a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged.'" *Lian v. Tuya Inc.*, 2025 WL 733253, at *5 (S.D.N.Y. Mar. 7, 2025) (quoting *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018)).[6] "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" or speculation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *see also, e.g.*, *Quality Health Plans of New York Inc. v. Ironshore Specialty Ins. Co.*, No. 2:20-cv-03563, 2023 WL 2970089, at *5-7, *10 (E.D.N.Y. Feb. 27, 2023) (recommending granting defendants' 12(c) motion based on relevant insurance policies submitted by defendants), *adopted* (Aug. 10, 2023).[7]

The Opposition fails to show that the CAC adequately pleads plausible claims that the two remaining challenged statements were materially false or misleading. Plaintiffs' Opposition thus confirms that the CAC cannot survive Defendants' Motion.

      **(i)**      **Plaintiffs' Opposition Confirms That Plaintiffs Fail Adequately To Plead An Actionable Misstatement Or Omission As To Shipping Costs**

---

[6] *See also, e.g.*, *ATSI Commc'ns, Inc.*, 493 F.3d at 98 ("a plaintiff must provide . . . factual allegations sufficient to raise a right to relief above the speculative level"); *Livent*, 151 F. Supp. 2d at 423 (courts may not "assess the legal sufficiency" of securities allegations through "what [plaintiffs] wish to learn through discovery"); *see also, e.g.*, *Schneiderman*, 882 F.3d at 380 ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory.").

[7] The cases cited by Plaintiffs (Opp. 2, 15, 16) do not suggest that allegations made "upon information and belief" must be accepted as true *even when* they are plainly inconsistent with the relevant agreements. *See Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 121 (2d Cir. 2010) (emphasizing that allegations made by plaintiffs "upon information and belief" were "supported by factual assertions in [an exhibit]"); *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184, 186-87 (2d Cir. 2012) (finding allegations were sufficiently specific and plausible).

Plaintiffs concede the agreements show the FedEx rates did not "double" prior to the IPO (Opp. at 13). Although they contend that ███████████████████████████ their analysis does not point to any rates close to a 100% increase. Opp. at 13, 16-17. Accordingly, Plaintiffs' core allegation as to shipping costs—on which the Court's prior holding was based (*see* MTD Decision at 34; Reconsideration Decision at 7)—is directly contradicted by the agreements.

Plaintiffs seek to pivot to assert that the rate changes from the 2020 to 2021 FedEx agreements—███████████████████████████—were "material." (Opp. at 13-14, 16, 18-19; Motion at 16-18). Plaintiffs' "complaint cannot, of course, be amended by [their] brief[] in opposition" to Defendants' Motion. *Livent*, 151 F. Supp. 2d at 432; *accord, e.g.*, *Henry v. Dow Jones*, 2009 WL 210680, at *4 n.5 (S.D.N.Y. Jan. 28, 2009); MTD Decision at n.14 (confirming CAC must be reviewed "only under the theories presented and alleged" therein). In any event, Plaintiffs cannot plead that the varied changes in the rates rendered the two remaining statements at issue materially false or misleading. *See, e.g.*, *In re Playtika Holding Corp. Sec. Litig.*, 2024 WL 1174329, at *5 (E.D.N.Y. Mar. 18, 2024) (dismissing claim where plaintiff failed to "plausibly allege[] that disclosure of [alleged] fact was necessary to prevent [defendant]'s existing disclosures from being misleading"), *aff'd sub nom. LBMotion Ltd. v. Playtika Holding Corp.*, 2025 WL 2793564 (2d Cir. Oct. 1, 2025). The "central inquiry" is "whether defendants' representations, taken together and in context, would have [misled] a reasonable investor about the nature of the investment." *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir. 1991); *see also, e.g.*, *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 416 (S.D.N.Y. 2009) ("that the Offering Documents did not explicitly articulate every contingency … did not 'affect the total mix of information' available to reasonable investors").

Plaintiffs do not dispute that, at the time the statements at issue were made, RTR could not

"predict how [that vendor] transition [from a single vendor handling the substantial majority of inbound shipments to multiple others] may impact [RTR's] costs and customer sentiment and satisfaction." Prospectus at 38; CAC ¶ 128; Motion at 20-21. Plaintiffs also have not pleaded that, at the time, shipping increases had "damage[d] [RTR's] reputation and brand" or "substantially harm[ed] [RTR's] business." CAC ¶ 130; *see also* Motion at 21-22.[8] These accurate statements were not rendered misleading because they did not include further discussion of the varied rate changes. Although a representation about a particular topic must be "complete and accurate," Plaintiffs' argument that these statements concerning "strategies and . . . risks" were misleading because they did not include more specifics "stretches these principles past their logical breaking point" as "disclosures do not trigger a generalized duty requiring defendants to disclose the entire corpus of their knowledge" or "to make disclosures relating to the commonly understood risks." *Morgan Stanley*, 592 F.3d at 366; *see also Waswick v. Torrid Holdings, Inc.*, 2023 WL 9197563, at *7 (C.D. Cal. Dec. 1, 2023) (reasonable investor would have understood that "fluctuating input costs are a part of everyday life for businesses").[9]

---

[8] The Offering Materials were also clear that "shipping costs" were "included" in "[f]ulfillment expenses" and noted that the latter were expected "to increase in absolute dollars in future periods" but that "[t]o the extent [RTR is] successful in becoming more efficient in fulfilling orders, and at a magnitude that is able to offset increasing shipping costs" and other cost increases, RTR "would expect these expenses to decrease as a percentage of total revenue over the longer term." Prospectus at 98. To the extent Plaintiffs reference RTR's post-IPO disclosure of its 3Q21 fulfillment expenses (Opp. at 3), those expenses increased, as RTR had stated it expected, but stayed relatively flat as a percentage of revenue. *See* Motion at 8, 18, 22. Plaintiffs provide no factual or legal support for their contention that these results constituted "admissions" that "ballooning transportation and shipping costs jeopardized the Company" and led to the restructuring announced in September 2022. Opp. at 3.

[9] *See also, e.g.*, *In re Agria Corp. Sec. Litig.*, 672 F. Supp. 2d 520, 528-29 (S.D.N.Y. 2009) (a securities issuer "is not required to disclose all known information" but rather "information that is necessary to make other statements not misleading"); *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*, 28 F.4th 343, 353-54 (2d Cir. 2022) (alleged omissions of specific metrics did not render broader statements false or misleading).

(ii)    **Plaintiffs' Opposition Confirms That Plaintiffs Fail Adequately To Plead An Actionable Misstatement Or Omission As To Carrier Transition and UPS Costs**

Regarding their allegation that RTR was "forced" to "switch" back to UPS, Plaintiffs do not dispute the timeline of the agreements and related notice, which shows that RTR entered into a new contract with UPS prior to FedEx's termination notice.  Plaintiffs speculate that "since FedEx and RTR entered into the April 2021 FedEx Ground Amendment, it is very likely that FedEx and RTR were in discussions regarding rates . . . prior to the May 2021 UPS Agreement." (Opp. at 14).  Plaintiffs do not dispute that the April 2021 amendment to the FedEx 2020 Agreement provided ███████████████████████████████████████████ and provide no plausible basis to infer that FedEx simultaneously indicated it would ██████ ████████████████ and that this "forced" RTR to enter into a new agreement with UPS in May 2021.[10]  Speculation based on an irrelevant amendment is insufficient to plead a plausible claim.  *See, e.g.*, *ATSI Commc'ns, Inc.*, 493 F.3d at 98; *Livent*, 151 F. Supp. 2d at 423.

Further, omitting the exact chronology of the contract negotiations with FedEx and UPS does not render misleading the statements concerning the carrier transition—that RTR was "in the process of transitioning" from having the "substantial majority of its inbound shipments" returned through a "single vendor" to "multiple other vendors" (Prospectus at 38; CAC ¶ 128; *see also* CAC ¶¶ 9, 91; Answer ¶¶ 9, 91; Motion at 6-7 (discussing shipping diversification disclosures)).  *See, e.g.*, *McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *15 (S.D.N.Y. Apr. 3, 2012) (lack of disclosure of contract negotiations with third parties "cannot amount to an actionable misstatement or omission" as the securities laws do not "require companies to disclose the substance of all

---

[10] Notwithstanding Plaintiffs' suggestion, Magistrate Judge Eichenholtz's order did not find that additional discovery is needed to assess the timeline of the FedEx and UPS agreements.  Opp. at 14; *See* Order at 4-5 (ECF 127).

contract negotiations").

As for their allegation about "prohibitive" UPS pricing, Plaintiffs concede it is based on FE-1's purported statement. Opp. at 20. The Court held previously "that FE-1 opinions in this regard are only 'vague assertions' that do not make the Offering Documents false or misleading," MTD Decision at 33, and the CAC offers no other basis for this allegation. Further, Plaintiffs concede that the agreements and standard rates show that "the 2020 and 2021 ground rates for UPS and FedEx are ███████" and a "comparison of RTR's ██████ with FedEx's and UPS's rates reveals that FedEx" was only "████████████████████ *at times*." Opp. at 21 (emphasis added). This contradicts the CAC's allegation that the 2021 UPS rates were "prohibitively expensive" compared to the 2020 FedEx rates. CAC ¶¶ 92, 129, 131.

Plaintiffs' new contention that the *September 2018* UPS Agreement is needed to compare to the 2021 UPS Agreement (Opp. at 14) is unavailing. The CAC alleges that the 2021 UPS rates were "prohibitively expensive" compared to the rates that applied previously, *i.e.*, the 2020 FedEx rates. CAC ¶¶ 92, 129, 131. The 2018 UPS agreement is thus irrelevant to Plaintiffs' remaining claims.

**B.** **Plaintiffs' Opposition Confirms That Any Amendment Of Their Shipping Vendor Allegations Would Be Futile And Should Not Be Permitted**

Defendants' Motion and the above show that the speculative and conclusory allegations Plaintiffs ask to add would not plead a plausible claim that the sole remaining statements at issue were materially false or misleading. Accordingly, Plaintiffs' request to be provided leave to amend their complaint should be denied. *See, e.g.*, *Liu v. Intercept Pharms.*, 2022 WL 2165621, at *3 (2d Cir. June 16, 2022).

**CONCLUSION**

Defendants' Motion should be granted and the CAC should be dismissed with prejudice.

-10-

Dated:   New York, New York
          January 12, 2026

Respectfully submitted,

**FRESHFIELDS US LLP**

*/s/ Agnès Dunogué*
Mary Eaton
Agnès Dunogué
Meredith Kotler
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, New York 10007
Telephone: (212) 277-4000
mary.eaton@freshfields.com
agnes.dunogue@freshfields.com
meredith.kotler@freshfields.com

*Counsel for Defendants Rent the Runway, Inc., Jennifer Y. Hyman, Scarlett O'Sullivan, Tim Bixby, Jennifer Fleiss, Scott Friend, Melanie Harris, Beth Kaplan, Dan Nova, Gwyneth Paltrow, Carley Roney, Dan Rosensweig, and Mike Roth*

**WILLKIE FARR & GALLAGHER LLP**

*/s/ Todd G. Cosenza*
Todd G. Cosenza
Charles D. Cording
787 Seventh Avenue
New York, NY 10019-6099
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
tcosenza@willkie.com
ccording@willkie.com

*Counsel for Defendants Goldman Sachs & Co. LLC, Morgan Stanley & Co. LLC, Barclays Capital Inc., Credit Suisse Securities (USA) LLC, Piper Sandler & Co., Wells Fargo Securities, LLC, JMP Securities LLC (n/k/a Citizens JMP Securities, LLC), KeyBanc Capital Markets Inc., and Telsey Advisory Group LLC*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to this Court's Individual Practices and Rules, the above-named counsel hereby certifies that this memorandum complies with Rule F, as it is limited to no more than 10 pages and meets all formatting requirements.